1

2

3

4

5

6

7

8

9             IN THE UNITED STATES DISTRICT COURT

10                 FOR THE DISTRICT OF OREGON

11  KERI MCELMURRY AND KAREN       )
    MRAZEK INDIVIDUALLY, and on    )
12  Behalf of All Similarly        )
    Situated                       )    No.  CV-04-642-HU
13                                 )
                 Plaintiffs,       )
14                                 )
        v.                         )
15                                 )
    US BANK NATIONAL ASSOCIATION,  )    FINDINGS & RECOMMENDATION
16  AND ITS AFFILIATES AND SUB-    )
    SIDIARIES, DOES 1-25,          )
17                                 )
                 Defendants.       )
18  _____)

19  J. Dana Pinney
    A.E. Bud Bailey
20  David Schuck
    BAILEY, PINNEY & ASSOCIATES, LLC
21  18765 S.W. Boones Ferry Rd., Suite 125
    Tualatin, Oregon 97062-8438
22
         Attorneys for Plaintiffs
23
    Carol J. Bernick
24  Christopher F. McCracken
    Kevin H. Kono
25  Jennifer A. Nelson
    DAVIS WRIGHT TREMAINE, LLP
26  1300 S.W. Fifth Avenue, Suite 2300
    Portland, Oregon 97201
27
         Attorneys for Defendants

28


    1 - FINDINGS & RECOMMENDATION

HUBEL, Magistrate Judge:

Plaintiffs Keri McElmurry and Karen Mrazek bring this Fair Labor Standards Action on behalf of all similarly situated plaintiffs and against US Bank National Association and its affiliates and subsidiaries and Does 1-25.  Plaintiffs seek to bring this case as a collective action under 29 U.S.C. § 216(b).

Plaintiffs bring four claims for relief:  (1) a claim on behalf of sales and service managers (SSMs) that they were improperly classified as exempt employees and thus, defendant has failed to pay these plaintiffs 1½ times their regular rate of pay for any hours worked over forty in a week; (2) a claim challenging defendant's alleged "rounding down" policy.  This claim contends that non-exempt hourly employees are instructed to round their hours worked to the closest tenth of an hour which, plaintiffs allege, results in employees under-reporting their actual hours worked.  Claim two alleges that the rounding down has resulted in a lack of overtime being paid to some employees ("Rounding OT" claim); (3) Claim three is a similar challenge to the rounding down policy, but contends that the rounding down has resulted in some employees being paid less than the federal minimum wage ("Rounding MW" claim); and (4) a supplemental state claim which contends that defendant has failed to timely pay wages owing upon an employee's termination.  Plaintiffs allege that the three FLSA claims are willful violations.

Presently, defendant moves to (1) dismiss the second, third, and fourth claims, or alternatively to stay those claims; (2) dismiss the affiliates and subsidiaries and the Does 1-25; (3) make ¶ 29a of the Complaint more definite and certain; (4) strike ¶ 22

2 - FINDINGS & RECOMMENDATION

1  of the Complaint; and (5) strike plaintiffs' claim for prejudgment
2  interest.

3      Plaintiffs move for an order that notice be sent to the
4  putative opt-in collective action members.  Plaintiffs also move
5  for an order allowing the equitable tolling of the statute of
6  limitations for all putative class members during the pendency of
7  the notice process.  Defendant moves to strike portions of the
8  declarations that plaintiffs submitted in support of plaintiffs'
9  motion.

10     I recommend that defendants' Rule 12 motions be granted in
11  part and denied in part, that plaintiffs' motion for notice be
12  denied, and that defendant's motions to strike be denied as moot.
13  I.  Defendant's Rule 12 Motions

14     A.  Rule 12(b)(6) Standards

15     On a motion to dismiss, the court must review the sufficiency
16  of the complaint.  <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).
17  The court should construe the complaint most favorably to the
18  pleader:

19         In evaluating the sufficiency of the complaint, we
           follow, of course, the accepted rule that the complaint
20         should not be dismissed for failure to state a claim
           unless it appears beyond doubt that the plaintiff can
21         prove no set of facts in support of his claim which would
           entitle him to relief.
22
23  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>American Family Ass'n,</u>
    <u>Inc. v. City & County of San Francisco</u>, 277 F.3d 1114, 1120 (9th
24
    Cir. 2002).  The allegations of material fact must be taken as
25
    true.  <u>Moyo v. Gomez</u>, 40 F.3d 982, 984 (9th Cir. 1994).
26
27     B.  Discussion of Rule 12(b)(6) Motion

28     Defendant argues that the Complaint fails to state a claim as

3 - FINDINGS & RECOMMENDATION

1  to the rounding policy because it fails to allege that McElmurry or
2  Mrazek were actually subject to the policy or that they were ever
3  injured by the policy.  Defendant contends that even with liberal
4  notice pleading standards, plaintiffs fail to allege the basic
5  facts to support their rounding policy claims, both as to overtime
6  and minimum wage.  Defendant asserts that the Complaint is devoid
7  of any factual allegations that the rounding policy was ever
8  applied to either named plaintiff, that any such rounding policy
9  caused either named plaintiff to work overtime for which she was
10  not paid, that any rounding policy caused either named plaintiff's
11  wages to drop below the federal minimum wage, and that any alleged
12  rounding violated the law.

13      In response, plaintiffs point to paragraphs 29, 42, 43, 44,
14  and 45 of the Complaint to support their position that they
15  adequately state a claim.  I agree with plaintiffs.  In addition to
16  the paragraphs plaintiffs cite, I find that paragraphs 18, 22, 29b,
17  39, and 50 provide additional facts in support of both of the
18  rounding claims.  Read together, the facts alleged in these
19  paragraphs sufficiently state that the named plaintiffs have
20  rounding claims under the federal notice pleading standard.

21      I note, however, that because I grant other parts of
22  defendant's motion and plaintiffs will therefore be submitting an
23  amended complaint, plaintiffs may well want to make the allegations
24  of these rounding claims more definite and certain by actually
25  specifying (1) which named plaintiff brings which particular claim;
26  (2) that the rounding policy applied to each named plaintiff or
27  which one if only one; and (3) that each named plaintiff (or which
28  one) was injured by the policy and in which way - overtime, minimum

4 - FINDINGS & RECOMMENDATION

1  wage, or both.

2       And, as to the rounding minimum wage claim, in light of the

3  facts put forth by defendant during oral argument on this motion

4  that one of the plaintiffs earned substantially more per hour than

5  minimum wage and thus, could not possibly assert a minimum wage

6  violation claim even if she proves a claim showing she was not paid

7  for certain time as a result of the rounding policy, plaintiffs

8  must, as always, assure themselves and their counsel that they have

9  a good faith basis for asserting this claim.  Plaintiffs may want

10  to include express allegations as to which named plaintiff, or

11  both, earned an hourly wage such that the rounding policy created

12  an effective hourly rate below the applicable minimum wage for the

13  named plaintiff(s).

