1

2

3

4

5

6

7

8

9             IN THE UNITED STATES DISTRICT COURT

10               FOR THE DISTRICT OF OREGON

11  KERI MCELMURRY AND KAREN      )
    MRAZEK INDIVIDUALLY, and on   )
12  Behalf of All Similarly       )
    Situated                      )    No.  CV-04-642-HU
13                                )
                   Plaintiffs,    )
14                                )
         v.                       )
15                                )    ORDER
    US BANK NATIONAL ASSOCIATION, )
16                                )
                   Defendant.     )
17  _____ )

18

19  J. Dana Pinney
    A.E. Bud Bailey
20  David Schuck
    Jose Mata
21  BAILEY, PINNEY & ASSOCIATES, LLC
    916 Broadway, Suite 400
22  Vancouver, Washington 98660

23       Attorneys for Plaintiffs

24  Carol J. Bernick
    Christopher F. McCracken
25  Kevin H. Kono
    DAVIS WRIGHT TREMAINE, LLP
26  1300 S.W. Fifth Avenue, Suite 2300
    Portland, Oregon 97201

27       Attorneys for Defendant

28  / / /

    1 - ORDER

HUBEL, Magistrate Judge:

Plaintiffs Keri McElmurry and Karen Mrazek bring this Fair Labor Standards Act (FLSA) action on behalf of all similarly situated plaintiffs and against defendant US Bank National Association. In their Second Amended Complaint, plaintiffs bring four claims for relief: (1) a claim by sales and service managers (SSMs) who allege that they were misclassified as exempt employees and thus denied overtime pay in violation of the FLSA, 29 U.S.C. § 207; (2) a claim that defendant's use of a certain conversion chart on weekly time reports caused hourly employees to consistently under-report the actual time worked, causing any employee working approximately 40 or more hours per week to have been denied overtime in violation of the FLSA, 29 U.S.C. § 207; (3) a claim that defendant's use of the conversion chart at issue in claim two, caused hourly employees to consistently under-report the actual time worked resulting in the nonpayment of wages in violation of the FLSA's minimum wage protections, 29 U.S.C. § 206; and (4) a supplemental state claim under Oregon Revised Statute § (O.R.S.) 652.410 contending that wages were not timely paid upon termination of employment. Plaintiffs allege that the FLSA claims are willful violations.

In an August 24, 2005 Findings & Recommendation, I recommended that defendant's motion to dismiss the minimum wage conversion chart claim, be granted. Judge Haggerty adopted my Findings & Recommendation in an October 7, 2005 Order. In that same Order, Judge Haggerty also adopted my July 29, 2005 Findings & Recommendation that plaintiff's motion to certify both conversion chart claims as an FLSA collective action, be denied. Thus,

2 - ORDER

1   presently pending in the case are two FLSA-overtime claims, one
2   related to the SSMs and the other related to the conversion chart,
3   and one supplemental claim under O.R.S. 652.410.  Collective action
4   certification has been denied on the FLSA conversion chart claim.

5       Plaintiffs now move for an order conditionally certifying the
6   SSM overtime claim as a collective action and allowing notice to be
7   sent to putative collective action members in Washington and
8   Oregon.  Plaintiffs also move for an order tolling the statute of
9   limitations for all putative collective action members as of the
10  date of the filing of this action through the entire notice
11  process.  Finally, plaintiffs move to strike certain declarations
12  filed by defendant in response to plaintiffs' collective action
13  motion.

14      I grant in part and deny in part the motion to strike.  I deny
15  the collective action certification and tolling motions, but give
16  plaintiffs leave to refile those motions after obtaining additional
17  discovery as outlined below.

18                          DISCUSSION
19  I.  Motion to Strike

20      In response to plaintiffs' certification/notice motion,
21  defendant filed the following employee declarations:  (1) Human
22  Resources Metro Banking Manager Marcia Kakiuchi;  (2) Human
23  Resources Compliance Analyst John Burnside; (3) former SSM but
24  current Branch Manager Mary Walker; (4) SSM Dawn Gludt; (5) SSM
25  Darlene Salisbury; (6) SSM Roberta Waines; (7) SSM Julie Oliveros;
26  (8) SSM Marsha Davey; (9) SSM Janet Smith; and (10) SSM Lynnette
27  Barnes.  Plaintiffs move to strike the eight SSM declarations.