14       C.  Dismissal of the Late Pay/Termination Claim

15       This claim seeks penalties for the alleged late payment of

16  wages upon termination.  The Complaint refers to Oregon Revised

17  Statute § (O.R.S.) 652.140 and a California statute. Compl. at ¶¶

18  56, 63.  It also refers to any other "state's statute requiring

19  timely payment of final wages."  _Id._ at ¶ 63.  Defendant

20  articulates two bases for dismissing this claim:   (1)  lack of

21  supplemental jurisdiction; and (2) dismissal to the extent it

22  asserts claims under late pay statutes of states other than Oregon.

23       1.  Supplemental Jurisdiction

24       Defendant makes two arguments in support of its position that

25  taking supplemental jurisdiction over the late pay/termination

26  claim is inappropriate in this case.  Defendant contends first that

27  the late pay/termination claim does not share a common nucleus of

28  operative facts with the other claims and second, that there are

5 - FINDINGS & RECOMMENDATION

1  exceptional circumstances which offer compelling reasons to decline
2  supplemental jurisdiction.
3                    a.  Common Nucleus of Operative Facts
4       Federal courts have supplemental jurisdiction over state law
5  claims that "form part of the same case or controversy under
6  Article III of the United States Constitution" as claims over which
7  the court has original jurisdiction.  28 U.S.C. § 1367.  Claims
8  form part of the same case or controversy if they arise from a
9  common nucleus of facts and if they would normally be tried
10  together.  Bahrampour v. R.O. Lampert, 356 F.3d 969, 978 (9th Cir.
11  2004).

12       However, claims do not necessarily share a common nucleus of
13  facts merely because they arise from an employer-employee
14  relationship.  Lyon v. Whisman, 45 F.3d 758, 762-63 (3d Cir. 1995)
15  (rejecting supplemental jurisdiction in an FLSA case because "there
16  is so little overlap between the evidence relevant to the FLSA
17  claims" and the state contract and tort claims and noting that the
18  FLSA claim involved "very narrow, well-defined factual issues about
19  hours worked during particular weeks.").
20       Defendant argues that there is no common nucleus of operative
21  facts between the FLSA SSM and rounding claims on the one hand, and
22  the state late pay/termination claim on the other.  The FLSA
23  claims, defendant notes, relate to alleged violations during the
24  employment relationship and require proof regarding hours worked
25  and wages paid during each particular work week at issue.  The SSM
26  claim will require plaintiffs to present evidence about the duties
27  of SSMs at various banks.  The rounding claims will require proof
28  that defendant wrongfully required employees to round their time

6 - FINDINGS & RECOMMENDATION

1  and that this alleged rounding resulted in overtime and minimum
2  wage violations. Thus, the focus of these claims is on what duties
3  employees had while they were employed and their payroll records
4  while they were employed.

5      In contrast, the late pay/termination claim involves proof of
6  events occurring at or after the end of the employment
7  relationship. Relevant evidence includes the factual circumstances
8  of the termination of the employment relationship and then what
9  wages were due and owing at the end of the relationship, and when
10 they were paid.

11     Defendant argues that due to the factual distinctions between
12 the FLSA claims and the late pay/termination claim, there is no
13 overlap between the evidence required to prove plaintiffs' FLSA
14 claims and the evidence required to prove the state law claims.
15 They are wholly dissimilar.

16     While defendant raises a valid point about the relationship
17 between the FLSA claims and the "traditional" late pay/termination
18 claim in which there is no dispute about what final wages are owed,
19 but simply a delay in paying them, plaintiffs' late pay/termination
20 claim is broader than this "traditional" type of late
21 pay/termination claim. As plaintiffs explain, while some penalties
22 may be owing by a straightforward late payment of undisputed wages,
23 an additional basis for the late pay/termination claim is grounded
24 in the rounding and SSM claims. That is, to the extent a plaintiff
25 is owed wages because of a well-founded SSM or rounding claim
26 (either overtime or minimum wage), then any such wages would not
27 have been paid upon termination and thus, additional penalties for
28 the late payment of such wages should be forthcoming under Oregon,

7 - FINDINGS & RECOMMENDATION

1  and other states', laws.

2      I agree with plaintiffs that to the extent the late

3  pay/termination claim plaintiff(s) also have an SSM or rounding

4  claim, there is some overlap of facts providing for a common

5  nucleus of operative fact.  If an SSM or rounding plaintiff is

6  successful in proving an FLSA violation, the late pay issue arises

7  out of the same nucleus of operative fact if that plaintiff has

8  been terminated.    This is sufficient for the exercise of

9  supplemental jurisdiction.

10                  b.  Exceptional Circumstances

11      The court may decline to exercise supplemental jurisdiction

12  where, "in exceptional circumstances, there are . . . compelling

13  reasons" for doing so.  28 U.S.C. § 1367(c)(4).  "Compelling

14  reasons" include "those that lead a court to conclude that

15  declining jurisdiction best accommodate[s] the values of economy,

16  convenience, fairness, and comity."  Executive Software N. Am.,

17  Inc. V. United States Dist. Ct. For the Central Dist. Of Calif., 24

18  F.3d 1545, 1557 (9th Cir. 1994) (internal quotation omitted).  A

19  "pending state court action probably constitutes 'exceptional

20  circumstances.'"  Polaris Pool Sys. V. Letro Prods., Inc., 161

21  F.R.D. 422, 425 (C.D. Cal. 1995).  Defendant contends that because

22  there are two pending state court cases raising the rounding and

23  late pay/termination claims, I should decline to exercise

24  supplemental jurisdiction.

25      I do not find that these two pending cases qualify as an

26  "exceptional circumstance" to support declining the exercise of

27  supplemental jurisdiction.  Unlike in Polaris Pool Systems, where

28  the state court action involved the same parties as the federal

8 - FINDINGS & RECOMMENDATION

1  court action, neither of the named plaintiffs in the instant case
2  is a plaintiff in the state court cases.  While a class action
3  motion has been filed and argued in one of those cases, there has
4  been no resolution of the motion as of yet.  No class action motion
5  has been filed in the other case.  Given this distinction, I do not
6  accept defendant's argument that exceptional circumstances to
7  defeat supplemental jurisdiction are present.

8        2.  Late Pay/Termination Claims Under Other State Laws
9        Next, defendant argues that the late pay/termination claim
10 should be dismissed to the extent plaintiffs seek recovery under
11 late pay/termination statutes other than Oregon's.  I agree with
12 defendant.  As discussed below, I recommend that plaintiffs' motion
13 for notice to the putative class be denied.  As such, the case
14 remains brought by the two named plaintiffs, only one of which has
15 a late pay/termination claim.  That plaintiff, Mrazek, brings her
16 claim under Oregon law.  Based on the facts alleged in the
17 Complaint, she has no standing to assert a late pay/termination
18 claim for relief under any other state's late pay/termination
19 statute.  I recommend that this motion be granted.