28      Each of the eight declarations begins with these paragraphs:

3 - ORDER

I understand that this Declaration is being provided in a lawsuit brought against U.S. Bank by Keri McElmurry and Karen Mrazek in which they allege that they were not properly classified as exempt from overtime. Before speaking with any representative for U.S. Bank, I was informed that the representative was from the law firm representing U.S. Bank in this matter and that she and the law firm of Davis Wright Tremaine does [sic] not represent me. I was also informed that the employees who filed the lawsuit seek to have the collective action certified, and that the matter of collective action certification has not been ruled upon by the Court. I further understand that as the class is defined by plaintiffs, I have the right to participate in the lawsuit.

Prior to speaking with the representative for U.S. Bank, I was informed that I did not have to answer any questions and could stop the interview at any time. I was informed that the interview was purely voluntary and that if I did not wish to speak, there would be no impact on my employment. At no time did the representative from U.S. Bank's law firm encourage or discourage me from participating in the lawsuit.

U.S. Bank's attorneys provided me with an opportunity to review the Declaration and to make any corrections. The attorneys informed me that I could refuse to sign the Declaration without any impact on my employment.

Walker Declr. at ¶¶ 3-5; Barnes Declr. at ¶¶ 3-5; Smith Declr. at ¶¶ 3-5; Davey Declr. at ¶¶ 3-5; Oliveros Declr. at ¶¶ 3-5; Waines Declr. at ¶¶ 3-5; Salisbury Declr. at ¶¶ 3-5; Gludt Declr. at ¶¶ 3-5.

Each declarant then states her current position at the bank and the geographic location, as well as her total years of employment with defendant.

Each declarant, except one, then states that "[m]y day-to-day job duties vary, depending on a variety of factors including the time of the week and month, the staffing levels and the flow of customers and customer needs, which is unpredictable." Walker Declr. at ¶ 6; Barnes Declr. at ¶ 6; Davey Declr. at ¶ 6; Oliveros

4 - ORDER

Declr. at ¶ 8, Waines Declr. at ¶ 8; Salisbury Declr. at ¶ 7; and Gludt Declr. at ¶ 8.  The only declaration omitting the "day to day" recitation is Smith's.

After these initial statements, each declarant then offers a description of her job responsibilities.  Although the declarants offer different details about their actual job responsibilities, some similarity appears.  Overlapping is seen in the following three categories:

(1)  Significant Weight Into Hiring, Pay Raise, or Budgeting

Smith states that at her branch, the branch manager handles applications by persons seeking to become "personal bankers." Smith Declr. at ¶ 7e.  She further states that she usually accompanies "the branch manager while he interviews for the personal banker openings and offer my recommendations, which are given significant weight."  Id.

Other SSMs offer similar statements about their hiring or pay raise recommendations being given "significant" or "serious" weight.  Gludt Declr. at ¶ 9b ("I make recommendations regarding raises for employees, which recommendations are given serious weight");  Salisbury Declr. at ¶ 8d ("Although the branch manager makes the final decision [regarding all job applications,] my input is usually requested and my recommendations are given significant weight.");  Waines Declr. at ¶ 9c ("Approximately 40 teller pay raises have been given in my five years as Sales and Service Manager and I have provided meaningful input in each"); Oliveros Declr. at ¶ 9c ("My recommendation on hiring is given serious weight"); Davey Declr. at P 9d ("As part of the evaluation process,

5 - ORDER

1    I have made recommendations regarding merit and pay raises for all
2    staff.  Many of these recommendations have resulted in an increase
3    in pay for the employee.").

4        One SSM states that while budgeting for her branch is handled
5    by the branch manager, her recommendations are "given significant
6    weight."  Barnes Declr. at ¶ 9k.