20      D.  Dismissal/Abstention of Rounding and Late/Pay
          Termination Claims Under Colorado River.
21
22      Defendants move to dismiss or abstain the rounding and late
23 pay/termination claims because class actions encompassing what
   defendant calls identical claims, are pending in state court.
24 There are two cases in Multnomah County Circuit Court which raise
25 the claims brought in this case.  In Rivera v. U.S. Bank National
26 Association, Mult. Co. Case No. 0305-05045, the plaintiffs
27 challenge the same rounding policy, both as to its effects on
28

9 - FINDINGS & RECOMMENDATION

1  overtime and minimum wages, as they challenge in this action.  The

2  claim in Rivera is brought under Oregon law, however, not the FLSA.

3  The Rivera plaintiffs also bring a state law late pay/termination

4  claim like the one pending here.

5       In Belknap v. U.S. Bank National Association, Mult. Co. Case

6  No. 0301-00042, the plaintiffs assert a state late pay/termination

7  claim like the one pending here.  Both Rivera and Belknap have been

8  filed as class actions under Oregon Rule of Civil Procedure 32.  A

9  class action certification motion has been filed and argued in

10 Belknap, but no decision on that motion has been issued.  No such

11 motion has been filed in Rivera although defendant represents, and

12 plaintiffs have not disputed, that the Rivera plaintiffs plan to

13 file such a motion in the future.

14      Defendant argues that this case should be dismissed or stayed

15 in light of Rivera and Belknap.  As defendant notes, both of those

16 cases were filed before this case.  Defendant argues that while the

17 rounding claims in Rivera are based on state rather than federal

18 law, neither law is controlling and both Rivera and this case are

19 based on the identical factual predicate.

20      Defendant further notes that while this case is filed as a

21 nationwide collective action, the only plaintiffs are Oregon

22 residents and thus, relief under Oregon state law as a class member

23 in Rivera and Belknap would fully compensate plaintiffs.  Moreover,

24 defendant notes, plaintiff Mrazek is actively participating in

25 Belknap by filing a declaration in support of the class

26 certification motion pending in that case.  Thus, defendant argues,

27 plaintiffs would be fully protected if I defer to the currently

28 pending state actions and such deference would avoid piecemeal

10 - FINDINGS & RECOMMENDATION

1   adjudication of "identical" claims.

2       Finally, defendant argues, dismissing or staying the claims in

3   this case will discourage what defendant calls plaintiff's blatant

4   attempt at forum shopping.

5       In response, plaintiff notes that concurrent actions in a

6   state court are "no bar to proceedings concerning the same matter

7   in the Federal court having jurisdiction." Colorado River Water

8   Conservation Dist. v. United States, 424 U.S. 800, 820 (1976).

9   There is a "heavy obligation" on federal district courts to

10  exercise jurisdiction given them under the Constitution and laws of

11  the United States. Id. at 818, 820.

12      "District courts have an obligation and a duty to decide cases

13  properly before them, and '[a]bstention from the exercise of

14  federal jurisdiction is the exception, not the rule.'" City of

15  Tucson v. U.S. West Communications, Inc., 284 F.3d 1128, 1132

16  (2002) (quoting Colorado River, 424 U.S. at 813). As explained in

17  a 2002 case:

18          Under Colorado River, considerations of "wise judicial
            administration, giving regard to conservation of judicial
19          resources and comprehensive disposition of litigation,"
            Colorado River, 424 U.S. at 817, 96 S. Ct. 1236, may
20          justify a decision by the district court to stay federal
            proceedings pending the resolution of concurrent state
21          court proceedings involving the same matter, Intel Corp.
            v. Advanced Micro Devices, Inc., 12 F.3d 908, 912 (9th
22          Cir. 1993). "[E]xact parallelism" is not required; "[i]t
            is enough if the two proceedings are 'substantially
23          similar.'" Nakash v. Marciano, 882 F.2d 1411, 1416 (9th
            Cir.1989) (citations omitted).
24
                But because "[g]enerally, as between state and
25          federal courts [with concurrent jurisdiction], the rule
            is that the pendency of an action in the state court is
26          no bar to proceedings concerning the same matter in the
            Federal court having jurisdiction[,]" the Colorado River
27          doctrine is a narrow exception to "the virtually
            unflagging obligation of the federal courts to exercise
28          the jurisdiction given them." Colorado River, 424 U.S. at

11 - FINDINGS & RECOMMENDATION

817, 96 S. Ct. 1236 (internal citation and quotation
marks omitted); accord Intel, 12 F.3d at 912.  In Moses
H. Cone Memorial Hospital v. Mercury Construction Corp.,
460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983), the
Supreme Court clarified that to fit into this narrow
doctrine, "exceptional circumstances" must be present.
450 U.S. at 15-16, 101 S. Ct. 836; see also Colorado
River, 424 U.S. at 818, 96 S. Ct. 1236 ("Given [the
federal court's obligation to exercise jurisdiction], and
the absence of weightier considerations of constitutional
adjudication   and   state-federal   relations,   the
circumstances permitting the dismissal of a federal suit
due to the presence of a concurrent state proceeding for
reasons of wise judicial administration are considerably
more limited than the circumstances appropriate for
abstention.   The   former   circumstances,   though
exceptional, do nevertheless exist.").

Holder v. Holder, 305 F.3d 854, 868-69 (9th Cir. 2002).

Additionally,

When a district court decides to dismiss or stay under
Colorado River, it presumably concludes that the parallel
state-court litigation will be an adequate vehicle for
the complete and prompt resolution of the issues between
the parties.  If there is any substantial doubt as to
this, it would be a serious abuse of discretion to grant
the stay or dismissal at all. . . . Thus, the decision to
invoke Colorado River necessarily contemplates that the
federal court will have nothing further to do in
resolving any substantive part of the case, whether it
stays or dismisses.

Intel, 12 F.3d at 913 (internal quotation omitted).

Several  factors  are  relevant  to  the  Colorado  River

determination.  First,  however,  is  the  dispositive  factor  of

whether the state court judgment will resolve all of the issues

before the federal court.  Holder, 305 F.3d at 870; Intel, 12 F.3d

at 913.  The remaining non-exclusive factors are:

(1) whether the state court first assumed jurisdiction over

property;

(2) inconvenience of the federal forum;

(3) the desirability of avoiding piecemeal litigation;

(4)  the  order  in  which  jurisdiction  was  obtained  by  the

12 - FINDINGS & RECOMMENDATION

1  concurrent forums;

2      (5) whether federal law or state law provides the rule of

3  decision on the merits;

4      (6) whether the state court proceedings are inadequate to

5  protect the federal litigant's rights; and

6      (7) whether exercising jurisdiction would promote forum

7  shopping. Holder, 305 F.3d at 870.

8      "The factors relevant to a given case are subjected to a

9  flexible balancing test, in which one factor may be accorded

10 substantially more weight than another depending on the

11 circumstances of the case, and with the balance heavily weighted in

12 favor of the exercise of jurisdiction." Id. at 870-71 (internal

13 quotation omitted).