7        (2)  Time Spent Related to Defendant's Operations
             or Management Policies
8
9        Several of the declarants state that they spend "at least 50%
10   of my time performing duties directly related to U.S. Bank's
11   operations or management policies."  Barnes Declr. at ¶ 9t; Davey
12   Declr. at ¶ 9o; Waines Declr. at ¶ 9v.   Three others say
13   essentially the same thing:  "More than 50% of my time is spent on
14   management duties directly related to U.S. Bank's operations or
15   management policies."  Gludt Declr. at ¶ 9r; Salisbury Declr. at ¶
16   8q; Walker Declr. at ¶ 8t.

17       One SSM states that she estimates that she spends "80-85% of
18   my time performing duties directly related to the general business
19   operations of U.S. Bank or its management policies."  Oliveros
20   Declr. at ¶ 9p.

21       Only SSM Smith makes no mention of spending any time related
22   to the operations or management policies of defendant.

23       (3)  Time Spent Doing Managerial and Administrative
             Duties

24       SSM Walker states that she "spend[s] more than fifty percent
25   of my time doing managerial and administrative duties."  Walker
26   Declr. at ¶ 8l.  SSM Gludt states that she spends "[a]pproximately
27   seventy percent of my day ... performing managerial or
28   administrative work."  Gludt Declr. at ¶ 9k.

6 - ORDER

1    Plaintiffs move to strike the SSM declarations on the
2  following bases:  (1) relevance; (2) containing improper legal
3  conclusions;  (3) inherently coercive;  (4) appearance of
4  impropriety.  I address the arguments in turn.
5    A.  Relevance
6    Plaintiffs contend that the SSM declarations are offered to
7  show the divergent circumstances of potential plaintiffs and that
8  this is not a relevant consideration at this initial stage.
9  Plaintiffs also contend that defendant submits the declarations in
10  order to argue the merits of the exemptions.
11    Defendant argues that it is not intending to litigate the
12  merits at this point, but that an appreciation for what the issues
13  will be at trial is necessary to fully analyze the similarly
14  situated standard.
15    I agree with defendant that the information contained in the
16  SSM declarations is not inappropriate merits evidence and that it
17  is relevant to the overall similarly situated analysis.  As
18  explained more fully below, I conclude that the second stage
19  similarly situated analysis is appropriate for this motion and I
20  consider the SSM declarations to offer relevant evidence on that
21  issue.  To the extent the SSM declarations are offered on any other
22  issue, I do not consider them.
23    B.  Improper Legal Conclusions
24    Legal arguments or conclusions contained in declarations are
25  improper and should be stricken.  E.g., Pacific Gas & Elec. Co. v.
26  Lynch, 216 F. Supp. 2d 1016, 1027 (N.D. Cal. 2002) (granting motion
27  to strike declaration because it primarily contained legal argument
28  rather than evidentiary matter); Starke Cty. Farm Bureau Co-op.

7 - ORDER

1  <u>Ass'n v. ICC.</u>, 839 F. Supp. 1329, 1337 n.14 (N. D. Ind. 1993)

2  (granting motion to strike affidavits because contained legal

3  conclusions).

4      Plaintiffs argue that because these declarants lack any legal

5  training or experience and do not possess a legal degree or

6  license, their testimony on legal conclusions violates Federal Rule

7  of Evidence 701.  Plaintiffs challenge two statements seen in the

8  majority of the SSM declarations.  First, plaintiffs challenge any

9  statements referring to the weight given to a particular SSM's

10  opinion on hiring or pay raises.  Second, plaintiffs challenge any

11  SSM statements regarding the performance of work related to the

12  management or general business operations of the employer.

13      Plaintiffs note that one of the exemptions to an employer's

14  requirement to pay overtime is for employees "employed in a bona

15  fide executive, administrative, or professional capacity."  29

16  U.S.C. § 213(a)(1).  Administrative regulations further define the

17  scope of the exemption.  For example, 29 C.F.R § 541.201 provides:

18      (a) To qualify for the administrative exemption, an
        employee's primary duty must be the performance of work
19      <u>directly related to the management or general business</u>
        <u>operations of the employer or the employer's customers.</u>
20      The phrase "directly related to the management or general
        business operations" refers to the type of work performed
21      by the employee.  To meet this requirement, an employee
        must perform work directly related to assisting with the
22      running or servicing of the business, as distinguished,
        for example, from working on a manufacturing production
23      line or selling a product in a retail or service
        establishment.