14     The resolution of this particular motion turns on the

15 dispositive factor. First, as noted previously, neither of the

16 plaintiffs in this case is a plaintiff in Rivera or Belknap. Thus,

17 unless one or both of those cases is certified as a class action,

18 a judgment in either of those cases will not resolve the claims

19 brought by these plaintiffs in the instant case.

20     Second, the rounding claim in Rivera is brought under state

21 law. It was undisputed at oral argument that while a plaintiff may

22 not recover the actual unpaid wages more than once (e.g. recovery

23 of the wages themselves would be under either state or federal law

24 with no double recovery), the penalties imposed for the non-payment

25 of any overtime or minimum wages owing are different under the two

26 statutes. Thus, even if the plaintiffs in this case became members

27 of a class action that is ultimately certified in Rivera, a

28 judgment in Rivera would not resolve all of the issues pending in

13 - FINDINGS & RECOMMENDATION

1  this case.

2      Furthermore, in examining the remaining factors, even though
3  the similar claims were filed first in state court, the federal
4  forum is not inconvenient, neither federal nor state law is
5  controlling as to the rounding claims, given the different
6  plaintiffs, the litigation is not particularly "piecemeal," and, as
7  noted, the state court litigation does not completely protect
8  plaintiffs' rights, at least as far as the penalties are
9  concerned.

10     Finally, while defendant suggests that forum shopping
11 motivated plaintiff to file the instant case after dismissing a
12 similar case in state court, I decline to make any findings
13 regarding this accusation on the present record. Any such finding
14 would not outweigh the other factors discussed above. Accordingly,
15 I recommend that defendant's <u>Colorado River</u> dismissal/abstention
16 motion be denied.

17     E.  Dismissal of Doe Defendants

18     As indicated above, plaintiffs bring this case against US Bank
19 National Association and its affiliates and subsidiaries and Does
20 1-25.  Defendant argues that the defendants "Affiliates and
21 Subsidiaries, Does 1-25" should be dismissed because plaintiffs
22 fail to state any claim against them.  Plaintiffs' claims contain
23 no allegation that either named plaintiff worked for any "affiliate
24 or subsidiary" of US Bank National Association.  Thus, defendant
25 argues, plaintiffs have failed to plead any facts or allegations
26 demonstrating that they are entitled to relief as against the "Doe"
27 defendants.

28     Defendant also argues that the "Doe" defendants should be

14 - FINDINGS & RECOMMENDATION

1  dismissed because plaintiffs fail to plead that they made any
2  effort to ascertain the "Doe" defendants' true identities.
3  Defendant suggests that the use of a Doe or fictitiously named
4  defendant is permissible only if the complaint alleges why the
5  defendant's real name was not then known or ascertainable.

6      In response, plaintiffs state that they concede this motion
7  and are willing to replead the "Does" section to include additional
8  information regarding who the "Does" are and why they are included.
9  They explain that they included defendants under the "Does" title
10 because they believe defendant has operated, or is associated with,
11 multiple corporations which are similarly situated to US Bank
12 National Association.

13     Given plaintiffs' concession of the motion, I grant the
14 motion.  While plaintiffs may now have some idea of the names of
15 additional defendants to substitute in place of the "Does,"
16 plaintiffs still do not know if any of them engaged in any wrongful
17 conduct.  Furthermore, it appears that neither of the named
18 plaintiffs worked for any entity other than the named US Bank
19 National Association.  Given my recommendation to deny plaintiffs'
20 notice motion, it makes sense to dismiss the Doe defendants at this
21 point.  Plaintiffs can file an amended complaint at a later time if
22 they learn of facts supporting a good faith basis to allege a claim
23 against a named subsidiary or affiliate.

24     F.  Paragraph 29a

25     Paragraph 29a of the Complaint states that:  "[a]t least one
26 of the named Plaintiffs is a member of each collective claim."
27 Compl. at ¶ 29a.  Defendant moves to make this paragraph more
28 definite and certain under Federal Rule of Civil Procedure 12(e)

15 - FINDINGS & RECOMMENDATION

1  because it fails to indicate which named plaintiff is a member of
2  which collective action claim.  Plaintiff concedes this motion and
3  has  agreed  to  amend  the  paragraph.  Based  on  plaintiffs'
4  concession, I recommend that the motion be granted.

5        G.  Paragraph 22

6        Defendant moves to strike paragraph 22 of the Complaint which
7  provides that "[a]t all relevant times, and within the preceding 6
8  years, US BANK allowed, suffered and permitted Plaintiffs and other
9  employees to perform work for which they were not compensated."
10 Id. at ¶ 22.  Defendant notes that the statute of limitations is
11 two years, or three years for willful violations, making anything
12 more than three years irrelevant.  Plaintiffs concede this error
13 and state they will replead the paragraph to limit it to the
14 relevant three-year period.  I recommend that the motion be
15 granted.

16       H.  Prejudgment Interest

17       Defendant moves to strike plaintiffs' claim for prejudgment
18 interest because, defendant contends, plaintiffs are not entitled
19 to prejudgment interest.  Ninth Circuit law suggests that if
20 plaintiffs prevail on their allegation that defendant acted
21 willfully and thus obtain liquidated damages, plaintiffs cannot
22 also recover prejudgment interest.  Brock v. Shirk, 833 F.2d 1326,
23 1331 n.3 (9th Cir. 1987) (rejecting prejudgment interest where
24 liquidated damages were awarded because "[o]nly one such 'make
25 whole' remedy is proper"), vacated on other grounds, 488 U.S. 806
26 (1988).

27       But, the law also provides that in the absence of a liquidated
28 damages  award,  prejudgment  interest  is  necessary  to  fully

16 - FINDINGS & RECOMMENDATION

1   compensate employees for tho losses they have suffered.    Ford v.

2   Alfaro, 785 F.2d 835, 842 (9th Cir. 1986) (noting that it would be

3   an abuse of discretion not to include prejudgment interest in

4   backpay awards under the FLSA).

5       Based on these precedents, it would seem reasonable to grant

6   defendant's motion to the extent that plaintiffs should replead the

7   prejudgment interest claim as an alternative remedy to their claim

8   for liquidated damages.    This is especially so given that

9   plaintiffs will be submitting an amended complaint in any event.

10      However, at oral argument, plaintiffs contended that the law

11  is not clearly established that prejudgment interest and liquidated

12  damages remedies are exclusive of each other in an FLSA case.  They

13  requested the opportunity to make a legal argument, at a later

14  stage in the case, in support of their position that they are

15  entitled to both remedies.    Given that the prejudgment interest

16  claim along with the liquidated damages claim, as they are

17  presently pleaded, do not prejudice defendant, and given

18  plaintiffs' request to brief this issue in-depth at a later date,

19  I recommend that this motion be denied at this point.    The issue

20  should be addressed later through motion or in the pretrial order.