24  29 C.F.R. § 541.201 (emphasis added).

25
        The regulations define an executive employee as one who is
26

27      (1) Compensated on a salary basis at a rate of not less
        than $455 per week (or $380 per week, if employed in
        American Samoa by employers other than the Federal
28      Government), exclusive of board, lodging or other

8 - ORDER

1    facilities;

2    (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily

3    recognized department or subdivision thereof;

4    (3) Who customarily and regularly directs the work of two or more other employees; and

5

6    (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other

7    change of status of other employees are <u>given particular weight</u>.

8

9    29 C.F.R. § 541.100 (emphasis added).

Plaintiffs note that the declarations use terms lifted

10

11    directly from the regulations such as "general business

12    operations," "management policies," "operations or management

13    policies," and "particular weight" (or such synonyms as

14    "significant weight").

In response, defendant contends that the challenged language

15

16    describes the declarants' work activities, which is a factual

17    matter, using common words, not legal terms of art. Defendant

18    notes that the SSM declarants have not stated that they are in fact

19    executive or administrative employees. In contrast, defendant

20    argues, what the declarants have described are the policy-related

21    and operations-related tasks that each performs and the amount of

22    time spent performing a category of tasks.

Defendant further argues that the terms "weight" and

23

24    "recommendations" are not legal terms and are common parlance used

25    to describe factual occurrences. Defendant argues that the use of

26    those common terms in conjunction with a description of human

27    resources activities makes the statements relevant, not legal

28    conclusions. The amount of weight given to an employee's

9 - ORDER

1  recommendations with respect to personnel matters constitutes a

2  fact that either supports or does not support the legal conclusion

3  of whether an employee is an executive or administrative employee

4  entitled to exemption.

5       I agree with defendant regarding any phrase or term related to

6  the "weight" given a particular SSM's opinions or recommendations.

7  I find this term to be a factual description of the SSM's duties,

8  in verbiage likely used by many employees in many different

9  settings.  While the administrative rule may indeed make the use of

10 the term significant, that does not in and of itself negate the

11 fact that the term or expression is one of common parlance, spoken

12 by many employees without regard to any legal meaning or

13 conclusion.

14      I disagree with defendant, however, as to the SSMs' statements

15 regarding the performance of duties or management duties directly

16 related to defendant's operations or management policies.  Here, I

17 agree with plaintiff that while the words, taken singly, do not

18 necessarily possess inherent legal gloss, they do, when combined

19 into the phrases used here, become legal terms of art which would

20 not commonly be used by employees in various settings to describe

21 their duties.  Thus, I grant the motion to strike these phrases, or

22 similar ones, in the SSM declarations.  I reject plaintiff's

23 argument, however, that these phrases have tainted each entire

24 declaration and I grant the motion only as to these particular

25 phrases.

26      C.  Coercion

27      Plaintiffs contend that because the declarations are of

28 current SSMs, they are inherently coercive and should be stricken.

10 - ORDER

1   Plaintiffs fail to cite to any cases which support their argument.

2       First, plaintiffs cite to two cases which concerned
3   credibility determinations, an issue involving factual findings
4   which is not appropriate at this stage. Sam's Club v. NLRB, 141
5   F.3d 653, 657 (6th Cir. 1998) (in review of administrative hearing
6   conducted by administrative law judge (ALJ), appellate court noted
7   that the ALJ concluded that the plaintiff was an honest and
8   credible witness because, as a current employee, she was unlikely
9   to lie because she had "booked the employer's disfavor and risked
10  reprisal," but that the demeanor of the company's witnesses led the
11  ALJ to believe that they were not telling the truth); McLaughlin v.
12  Ho Fat Seto, 850 F.2d 586, 588 (9th Cir. 1988) (appellate court
13  held that the district court's credibility determination finding
14  four rebuttal witnesses, who were employees of the defendant, not
15  credible, was not erroneous; no explanation by the court of the
16  basis of the district court's finding). These cases address
17  credibility determinations and are not relevant to the issue of
18  coercion based on employment status.