21      In summary, as to defendant's Rule 12 motions, I recommend

22  that (1) the motion to dismiss for failure to state a claim

23  directed at the rounding claims be denied; (2) the motion to

24  dismiss the late pay/termination claim be denied in part and

25  granted to the extent that it is directed to claims based on non-

26  Oregon statutes; (3) the motion to dismiss or abstain the rounding

27  and late pay/termination claims based on Colorado River be denied;

28  (4) the motion dismissing the Doe defendants be granted; (5) the

17 - FINDINGS & RECOMMENDATION

1    motion to make paragraph 29a more definite and certain be granted;

2    (6) the motion to strike paragraph 22 be granted; and (7) the

3    motion to strike the prejudgment interest claim be denied.

4    II.  Plaintiffs' Notice Motion

5        A.  Standards for Collective Actions

6        The FLSA provides, in pertinent part:

7            Any employer who violates the provisions of section 206
             or section 207 of this title shall be liable to the
8            employee or employees affected in the amount of their
             unpaid minimum wages, or their unpaid overtime
9            compensation, as the case may be, and in an additional
             equal amount as liquidated damages. Any employer who
10           violates the provisions of section 215(a)(3) of this
             title shall be liable for such legal or equitable relief
11           as may be appropriate to effectuate the purposes of
             section 215(a)(3) of this title, including without
12           limitation employment, reinstatement, promotion, and the
             payment of wages lost and an additional equal amount as
13           liquidated damages. An action to recover the liability
             prescribed in either of the preceding sentences may be
14           maintained against any employer (including a public
             agency) in any Federal or State court of competent
15           jurisdiction by any one or more employees for and in
             behalf of himself or themselves and other employees
16           similarly situated. No employee shall be a party
             plaintiff to any such action unless he gives his consent
17           in writing to become such a party and such consent is
             filed in the court in which such action is brought.
18
     29 U.S.C. § 216(b) (emphasis added).
19
20       As noted by the Ninth Circuit, the "FLSA authorizes an

21   employee to bring an action on behalf of similarly situated

22   employees, but requires that each employee opt-in to the suit by

23   filing a consent to sue with the district court. See 29 U.S.C. §

24   216(b)."[1] Does I Thru XXIII v. Advanced Textile Corp., 214 F.3d

25   1058, 1064 (9th Cir. 2000). "To facilitate this process, a

26   ─────────────────────

27       [1] Unlike class actions certified under Federal Rule of
     Civil Procedure 23, an individual may become a party plaintiff in
28   an FLSA collective action only if he or she files a "consent in
     writing," i.e., "opts-in." 29 U.S.C. § 216(b).

     18 - FINDINGS & RECOMMENDATION

1  district court may authorize the named plaintiffs in an FLSA

2  collective action to send notice to all potential plaintiffs, see

3  Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169, 110 S. Ct.

4  482, 107 L. Ed. 2d 480 (1989), and may set a deadline for

5  plaintiffs to join the suit by filing consents to sue, id. at 172,

6  110 S.Ct. 482." Id.  Thus, here, plaintiffs file this "Hoffman-

7  LaRoche" motion to authorize notice to be sent to all potential

8  plaintiffs.

9      "In determining whether or not to certify a collective action,

10  the core inquiry is whether the putative class members are

11  'similarly situated.'" Sheffield v. Orius Corp., 211 F.R.D. 411,

12  413 (D. Or. 2002).  As further explained in Sheffield:

13      This court considers the term 'similarly situated' in
        light of the purposes and goals of a collective action.
14      The Supreme Court has recognized that class actions can
        be an efficient mechanism for resolving a number of
15      disputes in one consolidated action. See Hoffman-La
        Roche, 493 U.S. at 170, 110 S. Ct. 482; see also Daggett
16      [v. Blind Enterprises of Or.], 1996 U.S. Dist. LEXIS
        22465, at *17 [D. Or. 1996].  However, an action
17      dominated by issues particular to individual plaintiffs
        can not be administered efficiently because individual
18      issues predominate over collective concerns.
            Putative class members must share more than a common
19      allegation that they were denied overtime or paid below
        the minimum wage.  The class members must put forth a
20      common legal theory upon which each member is entitled to
        relief.
21
22  Sheffield, 211 F.R.D. at 413.

23      The 'similarly situated' standard is less stringent than the

24  requirement under Rule 23(b)(3) that common questions of law or

    fact predominate over questions affecting only individual members.
25
    Ballaris v. Wacker Siltronic Corp., No. 00-1627-KI, 2001 WL
26
    1335809, at *2 (D. Or. Aug. 24, 2001).  In fact, the Eleventh
27
    Circuit has held that the similarly situated requirement is more
28

19 - FINDINGS & RECOMMENDATION

1  flexible than the requirements of Rule 20 (joinder) and Rule 42

2  (severance).  Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th

3  Cir. 1996).

4        Nonetheless, plaintiffs are required to show through

5  admissible evidence a "reasonable basis" for their claim that the

6  employer acted on a class-wide basis.  Hargrove v. Sykes

7  Enterprises, Inc., No. CV-00-11-HA, 1999 WL 1279651, at *3 (D. Or.

8  June 30, 1999).  Plaintiffs' claims "must contain questions of both

9  law and fact which are common to all employees engaged in the same

10  character of work."  Id. (internal quotation omitted).  The burden

11  is on plaintiffs to show they are similarly situated.  Id.

12  Unsupported allegations of widespread violations are insufficient.

13  Freeman v. Wal-Mart Stores, Inc., 256 F. Supp. 2d 941, 945 (W.D.

14  Ark. 2003).

15        B.  Discussion

16        Plaintiffs seek certification of a collective action under

17  section 216(b).  Compl. at ¶ 23.  They allege that they bring these

18        claims on their own behalf and on behalf of all employees
        who, in the three years prior to the filing of the
19        complaint, worked weeks without receiving compensation
        equal to the minimum wage for all hours worked and/or
20        worked hours in excess of 40 hours per week and who were
        not compensated 1½ times their regular hourly rate, and
21        who have filed or will file in this Court consent to
        being a party Plaintiffs [sic].  (Hereafter "FLSA
22        classes").

23  Id. at ¶ 23.  They further allege that they are similarly situated

24  to members of the FLSA classes and that US Bank acted in accordance

25  with a uniform policy in performing the acts alleged to violate the

26  FLSA.  Id. at ¶ 24.

27        Plaintiffs contend that common questions of fact and law exist

28  as to all FLSA collective action members and predominate over any

20 - FINDINGS & RECOMMENDATION

questions that affect only individual members. Id. at ¶ 28. They contend that the conduct at issue affected all current and former hourly employees and all current and former SSMs who work or have worked for US Bank in the United States. Id. They allege that the common questions include, but are not limited to:

(1) whether plaintiffs and FLSA collective action members are subject to the FLSA;

(2) whether US Bank had a policy of reducing the recorded hours worked by systematically rounding all time entries downward;

(3) whether US Bank suffered and permitted all Rounding OT FLSA members to perform work for more than 40 hours in a single week without compensating the employee at 1½ times their regular hourly rate for those hours worked;

(4) whether US Bank suffered and permitted Rounding MW FLSA members to perform work, for which it failed to pay all minimum wages due;

(5) whether SSMs worked hours in excess of 40 hours per week;

(6) whether US Bank paid SSMs at a rate of 1½ times their regular hourly rate for all hours worked over 40 hours per week;

(7) whether US Bank was required under the FLSA to pay all SSMs 1½ times their regular hourly rate for all hours worked in excess of 40 hours per week;

(8) whether SSMs fit into any exemptions under the FLSA from overtime requirements;

(9) whether US Bank failed to pay plaintiffs and similarly situated collective action members all wages after termination of their employment as required by their corresponding state wage and hour laws; and

21 - FINDINGS & RECOMMENDATION

1    (10) which remedies are available for the alleged violations.