19      Next, plaintiffs cite cases for the proposition that an
20  employer contacting current employees in a class action case is
21  inherently coercive. Kleiner v. First Nat'l Bank of Atlanta, 751
22  F.2d 1193 (11th Cir. 1985); Bublitz v. E.I. DuPont de Nemours &
23  Co., 196 F.R.D. 545 (S.D. Iowa 2000). These cases are
24  distinguishable because of the difference between a class action
25  under Federal Rule of Civil Procedure 23 and a collective action
26  under the FLSA. In the former, class members are part of the class
27  unless they opt out. In the latter, class members become part of
28  the class only by affirmatively opting in.

11 - ORDER

1    While there is some inherent pressure in the relationship
2  between a current employee who is a putative class member and his
3  or her employer who is a defendant, the pressure is more attenuated
4  in the collective action where the employee is not automatically a
5  member of the class but is only a member when the employee
6  affirmatively opts in.

7    Moreover, the evidence here is that the contacts were limited
8  to acquiring factual information and defendant gave each declarant
9  critical information about the nature of the action, the right to
10  participate in the lawsuit, and the right to refuse to participate
11  in an interview with no fear of reprisal.  Although the employment
12  relationship carries potential for coercion, there is no evidence
13  of it occurring here.

14    I am concerned, however, about on-going contacts between
15  defendant and putative class members in the context of any
16  additional discovery or for declarations procured for dispositive
17  motions.   I conclude that the parties should confer before
18  additional contacts are made in an attempt to reach an agreement
19  regarding the conditions under which any future contacts will
20  occur.

21    D.  Appearance of Impropriety

22    Plaintiffs note that some courts have attached a constructive
23  attorney-client relationship between class counsel and class
24  members once a suit has been filed.  E.g., Roper v. Consurve, Inc.,
25  578 F.2d 1106, 1110 (5th Cir. 1978) ("By the very act of filing a
26  class action, the class representatives assume responsibilities to
27  members of the class"), aff'd sub nom. Deposit Guar. Nat'l Bank v.
28  Roper, 445 U.S. 326 (1980).  Plaintiffs also note that other courts

12 - ORDER

1   have gone even further and held that the Code of Professional

2   Responsibility applies to defense counsel's communication with

3   class members in class action suits. E.g., Lowery v. Circuit City

4   Stores, Inc., 158 F.3d 742, 764-65 (4th Cir. 1998) (noting that in

5   class action, district court applied Virginia Code of Professional

6   Responsibility Rule 7-103 which prohibits attorneys from

7   communicating with opposing parties, and restricted defendant's

8   communication to non-litigation matters unless they had consent of

9   class counsel or a court order), vacated on other grounds 527 U.S.

10  1031 (1999); Bower v. Bunker Hill Co., 689 F. Supp. 1032, 1034

11  (E.D. Wash. 1985) (applying DR 7-104 and holding that "defense

12  counsel may not communicate with any class member with respect to

13  matters which are the subject of this litigation without prior

14  consent of class counsel or this court.").

15      Although citing these cases, plaintiffs concede that there was

16  no attorney-client relationship between class counsel and class

17  members in this case, and therefore, they do not argue that defense

18  counsel has committed an ethical violation by contacting its

19  current SSM employees. However, plaintiffs argue, in contacting

20  the current SSM employees, defendant went beyond what is reasonable

21  and fair and created the appearance of impropriety. Plaintiffs

22  argue that because defense counsel approached the SSMs to obtain

23  information to aid in the preparation of defendant's case, against

24  the declarants' own interests, without advising them to seek

25  independent counsel and without telling them of the monetary value

26  of their claims, which plaintiffs allege could be in the tens of

27  thousands of dollars, the declarations should be considered

28  "tainted" and stricken under the court's supervisory powers.

13 - ORDER

1    I reject this argument.  Again, the distinction between class
2  membership in a Rule 23 class action and class membership in an
3  FLSA collective action, is important.  When courts suggest that
4  class counsel has a duty to putative class members in a Rule 23
5  class action, this is derived from the fact that the putative class
6  members in such an action are automatically part of the class until
7  they opt out.  No such duty exists in a collective action under the
8  FLSA where the putative class members must opt in to the class.
9  Again, as with plaintiffs' coercion argument, while there could be
10 potential for misconduct, I see none here.