2    Id. at ¶¶ 31(a), (b).

3        In their reply brief, plaintiffs state that they do not seek

4    to notice the putative SSM plaintiffs at this time and that they do

5    not seek to separately notice the late pay/termination plaintiffs.

6    Rather, they have narrowed their motion to notice of the Rounding

7    OT Class and the Rounding MW Class. Thus, paragraphs (5) – (8)

8    above are not considered here.

9        In support of notice to the rounding claims classes,

10   plaintiffs rely on McElmurry's declaration in which she states that

11   while working as a "vault manager," she was paid an hourly wage and

12   her work time was tracked on a "weekly time report." McElmurry

13   Declr. at ¶¶ 4, 5. Each time report covers a one-week period.

14   Attached as Exhibit 1 to her declaration is a copy of the "weekly

15   time report" she used. Id. at ¶ 5. The report contains a

16   conversion chart instructing the employee how to convert minutes

17   worked to tenths of an hour. Id. at ¶ 6. McElmurry contends that

18   under this chart, all rounding was done in favor of US Bank. Id.

19   at ¶ 7. She cites the workweek ending July 18, 2003, as an example

20   of a week for which she was not paid for all of her time worked

21   because of the rounding policy. Id. at ¶ 8. She contends this

22   resulted in unpaid wages and unpaid overtime wages. Id.

23       Plaintiffs also rely on the declaration of non-plaintiff

24   Nathan Bailey who states that he was an hourly employee and

25   submitted weekly time reports. Bailey Declr. at ¶¶ 1, 2. He also

26   contends that the conversion chart requires that all rounding be

27   done in favor of US Bank. Id. at ¶ 4. He contends that in the

28   week ending April 25, 2002, the rounding policy resulted in him not

22 - FINDINGS & RECOMMENDATION

being paid all of his wages. Id. at ¶ 5. He further contends that
the policy caused defendant to fail to pay him the then prevailing
minimum wage for all time worked as required by Washington wage and
hour laws and the FLSA. Id. at ¶ 7.

Plaintiffs submit copies of weekly time reports of forty-
eight[2] separate employees which show, according to plaintiffs, that
defendant's rounding policy resulted in a failure to pay overtime
wages. Exh. 1 to Shuck Affid. Plaintiffs state that these
examples are current and past employees who worked for US Bank at
ten separate locations in Oregon during a six-month period. They
were produced by defendant in the Rivera case. Plaintiffs
estimate, based on forty-nine employees (including the duplicate
record), at ten locations, and based on the representation that
defendant has 1,190 locations in the United States, that no less
than 5,831 current and former employees have similar rounding
claims to the named plaintiffs.

In their reply memorandum, plaintiffs set forth a definition
of the class to be noticed as:

> All non-exempt employees who work or worked for US Bank
> National Association who within the three year period
> prior to the filing of plaintiffs' complaint, and
> recorded the hours they worked on a weekly time report
> which contains the rounding chart identical to those
> submitted by plaintiff McElmurry.

Pltfs' Reply Mem. at p. 12.

Plaintiffs argue that the allegations in the Complaint and in
their supporting affidavits show that there was a uniform company-

---

[2] Plaintiffs indicate that the reports are of forty-nine
separate employees, but in reply, plaintiffs do not dispute
defendant's assertion that one of the forty-nine is a duplicate.

23 - FINDINGS & RECOMMENDATION

1  wide policy that violates the FLSA.  They contend that plaintiffs

2  and all the employees who choose to opt-in were all affected by the

3  same rounding policy.  Thus, they argue that their claims should be

4  certified pursuant to section 216(b) as a collective action and

5  notice should be sent to all opt-in plaintiffs.

6      Defendant raises a host of arguments in opposition.  Defendant

7  contends that plaintiff's motion is premature, is unsupported by

8  adequate proof, that plaintiffs are not similarly situated, and

9  that plaintiffs have not sufficiently specified the purported class

10 to receive notice.  Because I agree with defendant that plaintiffs

11 have not met their burden to show they are similarly situated, I

12 decline to address defendant's other arguments.

13     Defendant maintains a policy of requiring employees to round

14 their time to the nearest tenth of an hour.  Marcia Kakiuchi Declr.

15 at ¶¶ 10, 16 and Exhs. 1-3 to Kakiuchi Declr.  While plaintiffs

16 have narrowed their notice request to only those putative class

17 members who used the particular time sheet attached to McElmurry's

18 declaration, it is undisputed that there were at least four

19 different weekly time reports in use during the relevant time

20 period.  These versions have been available on-line to employees

21 since 2001.  Defendant does not know when each of the various forms

22 was actually put on-line or off-line.  Moreover, sometimes

23 employees printed a particular version and continued to use it by

24 making photocopies of it, even after defendant had replaced it with

25 a different version, in contravention of defendant's instruction to

26 use the current version.

27     Employees in approximately twenty states used these various

28 weekly time reports.  In approximately fifteen states, employees

24 - FINDINGS & RECOMMENDATION

1   used a different system which did not involve filling out a weekly
2   time report.  However, defendant represented at oral argument that
3   some or all of the employees in those states are now using weekly
4   time reports, although defendant did not specify which form of time
5   report these employees are using.

6       The different versions of the weekly time reports have
7   different "tenths" conversion charts.  The one attached to
8   McElmurry's declaration and to which plaintiffs narrow their notice
9   request, has a place for the employee to record the employee's work
10  start time, time out for lunch, time back in from lunch, and work
11  end time.  Exh. 1 to McElmurry Declr.  It also provides for a daily
12  total of hours worked, to be recorded in tenths.  Id.  The form
13  instructs that "[e]mployees should record their In and Out times
14  above.  Time should be rounded to the nearest tenth of an hour."
15  Id.  The conversion chart provides that 0-5 minutes are recorded as
16  "0"; 6-11 minutes are recorded as "0.1"; 12-17 minutes are recorded
17  as "0.2"; 18-23 minutes are recorded as "0.3"; 24-29 minutes are
18  recorded as "0.4"; 30-35 minutes are recorded as "0.5"; 36-41
19  minutes are recorded as "0.6"; 42-47 minutes are recorded as "0.7";
20  48-53 minutes are recorded as "0.8"; and 54-59 minutes are recorded
21  as "0.9."  Id.  If an employee follows these instructions and
22  records their in and out time accurately, they round their time
23  down to their detriment.