11    Plaintiffs' motion to strike is granted as to the declarants'
12 statements regarding the performance of duties or management duties
13 directly related to U.S. Bank's operations or management policies.
14 The motion is denied in all other respects.

15 II.  Motion for Certification/Notice

16    In the two previous certification motions presented to this
17 Court by plaintiffs in connection with their conversion chart
18 claims, there has been no dispute as to the "level of scrutiny" to
19 apply to the "similarly situated" analysis used to determine the
20 appropriateness of certification as a collective action.  E.g.,
21 McElmurry v. U.S. Bank Nat'l Ass'n, No. CV-04-642-HU, Findings &
22 Recomm. at pp. 21-23 (D. Or. Aug. 1, 2005) (outlining "similarly
23 situated" standards for FLSA collective actions).  In the present
24 motion, however, the parties dispute whether the analysis should be
25 conducted at the "initial stage" with a fairly lenient and
26 deferential standard of "similarly situated," or whether it should
27 be conducted at the "second stage" with a more exacting standard.

28    As explained by the court in Hipp v. Liberty Nat'l Life Ins.

14 - ORDER

1  Co., 252 F.3d 1208 (11th Cir. 2001), district courts should use the

2  following two-tiered approach in certifying collective actions

3  under § 216(b):

4      The first determination is made at the so-called "notice
       stage." At the notice stage, the district court makes a
5      decision--usually based only on the pleadings and any
       affidavits which have been submitted--whether notice of
6      the action should be given to potential class members.

7      Because the court has minimal evidence, this
       determination is made using a fairly lenient standard,
8      and typically results in "conditional certification" of
       a representative class. If the district court
9      "conditionally certifies" the class, putative class
       members are given notice and the opportunity to "opt-in."
10     The action proceeds as a representative action throughout
       discovery.
11
       The second determination is typically precipitated by a
12     motion for "decertification" by the defendant usually
       filed after discovery is largely complete and the matter
13     is ready for trial. At this stage, the court has much
       more information on which to base its decision, and makes
14     a factual determination on the similarly situated
       question. If the claimants are similarly situated, the
15     district court allows the representative action to
       proceed to trial. If the claimants are not similarly
16     situated, the district court decertifies the class, and
       the opt-in plaintiffs are dismissed without prejudice.
17     The class representatives--i.e. the original
       plaintiffs--proceed to trial on their individual claims.
18
19  Id. at 1218 (internal quotation omitted).

20      Although it does not appear that the Ninth Circuit has

21  endorsed or even discussed this approach, in the absence of express

22  direction from the Supreme Court and most circuit courts, many

23  district courts, including the District of Oregon, use the two-

24  tiered approach to analyze collective action notice/certification

25  motions under section 216(b). Fichtner v. American Mut. Ins. Co.,

26  No. CV-02-6284-HO, 2004 WL 3106753, at *10 (D. Or. Mar. 1, 2004);

27  see also Aguayo v. Oldenkamp Trucking, No. CV F 04-6279 ASI LJO,

28  2005 WL 2436477, at *2-3 (E.D. Cal. Oct. 3, 2005) (electing to

15 - ORDER

1  follow two-tiered approach after discussing three different
2  approaches used by district courts and noting that two-tiered
3  approach "is the most generally accepted"); <u>Kalish v. High Tech</u>
4  <u>Institute, Inc.</u>, No. Civ 04-1440(JRT/JSM), 2005 WL 1073645, at *1
5  (D. Minn. Apr. 22, 2005); <u>Reed v. Mobile County Sch. Sys.</u>, 246 F.
6  Supp. 2d 1227, 1230 (S.D. Ala. 2003); <u>Goldman v. Radioshack Corp.</u>,
7  No. Civ 2:03-CV-0032, 2003 WL 21250571, at *6 (E.D. Pa. Apr. 16,
8  2003) (and citing other cases from district courts in the Third
9  Circuit).