24      Another version of the weekly time report includes the same
25  message about recording in and out times and rounding to the
26  nearest tenth, but it contains no conversion chart.  Exh. 1 to
27  Kakiuchi Declr. at p. 1.  Two others lack the "in and out time and
28  rounding to the nearest tenth" message, but have conversion charts.

25 - FINDINGS & RECOMMENDATION

1   Id. at pp. 2, 3.  On one, the conversion chart is the same as the
2   one in the weekly time report attached to McElmurry's declaration.
3   Id. at p. 3.  The other, however, has a different conversion chart
4   which provides:  1-6 minutes are recorded as "0.1"; 7-12 minutes
5   are recorded as "0.2"; 13-18 minutes are recorded as "0.3"; 19-24
6   minutes are recorded as "0.4"; 25-30 minutes are recorded as "0.5";
7   31-36 minutes are recorded as "0.6"; 37-42 minutes are recorded as
8   "0.7"; 43-48 minutes are recorded as "0.8"; 49-54 minutes are
9   recorded as "0.9"; and 55-59 minutes are recorded as "1.0."  Exh.
10  1 at p. 2.  This one also lacks the instruction in the "Daily
11  Totals" column to list hours worked in tenths.  Id.  Rather, it
12  instructs the employee to list the daily total of hours worked in
13  hours and minutes.  Id.  Use of this form by an employee following
14  the instructions may result in rounding up, rounding down, or no
15  rounding at all.

16      In the last example provided in this record, the daily totals
17  column has a column for hours worked which contains an asterisk.
18  Id. at p. 4.  The asterisk leads the employee to the "Rounding
19  Rules" at the bottom right corner of the sheet.  There, the
20  employee is told:  "Each day, calculate the total number of hours
21  and minutes worked.  Round the total to the nearest tenth of an
22  hour using this chart, and enter the rounded total above."  Id.
23  The  instruction  continues:   "For  example,  [based  on  the
24  accompanying chart], enter 7 hours and 32 minutes as 7.5 hours;
25  enter 7 hours and 58 minutes as 8.0 hours."  Id.  The conversion
26  chart provides:  0-2 minutes are recorded as "0"; 3-8 minutes are
27  recorded  as  "0.1";  9-14  minutes  are  recorded  as  "0.2";  15-20
28  minutes are recorded as "0.3"; 21-26 minutes are recorded as "0.4";

26 - FINDINGS & RECOMMENDATION

27-32 minutes are recorded as "0.5"; 33-38 minutes are recorded as "0.6"; 39-44 minutes are recorded as "0.7"; 45-50 minutes are recorded as "0.8"; 51-56 minutes are recorded as "0.9"; and 57-59 minutes are recorded as "1.0." Id. Using this form and following the instructions could result in rounding up, rounding down, or no rounding.

As can be seen from these exhibits, employees using the weekly time report attached to McElmurry's declaration who made no adjustment to the actual time they reported to work, left for lunch, returned from lunch, and left for the day and thus, only used the conversion chart to adjust their total daily hours worked, would end up either reporting their time accurately or rounding down. As defendant notes, however, given the instruction that employees are to record their in and out times and round time to the nearest tenth of an hour, some employees may employ the conversion chart not just to convert the daily total of hours worked, but also to the beginning, lunch out, lunch in, and work ending times. Thus, contrary to plaintiffs' contention that this particular weekly time report always results in a rounding down of an employee's time, it is clear that first, the employee's time could be straightforward and accurately reported with no rounding[3], and second, an employee could interpret the chart as requiring rounding of the start, lunch, and ending times and thus, could end

---

[3] For example, an employee who begins at 8:00 a.m., has lunch from 11:00 a.m. to 12:00 p.m. and ends at 5:00 p.m. would have worked eight total hours. The conversion chart would have the employee record this as 8.0 hours, an accurate report with no rounding up or down.

27 - FINDINGS & RECOMMENDATION

1   up rounding up[4].   I note this could result in rounding down for

2   start, lunch, and ending times as well.

3        The other weekly time reports do not necessarily result in a

4   consistent rounding down.   In one, an employee working thirteen

5   minutes gets to round up to 0.3 and one working fifty-five minutes

6   gets to round up to 1.0.   Exh. 1 to Kakiuchi Declr. at p. 2.   In

7   another, an employee working three minutes gets to round up to 0.1

8   and another working fifty-seven minutes gets to round up to 1.0.

9   Id. at p. 4.   In yet another, while employees are told to round to

10  the nearest tenth of an hour, no conversion chart is provided, thus

11  presumably   leaving   the   conversion   up   to   the   employee's

12  interpretation and judgment.   Id. at p. 1.

13       Plaintiffs provide ample evidence that rounding down does

14  occur using the weekly time report attached to McElmurry's

15

───────────────

16       [4] For example, as defendant notes, an employee who reports
17  to work at 8:05 a.m. could rely on the conversion chart showing
    that 0-5 minutes are to be recorded as "0," to record the start
18  time as 8:00 a.m., thus rounding "up."
         Plaintiffs contend that employees using this weekly time
19  report do not round their start, lunch, and ending times, but
    rather use the conversion chart to round only the daily total
20  hours worked.   Accordingly, following plaintiffs' contention,
    rounding is always done downward in the bank's favor.
21       Plaintiffs' position is unavailing for two reasons.   First,
22  as demonstrated in the previous footnote, many employees' time
    will be accurately reported with no rounding at all.   Second,
23  plaintiffs ignore the express instruction, set off in a box,
    which tells employees to record their in and out times and round
24  to the nearest tenth of an hour.   While these are two separate
    sentences, the rounding instruction immediately follows the
25  instruction to record in and out times and the instructions
    appear as the only instructions inside a box set off from any
26  other instructions.   While plaintiffs may have interpreted this
    instruction as applying only to the daily total hours worked,
27  other employees may have reasonably interpreted the instruction
28  differently.

28 - FINDINGS & RECOMMENDATION

declaration.  The evidence in the record, however, does not support
plaintiffs' contention that that particular time report <u>always</u>
results in the rounding down of an employee's time worked.    In
addition to the examples given above, defendant provides evidence
showing that of the forty-eight rounding down instances submitted
by plaintiff, nine were either not rounded at all or were rounded
up.    Harumi Yamamoto Declr. at ¶ 2.    And, twenty-three of the
forty-eight who were underpaid one week were overpaid in other
weeks.    <u>Id.</u> at ¶ 6; Sandy Forrest Declr. at ¶ 1; Exh. 1 to Forrest
Declr.

A rounding policy or practice that consistently resulted a
rounding down of hours would likely violate the FLSA.    But, the
regulations clearly provide that rounding is not a per se violation
of the law:

> this practice [referring to recording employees' starting
> and stopping time to the nearest five minutes, 1/10 of an
> hour, or quarter hour] of computing working time will be
> accepted provided that it is used in such a manner that
> it will not result, over a period of time, in failure to
> compensate the employees properly for all the time they
> have actually worked.