10    Although there appears to be some variance in the application
11  of even the "initial stage," it seems fairly clear that the initial
12  stage does not encompass an in-depth fact specific inquiry into
13  topics such as job duties. <u>See Pendlebury v. Starbucks Coffee Co.</u>,
14  No. 04-CV-80521, 2005 WL 84500, at *3 (S.D. Fla. Jan. 3, 2005)
15  (defendant's evidence that employees "spend different amounts of
16  time on exempt tasks" presented "factual matters not appropriate
17  for consideration at this [initial] notice stage of litigation");
18  <u>Brown v. Money Tree Mortgage, Inc.</u>, 222 F.R.D. 676, 682 (D. Kan.
19  2004) ("The court will examine the individual plaintiffs' disparate
20  factual and employment settings . . . during the 'second stage'
21  analysis after the close of discovery"; court noted that "[a]ll
22  that is required for conditional certification at the notice stage
23  is substantial allegations that the putative class members were
24  together the victims of a single decision, policy, or plan")
25  (internal quotation omitted); <u>Leuthold v. Destinations Am.</u>, 224
26  F.R.D. 462, 468 (N.D. Cal. 2004) (noting that second tier inquiry
27  includes analysis of the "disparate factual and employment
28  situations of the opt-in plaintiffs" and that "defendants'

16 - ORDER

1    arguments in their opposition brief focus on the more stringent
2    second tier analysis and raise issues that may be more
3    appropriately addressed on a motion for decertification after
4    notice is given to the proposed class."); Goldman, 2003 WL
5    21250571, at *8-9 (court disregarded the defendant's assertions
6    concerning the differences between the plaintiff and other store
7    managers because that was a fact-specific inquiry not appropriate
8    at initial stage of analysis; court conditionally certified class
9    based on the plaintiff's evidence that all store managers had the
10   same employment contract, all were required to work at least 54
11   hours per week, and all were not paid overtime wages).

12       In contrast to the "lenient" standard of review seen at the
13   initial notice stage (whether it be deferentially lenient or more
14   strictly lenient), the issues at the second stage are more fact
15   intensive. See Coldiron v. Pizza Hut, Inc., No. CV03-0586STJHMCX,
16   2004 WL 2601180, at *1 (C.D. Cal. Oct. 25, 2004) (in second tier
17   determination, made after discovery is largely complete, "'court
18   weighs various factors in making a factual determination as to
19   whether the plaintiffs are similarly situated'" including "'(1) the
20   disparate factual and employment settings of the individual
21   plaintiffs, (2) the various defenses available to the defendant
22   which appeared to be individual to each plaintiff, and (3) fairness
23   and procedural considerations'"); (quoting Pfohl v. Farmers Ins.
24   Group, No. CV03-3080 DT (RCX), 2004 WL 554834, at *2 (C.D. Cal.
25   Mar. 1, 2004)).

26       In the instant case, plaintiffs contend that the present
27   motion should be analyzed under the more lenient standard used at
28   the initial stage. Defendant contends that even though there has

17 - ORDER

1  been no conditional certification and thus, no motion to decertify,
2  the present motion and the "similarly situated" standard should be
3  analyzed under the more stringent fact intensive inquiry required
4  at the second stage because discovery in the case is complete.

5      Defendant cites cases supporting the proposition that when
6  discovery has closed, the second tier analysis is appropriate,
7  whether it is done as part of a motion for notice/certification or
8  a motion to decertify.  See Cameron-Grant v. Maxim Healthcare
9  Servs., Inc., 347 F.3d 1240, 1243 n.2 (11th Cir. 2003) (noting that
10 second stage determination typically precipitated by defendant's
11 decertification motion), cert. denied, 541 U.S. 1030 (2004); Pfohl,
12 2004 WL 554834, at *3 (applying second tier analysis to plaintiff's
13 motion for certification because parties did not dispute that
14 discovery had been undertaken regarding the issues of
15 certification); Morisky v. Public Serv. Elec. & Gas Co., 111 F.
16 Supp. 2d 493, 497-98 (D.N.J. 2000) (applying second stage analysis
17 to plaintiffs' certification motion because over 100 plaintiffs had
18 opted in and discovery had closed).