29 C.F.R. 785.48(b).    I have found no case indicating what "period
of time" is to be considered in determining whether a rounding
policy violates this regulation.    In the only federal or state case
I found interpreting this regulation, it is unclear how long the
"period of time" at issue was.

In <u>East v. Bullock's, Inc.</u>, 34 F. Supp. 2d 1176 (D. Ariz.
1998), the plaintiff had worked for the defendant just over three
and one-half years, at least sixteen months of which she was paid
by the hour.    <u>Id.</u> at 1178.    In addition to her other claims, she
brought a claim under Arizona state law for failure to pay for all

29 - FINDINGS & RECOMMENDATION

1    hours worked.  Id. at 1183.  She cited twenty-eight examples of
2    occasions when she was paid for less than the full time she worked.
3    Id. at 1184.

4         The court noted that "[d]uring the same time period in which
5    Plaintiff was 'underpaid,' her payroll records show[] that she was
6    also 'overpaid.'"  Id.  Thus, the evidence showed that the
7    defendant's "rounding system may not credit employees for all the
8    time actually worked, but it also credits employees for time not
9    actually worked."  Id.  Thus, the court found that the defendant's
10   rounding practices "averaged out sufficiently to comply with §
11   785.48(b)."  Id.

12        What the court failed to explain was the time period in which
13   the alleged twenty-eight underpayments occurred.  It is unclear
14   from the opinion whether the sixteen months during which she was an
15   hourly employee was the relevant time period, or whether something
16   less than that comprised the "period of time" at issue.  It is also
17   unclear how often she was paid.

18        While I find no guidance in the case law, it seems reasonable
19   to assume that for employees paid weekly, a period of at least
20   several weeks, if not months, is appropriate.  A lesser period
21   would be incapable of producing the averaging of wages contemplated
22   by the regulation.

23        Here, plaintiffs contend that they suffered a loss of overtime
24   or minimum wages by using the weekly time report attached to
25   McElmurry's declaration.  To be similarly situated to plaintiffs,
26   members of the putative class must also have suffered a similar
27   loss.  The problem with plaintiffs' argument that the rounding
28   claims are suitable for collective action, is that to determine if

30 - FINDINGS & RECOMMENDATION

1  a putative plaintiff is similarly situated requires a very

2  individualized inquiry and a review of thousands, if not tens of

3  thousands, of individual time sheets.

4      As noted above, while a collective action is an "efficient

5  mechanism" for resolving a number of similar disputes based on a

6  common practice, "an action dominated by issues particular to

7  individual plaintiffs can not be administered efficiently because

8  individual issues predominate over collective concerns."

9  Sheffield, 211 F.R.D. at 413.

10     Here, for a putative class member to be similarly situated to

11 plaintiffs, meaning that the employee actually lost overtime or

12 minimum wages as a result of using the particular weekly time

13 report attached to McElmurry's declaration, the employee would need

14 to be a non-exempt hourly employee who used the weekly time report

15 at issue here, whose hours required rounding (in one or both of two

16 ways) as opposed to straightforward reporting, whose interpretation

17 of the conversion chart led them to round down, whose rounding down

18 occurred consistently as opposed to sporadically, and who

19 exclusively used the chart in this fashion over a "period of time"

20 of at least weeks or months and did not use a different version of

21 the weekly time report during the relevant "period of time."

22     This list of conditions shows that determining the putative

23 class requires an exceptionally individualized inquiry.  As in

24 Sheffield, the evidence demonstrates that "each claim would require

25 extensive consideration of individualized issues of liability and

26 . . . [any collective action would be] mired in particularized

27 determinations of liability . . . rather than collective

28 consideration of common questions of law and fact."  Id.; see also

31 - FINDINGS & RECOMMENDATION

Pfohl v. Farmers Ins. Group, No. CV03-3080 DT (RCX), 2004 WL
554834, at *7-10 (C.D. Cal. Mar. 1, 2004) (denying plaintiffs'
motion for collective action certification under the FLSA when
certain status of employees needed to be determined on an employee-
by-employee basis).

While the burden at the initial stage of the conditional
collective action certification process under the FLSA is not
heavy, and plaintiffs do not need to make a showing of success on
the merits of their claims (and I undertake no consideration of the
merits at this time), plaintiffs nonetheless are obligated to show
that they are similarly situated to the putative class.  Here,
plaintiffs have shown that the common facts between them and the
putative class are limited to being non-exempt employees who used
the challenged time sheet at some point during the relevant statute
of limitations time period.  But, as explained above, those common
facts, by themselves, are insufficient to show that any given
member of the putative class was harmed by the rounding policy as
plaintiffs claim they were.

Plaintiffs fail to show a single course of action binding the
putative class together.  Rather, the similarly situated
determination in terms of actual wage loss requires individual
employee-by-employee, time sheet-by-time sheet inquiries which are
inconsistent with a collective action's goal of promoting judicial
efficiency.  Accordingly, I recommend that plaintiff's motion for
notice be denied.[5]    Furthermore, given my recommendation, I

---

[5]  I note that given the limitation of the notice request in
plaintiffs' reply memorandum to the rounding class, I have not
discussed the arguments relevant to the SSM claim or the late

32 - FINDINGS & RECOMMENDATION

1    recommend that plaintiff's request that the statute of limitations
2    be tolled during the notice period, also be denied.
3    III.  Defendant's Motions to Strike
4         Defendant moves to strike portions of the declarations filed
5    by McElmurry, Gustafson, Bailey, Schuck, and Halliday, all filed by
6    plaintiffs in support of their notice motion.  Defendant also moves
7    to strike Exhibit 1 to Schuck's declaration.

8         I deny the motions to strike as moot because even considering
9    the challenged portions of the declarations and the challenged
10   exhibit, I recommend that plaintiffs' motion for notice be denied.
11   There is no need to consider the merits of defendant's arguments.
12                              CONCLUSION
13        I recommend that defendant's Rule 12 motions (#13) be granted
14   in part and denied in part and that plaintiffs' motion for notice
15   (#4) be denied.  I further recommend that defendant's motions to
16   strike (#18, #40) be denied as moot.
17                           SCHEDULING ORDER
18        The above Findings and Recommendation will be referred to a
19   United States District Judge for review.  Objections, if any, are
20   due August 11, 2004.  If no objections are filed, review of the
21   Findings and Recommendation will go under advisement on that date.
22   / / /
23   / / /
24   / / /

25   _____

26   pay/termination claim.  However, I note that my initial review of
     the arguments and the evidence leads me to believe that
27   plaintiffs would encounter similar "individualized inquiry"
     problems in regard to the "similarly situated" requirement as to
28   those putative class members.

33 - FINDINGS & RECOMMENDATION

1    If objections are filed, a response to the objections is due

2  August 25, 2004, and the review of the Findings and Recommendation

3  will go under advisement on that date.

4    IT IS SO ORDERED.

5

6            Dated this  27th  day of  July        , 2004.

7

8

9              /s/ Dennis James Hubel
               Dennis James Hubel
10             United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

34 - FINDINGS & RECOMMENDATION