19     I agree with defendant that the fact that this is plaintiffs'
20 motion for notice/certification does not prohibit a second stage
21 stricter scrutiny of the "similarly situated" standard if the
22 circumstances justify it.  I also agree with defendant that the
23 history of this case, and the fact that discovery is closed with
24 the exception of responses to two interrogatories, compels a
25 conclusion that the motion should be resolved under the second
26 stage inquiry, once those interrogatory responses have been
27 provided.

28     The SSM claim has been pending in one form or another for more

18 - ORDER

1    than two years.  It was originally filed in state court in July
2    2003 and then refiled in this Court in May 2004.  Shortly after
3    filing the case here, plaintiffs filed their first notice motion
4    which requested notice and certification for the conversion chart
5    claims and the SSM claim.  Plaintiffs then voluntarily dropped the
6    motion as to the SSM claim before oral argument.

7         Plaintiffs then engaged in discovery on all claims, including
8    the SSM claim.  In July 2005, plaintiffs moved to compel discovery
9    related to all claims, including the SSM claim.  The motions were
10   resolved at a hearing on September 6, 2005.  During the hearing, I
11   reserved ruling on two interrogatories relevant to the SSM claim.
12   Interrogatory Number 10 requested defendant to

13        [l]ist each sales and service manager whose employment
          with defendant has terminated within the last three (3)
14        years, providing the name of the terminated employee, the
          address of the terminated employee, the phone number of
15        the terminated employee, and the defendant's business
          location where the employee worked at termination.
16
17   Pltfs' Interrog. No. 10.  Interrogatory Number 11 requested that
18   defendant provide the date of termination for each SSM listed in
19   response to Interrogatory #10.

20        Defendant had resisted responding to these interrogatories in
21   part because in defendant's opinion, responses were premature given
22   that the SSM claim had not yet been certified for collective
23   action.  I ordered defendant to answer the interrogatory with
24   respect to the named plaintiffs and any opt-in plaintiffs for the
25   Oregon branches at which they worked during the three years prior
26   to filing the lawsuit.  I reserved ruling on whether there would be
27   any further answer until after the resolution of the SSM
28   certification issue.

19 - ORDER

1    It is apparent that the only impediment to conducting the
2   "similarly situated" second stage analysis in this case is the
3   completion of this last piece of outstanding discovery.  The SSM
4   claim had been pending for fifteen months before the instant SSM
5   certification motion was filed.    Plaintiffs have engaged in
6   substantial discovery on the SSM claim and have successfully
7   extended the discovery deadline to pursue their discovery requests.
8   The only requested discovery that has not been produced is any
9   additional response to Interrogatory Numbers 10 and 11.  Discovery
10  has been closed since July 2005, with the exception of the
11  discovery ordered produced at the September 6, 2005 hearing on
12  plaintiffs' motions to compel, and with the exception of additional
13  production on Interrogatories 10 and 11.

14    The case history indicates that the case posture is much
15  closer to the second stage inquiry than the first initial stage
16  inquiry.  While I could resolve the motion under the first initial
17  stage inquiry and allow the outstanding discovery to proceed, I
18  would only be inviting a decertification motion by defendant once
19  it had produced that discovery, requiring that the similarly
20  situated issue be analyzed a second time.  Allowing the discovery
21  now, and conducting the similarly situated analysis only once, is
22  more efficient and makes better use of judicial resources.

23    Accordingly, I deny the motions for certification and tolling
24  at this time, but with leave to plaintiffs to renew the motions
25  after obtaining the discovery requested in Interrogatory Numbers 10
26  and 11.  The parties are ordered to confer regarding the timing and
27  procedures for production of the discovery and related follow-up by
28  plaintiffs once the discovery is received.  The Court will schedule

20 - ORDER

1    a telephone status conference within two weeks of the filing of
2    this Order.

3                          CONCLUSION

4        Plaintiffs' motion to strike (#224) is granted in part and
5    denied in part.  Plaintiffs' motions for certification and tolling
6    (#177) are denied with leave to renew after obtaining additional
7    discovery.

8        IT IS SO ORDERED.

9

10            Dated this  1st   day of   December    , 2005.

11

12

13                              /s/ Dennis James Hubel
14                              Dennis James Hubel
                                United States Magistrate Judge
15

16

17

18

19

20

21

22

23

24

25

26

27

28

21 - ORDER