1

2

3

4

5

6

7

8

9              IN THE UNITED STATES DISTRICT COURT

10                 FOR THE DISTRICT OF OREGON

11 KERI MCELMURRY AND KAREN        )
   MRAZEK INDIVIDUALLY, and on     )
12 Behalf of All Similarly         )
   Situated                        )      No.  CV-04-642-HU
13                                  )
                      Plaintiffs,   )
14                                  )
          v.                        )
15                                  )      FINDINGS & RECOMMENDATION
   US BANK NATIONAL ASSOCIATION,    )
16                                  )
                      Defendant.    )
17 _____ )

18

19 J. Dana Pinney
   A.E. Bud Bailey
20 David Schuck
   BAILEY, PINNEY & ASSOCIATES, LLC
21 916 Broadway, Suite 400
   Vancouver, Washington 98660
22
          Attorneys for Plaintiffs
23
   Carol J. Bernick
24 Christopher F. McCracken
   Kevin H. Kono
25 DAVIS WRIGHT TREMAINE, LLP
   1300 S.W. Fifth Avenue, Suite 2300
26 Portland, Oregon 97201

27        Attorneys for Defendant

28 / / /

   1 - FINDINGS & RECOMMENDATION

1  HUBEL, Magistrate Judge:

2      Plaintiffs Keri McElmurry and Karen Mrazek bring this Fair

3  Labor Standards Act (FLSA) action on behalf of all similarly

4  situated plaintiffs and against defendant US Bank National

5  Association. In previous Findings & Recommendations and Orders, I

6  have fully described the claims at issue. E.g., McElmurry v. US

7  Bank Nat'l Ass'n, No. CV-04-642-HU, Order at p. 2 (D. Or. Dec. 1,

8  2005).

9      Presently, plaintiffs move for summary judgment, or partial

10  summary judgment, on three claims:  (1) the timesheet conversion

11  chart claim; (2) the sales and service manager (SSM) claim; and (3)

12  the late payment at termination claim.  I recommend that all of the

13  motions brought by putative opt-in plaintiff Sherry Gustafson be

14  denied, that Mrazek's SSM claim motion be denied, that McElmurry's

15  SSM claim motion be granted, that the motion on the timesheet

16  conversion chart claim be denied, and that the motion as to the

17  late payment at termination claim be denied.

18      Defendant moves to strike certain evidence submitted by

19  plaintiffs in support of the timesheet conversion claim.  I deny

20  that motion as moot.

21                          STANDARDS

22      Summary judgment is appropriate if there is no genuine issue

23  of material fact and the moving party is entitled to judgment as a

24  matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the

25  initial responsibility of informing the court of the basis of its

26  motion, and identifying those portions of "'pleadings, depositions,

27  answers to interrogatories, and admissions on file, together with

28  the affidavits, if any,' which it believes demonstrate the absence

2 - FINDINGS & RECOMMENDATION

1  of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>,

2  477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

3      "If the moving party meets its initial burden of showing 'the

4  absence of a material and triable issue of fact,' 'the burden then

5  moves to the opposing party, who must present significant probative

6  evidence tending to support its claim or defense.'" <u>Intel Corp. v.</u>

7  <u>Hartford Accident & Indem. Co.</u>, 952 F.2d 1551, 1558 (9th Cir. 1991)

8  (quoting <u>Richards v. Neilsen Freight Lines</u>, 810 F.2d 898, 902 (9th

9  Cir. 1987)).  The nonmoving party must go beyond the pleadings and

10  designate facts showing an issue for trial. <u>Celotex</u>, 477 U.S. at

11  322-23.

12      The substantive law governing a claim determines whether a

13  fact is material. <u>T.W. Elec. Serv. v. Pacific Elec. Contractors</u>

14  <u>Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987).  All reasonable doubts as

15  to the existence of a genuine issue of fact must be resolved

16  against the moving party. <u>Matsushita Elec. Indus. Co. v. Zenith</u>

17  <u>Radio</u>, 475 U.S. 574, 587 (1986).  The court should view inferences

18  drawn from the facts in the light most favorable to the nonmoving

19  party. <u>T.W. Elec. Serv.</u>, 809 F.2d at 630-31.

20      If the factual context makes the nonmoving party's claim as to

21  the existence of a material issue of fact implausible, that party

22  must come forward with more persuasive evidence to support his

23  claim than would otherwise be necessary. <u>Id.</u>; <u>In re Agricultural</u>

24  <u>Research and Tech. Group</u>, 916 F.2d 528, 534 (9th Cir. 1990);

25  <u>California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics,</u>

26  <u>Inc.</u>, 818 F.2d 1466, 1468 (9th Cir. 1987).

27  / / /

28  / / /

3 - FINDINGS & RECOMMENDATION

DISCUSSION

I.  Gustafson

Although McElmurry and Mrazek are the only plaintiffs named in the original Complaint, the Amended Complaint, and the Second Amended Complaint, plaintiffs seek partial summary judgment on behalf of Gustafson on the SSM claim and the late payment at termination claims.[1]

Defendant contends that Gustafson cannot seek summary judgment because she is not a named plaintiff and no collective action has been certified.  I agree with defendant.

First, as defendant notes, on the late payment at termination claim, only Mrazek and McElmurry are proper parties because the claim is not brought pursuant to the FLSA and thus, a collective action under the FLSA is unavailable.  Plaintiffs never filed a motion for class certification of this claim under Federal Rule of Civil Procedure 23.  Thus, there has not been an attempt to make any person other than the two named plaintiffs, a party to the late payment at termination claim.

Second, even if Gustafson could have been made a party to the late payment at termination claim as well as the SSM claim, plaintiffs' efforts at obtaining collective action certification on any claim have failed.  Thus, the only proper parties are the named plaintiffs Mrazek and McElmurry.

I reject plaintiffs' argument that Gustafson was made a party

---

[1]  The actual motion as to the late payment at termination claim does not mention Gustafson as a moving party, but the memorandum in support of the motion indicates that she seeks summary judgment on the claim.

4 - FINDINGS & RECOMMENDATION

1   by virtue of defendant's attempt to obtain discovery from her.
2   Plaintiffs filed this case on May 11, 2004, and on May 21, 2004,
3   they moved for collective action of the two FLSA claims.  In their
4   reply memorandum, plaintiffs stated that they were no longer
5   seeking certification of the SSM claim because they needed
6   additional discovery on that claim before continuing with it.  See
7   Oct. 3, 2006 Findings & Recommendation at p. 9.  On July 22, 2004,
8   plaintiffs filed a "Consent to be a Party Plaintiff" on behalf of
9   Gustafson.  On July 27, 2004, I issued a Findings & Recommendation
10  recommending that the certification motion as to the timesheet
11  conversion claim, be denied.  Judge Haggerty adopted this ruling on
12  October 1, 2004.

13       On July 22, 2005, defendant moved to compel documents from
14  Gustafson and for an order compelling Gustafson to answer certain
15  interrogatories.  Plaintiffs also filed various discovery motions
16  in July 2005.  At a September 6, 2005 oral argument on the
17  discovery motions, I granted, as relevant here, defendant's motion
18  for production of documents and granted in part and denied in part
19  the motion directed to the interrogatories.

20       Plaintiff argues that because defendant obtained discovery
21  from Gustafson, she should be treated as a party.  But, the context
22  in which the discovery was obtained is notable here, as is the fact
23  that during the oral argument on the discovery motions, the issue
24  of whether Gustafson should be treated as a party was expressly
25  left open and it is clear from reading the colloquy between the
26  Court and counsel that no one contemplated that Gustafson was to be
27  treated as a party in the case by virtue of being subject to some
28  discovery.

5 - FINDINGS & RECOMMENDATION

1      This is consistent with the relevant case law as well.  In
2  cases using the two-tiered approach to addressing the "similarly
3  situated" inquiry required as part of an FLSA collective action
4  motion, the court typically dismisses the opt-ins if it grants a
5  motion to decertify the class.  E.g., Cameron-Grant v. Maxim
6  Healthcare Servs., Inc., 347 F.3d 1240, 1243 n.2 (11th Cir. 2003)
7  (discussing two-tiered approach for analyzing FLSA certification
8  actions and noting that if class is certified as collective action
9  at first tier, and then decertified at the second stage, "the opt-
10 in plaintiffs are dismissed without prejudice."); Bayles v.
11 American Med. Response of Col., Inc., 962 F. Supp. 1346, 1347 (D.
12 Col. 1997) (court ruled that its order decertifying a collective
13 action automatically dismissed all persons who had opted in to the
14 conditionally certified class).

15     While this case did not strictly adhere to the two-tiered
16 approach, the reasoning behind the dismissal of the opt-ins at the
17 time a motion to decertify is granted, applies here.  The point is
18 that during the discovery phase of a claim involving an FLSA
19 collective action, whether it has been actually certified as such
20 or whether certification is being litigated, opt-ins, or putative
21 opt-ins as in this case, are participants in the discovery process
22 and such participation does not make the opt-in a party.  Rather,
23 the discovery is relevant to the collective action certification
24 issues and once a collective action is denied, or the action is
25 decertified as a collective action, the opt-in or putative opt-in
26 no longer has a place in the litigation.  Such is the case here
27 with Gustafson.

28     In their reply memorandum in support of the summary judgment
   6 - FINDINGS & RECOMMENDATION

1  motion on the SSM claim, and as an alternative to their argument
2  that Gustafson should be treated as a party because defendant
3  sought discovery from her, plaintiffs move to amend the Second
4  Amended Complaint to add Gustafson as a party.  I recommend that
5  the motion to amend be denied.

6      While Federal Rule of Civil Procedure 15(a) states that leave
7  to amend "shall be freely given when justice so requires," the
8  timing of the motion to amend following discovery and with a
9  pending summary judgment motion, weighs heavily against allowing
10 leave.  Schlacter-Jones v. General Tel. of Cal., 936 F.2d 435, 443
11 (9th Cir. 1991), abrogated on other grounds, Cramer v. Consolidated
12 Freightways, Inc., 255 F.3d 683 (9th Cir. 2001).  This case has
13 been pending for almost three years.  Discovery has been closed
14 since July 2005, with the exception of the discovery ordered at the
15 September 6, 2005 discovery hearing, and with the exception of
16 additional production related to plaintiffs' Interrogatories 10 and
17 11.  It is simply too late to add another party.

18 II.  Motion on SSM Claim

19     This claim relates to the classification of SSMs as exempt
20 employees and thus, not entitled to overtime wages for any hours
21 worked over 40 in one week.  29 U.S.C. § 207.  Plaintiffs seek
22 summary judgment on liability.

23     In their reply memorandum in support of the motion, plaintiffs
24 concede that defendant has created an issue of fact regarding how
25 many hours per week Mrazek worked.  Thus, I recommend that the
26 motion as to Mrazek be denied.  The only remaining plaintiff with
27 an SSM claim is McElmurry.

28     Although the FLSA provides that covered employees must receive

7 - FINDINGS & RECOMMENDATION

not less than a stated minimum wage for all hours worked, and overtime premium pay for all hours worked in excess of forty hours per week, 29 U.S.C. §§ 206, 207, the FLSA exempts from overtime requirements those employees who are "employed in a bona fide executive, administrative, or professional capacity[.]" 29 U.S.C. § 213(a)(1).

"In a suit brought under the FLSA, the employee has the burden of proving that the employee was not properly compensated for work performed." Imada v. City of Hercules, 138 F.3d 1294, 1296 (9th Cir. 1998). The burden is on the employer to establish that an employee is exempt from the FLSA's overtime requirements. Bothell v. Phase Metrics, Inc., 299 F.3d 1120, 1124-25 (9th Cir. 2002) ("[a]n employer who claims an exemption from the FLSA has the burden of showing that the exemption applies. . . . FLSA exemptions are to be narrowly construed against employers and are to be withheld except as to persons plainly and unmistakenly within their terms and spirit.") (internal quotations and citations omitted).

Both the executive and administrative exemptions have a salary and a duties test. 29 C.F.R. §§ 541.1, 541.2 (2004). Under both exemptions, an employee must be paid on a salary basis of at least $250 per week to meet the salary test. Id. There is no dispute that McElmurry met the salary test.

The duties test for the executive exemption requires that the employee (1) have management as her primary duty; (2) be in charge of a customarily recognized subdivision of the business; and (3) regularly direct the work of two or more full-time employees. See 29 c.F.R. § 541.1(f) (2004). "Management" is defined to include the hiring and training of employees, setting their hours and pay

8 - FINDINGS & RECOMMENDATION

1    rates, directing their work, determining the merchandise to be
2    bought, stocked and sold, and other work necessary to manage the
3    department.    29 C.F.R. § 541.102 (2004).    If the employee spends
4    more than 50% of his or her time doing management duties, the
5    primary duty test is usually met under federal regulations.    29
6    C.F.R. § 541.103 (2004).    In contrast, "[a] person whose work is so
7    completely routinized that he has no discretion does not qualify
8    for exemption."  29 C.F.R. § 541.107(a) (2004).

9        "To meet the administrative exemption, the employee's primary
10    duties must consist of (a) the performance of office work directly
11    related to the general business operations of the employer; and (b)
12    duties that require the exercise of discretion and independent
13    judgment."    Pfohl v. Farmers Ins. Group., No. CV03-3080 DT(RCX),
14    2004 WL 554834, at *8 (C.D. Cal. Mar. 1, 2004) (citing 29 C.F.R. §
15    541.2(a)(1)).

16        As the Ninth Circuit explained in a 2002 case, the requirement
17    of performance of non-manual work directly related to management
18    policies or general business operations, is "met if the employee
19    engages in running the business itself or determining its overall
20    course or policies, not just in the day-to-day carrying out of the
21    business' affairs."  Bothell, 299 F.3d at 1125 (internal quotation
22    omitted).  The Bothell court, quoting an interpretive regulation,
23    further stated that

24            [t]he phrase "directly related to management policies or
             general business operations of his employer or his
25            employer's customers" describes those types of activities
             relating to the administrative operations of a business
26            as distinguished from "production" or, in a retail or
             service establishment, "sales" work.    In addition to
27            describing the types of activities, the phrase limits the
             exemption to persons who perform work of substantial
28            importance to the management or operation of the business

1    of his employer or his employer's customers.

2    Id. at 1125-26 (quoting 29 C.F.R. § 541.205(a)) (emphasis added in

3    Bothell).

4        In her declaration, McElmurry states that she worked as an SSM

5    at defendant's Cornelius, Oregon branch from October 2001 to

6    January 2002. McElmurry Declr. at ¶¶ 1, 2. She was paid on a

7    salary, which was "about $9.25 per hour." Id. at ¶ 3. She states

8    that "[o]n average, she worked not less than 50 hours per week as

9    a Sales and Service Manager." Id. at ¶ 4. When she worked more

10   than 40 hours per week, she was not paid 1½ times her regularly

11   hourly rate for the hours worked in excess of 40 per week. Id. at

12   ¶ 5.

13       McElmurry provides the following description of her SSM job

14   duties:

15           9.a.  Performing teller and vault teller duties.

16           9.b.  Opening the branch, including but not limited
17           to:  (1) Unlocking the door and turning off the alarm;
             (2) walking the branch to ensure no other persons were
18           hiding in the branch; (3) checking the surveillance video
             tapes; (4) opening the vault (US Bank's policy required
19           two employees to open safe); (5) signing on to the branch
             computer: (6) opening (assisted by another employee) and
20           balancing the night drop chute and the ATM.

21           9.c.  Printing and filing computer reports and
             performing checklists and audit review worksheets which
22           included but was not limited to:  (1) General ledger 380
             reports - essentially an account balancing; (2) safe
23           deposit box past due reports - regarding customers late
             in paying box fees; (3) drill status report - note safe
24           deposit boxes that were vacant and needed locks changed;
             (4) daily cash over short reports - bookkeeping; and (5)
25           kiting reports - account monitoring for fraud.  These
             reports were all bookkeeping, account reconciliation
26           functions that did not involve applying high skill or
             specialized knowledge of, for example, a certified public
27           accountant or a financial analyst.  None of the above
             involved making independent decisions about whether a
28           particular report was needed or whether the procedures
             for doing the reports should be changed.

10 - FINDINGS & RECOMMENDATION

9.d. Miscellaneous general branch duties, including but not limited to: (1) checking to ensure that signatures and initials required by bank procedures were completed; (2) tracking employee telephone numbers and emergency contacts; (3) answering and assisting tellers with correct procedure questions; and (4) processing mail (sorting and distributing).

9.e. Checking on tellers. This included: (1) counting other employee cash drawers when the employee did not balance; (2) performing quarterly cash exposure counts (quarterly audits of cash drawers); and (3) investigate and resolve teller outages (out of balance) - basically a bookkeeping or reconciliation function.

9.f. Selling products the banks offered to its clients. I did not have authority to set overall marketing strategy regarding these products. Instead, I was following US Bank guidelines set by others regarding how the products should be promoted or advertized. I also did not set the prices for the products. I had no authority to independently determine what specials US Bank would offer to customers, such as lower bank fees, whether a minimum balance would be required for some benefit, or whether products would be offered at reduced prices and/or fees.

9.g. Dealing with customer complaints and problems (by telephone, and in person with client).

McElmurry Declr. at ¶ 9.

McElmurry also states that as an SSM, she was not independently authorized to hire or fire any employee or to set, raise, or reduce an employee's wages. Id. at ¶¶ 7, 8. McElmurry further states that she spent not less than 60% of her time completing the duties listed above and that the primary nature of her work as an SSM did not involve work that required her to exercise discretion and independent judgment. Id. at ¶¶ 10, 11. According to McElmurry, she used her work skills and knowledge to follow US Bank procedures, to determine which US Bank procedure to follow, or to determine if a US Bank procedure was being followed. Id. at ¶ 11.

Defendant argues that issues of fact preclude summary judgment

11 - FINDINGS & RECOMMENDATION

1   for McElmurry.  Defendant notes that during her approximately
2   three-month tenure as an SSM, McElmurry helped train a vault
3   teller, gave recommendations for a promotion and discussed a
4   potential raise that occurred during this period, tracked employee
5   attendance, and reported attendance problems.  McElmurry Depo. at
6   pp. 74, 76, 77, 79. She and the Branch Manager scheduled the
7   tellers and they were both responsible for telling the staff when
8   to take their lunch and rest breaks.  Id. at p. 83.  McElmurry also
9   assisted in preparing for audits.  Id. at p. 81.

10      Defendant argues that the deposition testimony creates an
11  issue of fact as to whether McElmurry meets the administrative or
12  executive exemptions.  I reject this argument.

13      As plaintiffs note, assisting in the training of one vault
14  teller, assisting the branch manager in scheduling, and giving one
15  recommendation regarding a promotion, do not meet either test.  I
16  agree with plaintiffs that the tasks highlighted by defendant do
17  not create an issue of fact as to either exemption.

18      On this record, and construing the facts in defendant's favor,
19  no reasonable juror could conclude that McElmurry's duties as an
20  SSM were exempt from overtime under the administrative exemption
21  because she did not perform office work directly related to the
22  general business operations of the employer and did not perform
23  duties that required the exercise of discretion and independent
24  judgment.  According to the uncontradicted statements in her
25  declaration, McElmurry's SSM duties were fairly routinized and
26  required her to follow established procedures.  She did not set or
27  originate policy and did not determine the overall course of the
28  business. Rather, as noted in Bothell, she engaged in the day-to-

12 - FINDINGS & RECOMMENDATION

1  day carrying out of defendant's affairs.

2      Similarly, as to the executive exemption, no reasonable juror

3  could conclude that on the record presented, McElmurry had

4  management as her primary duty.   Assisting in training and

5  scheduling does not meet the definition of "management" in 29

6  C.F.R. § 541.102.  Making a recommendation regarding one promotion

7  also does not meet the standard.

8      According to defendant, each of its branches is a recognized

9  subdivision of the business.   Defendant notes that McElmurry

10 testified that when the branch manager was absent, she was solely

11 in charge of the branch.  From there, defendant contends that this

12 creates an issue of fact as to whether she meets the executive

13 exemption test.

14     I disagree.  The evidence defendant relies on in this regard

15 is limited to plaintiff's testimony that while she was the SSM at

16 the Cornelius branch, she was in charge of the branch if the branch

17 manager was gone.   McElmurry Depo. at p. 74.   There is no

18 testimony, or other evidence, showing whether this occurred one

19 time, every day, every week, or every month, and whether it was for

20 a ten-minute coffee break, a thirty-minute lunch period, or an

21 entire day.  Indeed, nothing on this record shows it happened at

22 all in this time period.  Without any additional information about

23 the frequency of McElmurry assuming responsibility for operating

24 the branch in the branch manager's absence, the factfinder can do

25 nothing more than speculate as to whether she engaged in this

26 activity a sufficient amount of time to bring her within the

27 exemption.   Facts which provoke only speculation cannot defeat

28 summary judgment.  See Anheuser-Busch, Inc. v. Natural Beverage

13 - FINDINGS & RECOMMENDATION

1  Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (speculative testimony
2  is insufficient to raise a genuine issue of fact to defeat summary
3  judgment).    Thus,  defendant  fails  to  create  an  issue  of  fact
4  regarding McElmurry being in charge of a customarily recognized
5  subdivision  of  the  business  to  the  extent  required  for  the
6  exemption.

7       As noted above, plaintiffs move for partial summary judgment
8  on liability regarding this claim.  This motion does not require a
9  determination as to damages.  To establish liability, McElmurry
10 must show that in any week in which she worked more than forty
11 hours, she was not paid overtime for such hours. Because defendant
12 has  failed  to  create  an  issue  of  fact  on  the  question  of  an
13 exemption, I recommend that plaintiff's motion as to liability be
14 granted.

15      I note, however, that the summary judgment record, other than
16 establishing that McElmurry regularly worked more than forty hours
17 per week as an SSM, and was not paid for hours worked in excess of
18 forty per week, does not establish the number of hours McElmurry
19 worked in any particular week. At trial, plaintiff still must show
20 which weeks she worked more than forty hours, how many hours she
21 actually worked in those weeks, what she was paid for that week,
22 and what her regular rate of pay was at the time.

23 III.  Motion on Timesheet Conversion Chart Claim

24      McElmurry moves for partial summary judgment on the issue of
25 liability, on the timesheet conversion chart claim.  She contends
26 that while working as a vault teller in Brookings between January
27 and November 2003, she recorded her time on a weekly time report
28 which required recording the total hours worked for a day in hours

14 - FINDINGS & RECOMMENDATION

1   and tenths. A "conversion chart" on the weekly time report showed

2   how to convert the hours and minutes into hours and tenths.

3   McElmurry contends that defendant's use of the chart created a

4   "truncation policy" which caused defendant to fail to pay her for

5   hours she worked in excess of forty hours per week.

6       In support of her motion, plaintiff relies on the declarations

7   of two of her counsel, and exhibits attached to those declarations.

8   Counsel Karen Moore submitted an initial declaration on January 3,

9   2007, and an amended declaration on January 30, 2007. The only

10  difference between the two declarations relates to Exhibit A to

11  Moore's January 3, 2007 Declaration.

12      In her January 3, 2007 Declaration, Moore describes how she

13  took the twenty-three weekly timesheets which are Exhibit A to the

14  Declaration of counsel Stephanie Brown, and reviewed each separate

15  daily time entry on each weekly timesheet. Moore Jan. 3, 2007

16  Declr. at ¶ 4. She added the minutes and hours recorded for each

17  day under the headings "Begin," "Lunch Out," "Lunch In," "Other

18  Out," "Other In," and "End," and obtained the total hours and

19  minutes worked for the day. Id. She then compared the hours and

20  minutes total to the amount of time recorded on the weekly

21  timesheet under the column "Daily Totals Worked." Id.

22      By comparing the daily hours and minutes actually worked to

23  the time recorded in hours and tenths, Moore computed whether the

24  total time recorded in hours and tenths accurately represented the

25  total hours and minutes worked. For example, on January 17, 2003,

26  according to the begin, end, in, and out times McElmurry recorded,

27  she worked 7 hours and 50 minutes. Exh. A to Brown Declr. at p. 1.

28  She recorded this as 7.8 hours. Id. Moore computed this as a

15 - FINDINGS & RECOMMENDATION

difference of 2 minutes because 8/10 of an hour is actually 48
minutes and thus, by recording 7.8 hours, McElmurry wrote that she
worked 7 hours and 48 minutes rather than 7 hours and 50 minutes.

In her January 3, 2007 Declaration, Moore explains how Exhibit
A to her declaration shows the results of her review of the weekly
time reports and her computations. Moore Jan. 3, 2007 Declr. at ¶
5. Exhibit A shows the Bates Number of the weekly time report and
the weekly time report's week ending date. Then, in a column
entitled "Difference When Applying Conversion Chart," Exhibit A
reveals the weekly difference between the total amount of time in
hours and minutes as recorded on the weekly time report and the
total time as recorded in hours and tenths. Id. Finally, a column
entitled "Overtime" shows whether the difference in the previous
column would have resulted in a loss of overtime.[2]

In the Exhibit A attached to Moore's January 3, 2007
Declaration, the total number of minutes of overtime computed by
Moore as owed to McElmurry for the twenty-three weeks for which the
weekly time reports are in evidence, is 23. Exh. A to Moore Jan.
3, 2007 Declr.

Attached to Brown's January 3, 2007 Declaration is an Earning
Statement for McElmurry for the pay period ending December 15,

_____

[2] For example, if the difference for the week is 4 minutes
but McElmurry worked only a total of 38 hours for the week, she
has no overtime claim. The column headed "Difference When
Applying Conversion Chart" would show a 4 but the column headed
"Overtime" would be blank. If, however, the difference is 4
minutes in a week in which she worked 40 or more hours, she has a
claim for 4 minutes of overtime for that week. In that
situation, the "Difference" column and the "Overtime" column
would both show 4.

16 - FINDINGS & RECOMMENDATION

1  2003.  Exh. G to Brown Jan. 3, 2007 Declr.  It shows a "rate" of

2  $9.25, indicating, according to McElmurry, an hourly pay rate of

3  $9.25.  Based on this evidence, McElmurry states she is entitled to

4  summary judgment on liability for an amount no less than $5.32.[3]

5       In her amended declaration, Moore explains that Exhibit A to

6  her January 3, 2007 Declaration, has been amended to correct a time

7  calculation for the weekly time report for the week ending February

8  28, 2003.  Moore Jan. 30, 2997 Am. Declr. at ¶ 3.  While the

9  original Exhibit A to the January 3, 2007 Declaration showed "-9"

10 in the "Difference When Applying Conversion Chart" column, and "-

11 20" in the "Overtime" column for the weekly time report for the

12 week ending February 28, 2003, the Exhibit A appended to the

13 January 30, 2007 Amended Declaration shows "-5" for the "Difference

14 When Applying Conversion Chart," and the Overtime column is blank.

15 Exh. A to Moore Jan. 30, 2007 Am. Declr.

16      Moore also explains that for the week ending date of April 25,

17 2003, ay time differences between hours and minutes recorded and

18 the number recorded under "Daily Totals Worked," cannot be

19 explained by the conversion chart.  Moore Jan. 30, 2007 Am. Declr.

20 at ¶ 3.  Based on these revisions, the Exhibit A appended to

21 Moore's Amended Declaration shows that the total number of minutes

22 of overtime computed by Moore as owed to McElmurry for the twenty-

23 three weeks for which the weekly time reports are in evidence, is

24 3.  Exh. A to Moore Jan. 30, 2007 Am. Declr.  Assuming McElmurry's

25 hourly rate for this time period was $9.25, she contends she is

26 ─────────────────

27      [3]  If her regular hourly rate is $9.25, her overtime rate is
    $13.88 per hour, or $0.231 per minute.  For 23 minutes, the claim
28 is $5.32.

17 - FINDINGS & RECOMMENDATION

1  entitled to summary judgment on liability for an amount no less

2  than $0.69.

3      At oral argument, McElmurry revised her position again, and

4  suggested that for the week ending March 14, 2003, she erroneously

5  credited defendant with 44 minutes and thus, she seeks summary

6  judgment on liability for at least 47 minutes of overtime.[4]  Then,

7  she  further  argued  that  based  on  what  she  contends  to  be

8  defendant's  failure  to  dispute  the  calculations  for  three

9  particular weeks, the weeks ending January 13, 2003, July 17, 2003,

10  and  August  1,  2003,  it  is  undisputed  that  she  is  entitled  to

11  summary judgment on at least 38 minutes of this 47 minutes of

12  overtime.

13      In response, defendant raises a host of arguments concerning

14  the evidence as well as a legal argument that accepting McElmurry's

15  evidence,  she  has  no  claim  because  it  is  de  minimis.   For  the

16  reasons  explained  below,  I  agree  with  some  of  defendant's

17  evidentiary arguments and conclude that on this record, issues of

18  fact remain regarding McElmurry's entitlement to summary judgment

19  on the issue of liability.

20      First, I reject defendant's argument that plaintiff's claim

21  fails  because  she  does  not  establish  defendant  maintained  a

22  "truncation policy" and that the differences between time actually

23

-----

24      [4]  Even accepting McElmurry's mathematical calculations for
25  this week as correct, I make no ruling here on the issue of
    whether defendant should or should not be entitled to the credit
26  for the extra time.  Moreover, my calculations show that the
    difference between what she worked on Thursday, March 13, 2003 (6
27  hours and 40 minutes), and what she recorded (7 hours and 36
    minutes), is 56 minutes, not 60 minutes as McElmurry appears to
28  have calculated.

18 - FINDINGS & RECOMMENDATION

1    worked and time recorded is attributable to that policy. As
2    McElmurry's counsel explained at oral argument, the timesheet
3    conversion chart claim has proceeded thus far in the litigation as
4    based on a policy maintained by defendant, because plaintiffs
5    viewed that as required for the "similarly situated" collective
6    action standard. Now that the claim is pursued only by McElmurry,
7    the maintenance of any policy is irrelevant. The simple question
8    is whether McElmurry worked more than 40 hours per week and if so,
9    was she paid for all hours worked more than 40?

10        Similarly, while I understand defendant's point that Moore
11   herself cannot attest to McElmurry's use of the conversion chart,
12   the weekly time reports themselves instruct the employee to report
13   their "Daily Total Worked" in hours and tenths. This, along with
14   the conversion chart appearing on each weekly time report, is
15   enough for a reasonable factfinder to conclude that an employee
16   would ordinarily use the conversion chart to convert hours and
17   minutes to hours and tenths. The document itself, to which
18   defendant has no objection, is sufficient.

19        To sustain her claim, McElmurry must first show that for any
20   week in which she seeks overtime, she worked more than 40 hours per
21   week. Assuming she does so for any particular week, she will then
22   have to show that her recording of the daily total hours in hours
23   and tenths, rather than hours and minutes, caused her to be
24   underpaid. She does not need to establish a policy.

25        Second, while I reject this policy argument, several other
26   evidentiary issues present obstacles to McElmurry prevailing at
27   summary judgment. Initially, defendant relies on deposition
28   testimony showing that McElmurry regularly adjusted her own begin

19 - FINDINGS & RECOMMENDATION

1   and end times, and lunch in and out times.  For example, if she
2   returned from lunch at 1:02 p.m., she would probably write 1:00
3   p.m. as her lunch end time.  McElmurry Depo. at pp. 32-34, 38.  If
4   she arrived at work at 8:02 a.m., she would write down 8:00 a.m. as
5   her begin time.  Id.

6       These adjustments work in McElmurry's favor.  However, she
7   also made adjustments that worked in defendant's favor.  For
8   example, if she arrived at work at 8:03 a.m., she would write down
9   8:05 as her start time.  Id.  Similarly, if she concluded for the
10  day at 5:02 p.m., she might write 5:00 p.m. as her work end time.
11  As defendant notes, McElmurry gained minutes by adjusting any start
12  time back or adjusting any stop time forward.  Defendant, however,
13  gained minutes when McElmurry adjusted a start time forward or a
14  stop time back.

15      Plaintiffs take issue with defendant's reliance on this
16  adjustment to start and stop times in opposition to the summary
17  judgment motion, arguing that defendant should be bound by a
18  statement made earlier in the litigation that these adjustments
19  "probably come out in the wash."  Deft's Opp. to Pltfs' Renewed
20  Motion (dkt #109) at p. 17 (Exh. 1 to Schuck Feb. 1, 2007 Declr. at
21  p. 3).

22      Plaintiffs fail to quote the entire statement by defendant,
23  which was that "[b]y themselves, these rounded start and stop times
24  probably 'come out in the wash."  However, in a case such as this
25  where plaintiffs seek to recover for a minute here and two minutes
26  there, the rounded start times offset any rounding caused by the
27  conversion chart."  Id.  When the second sentence is included, it
28  is clear that defendant made no admission that an employee's own

20 - FINDINGS & RECOMMENDATION

1    adjustment to his or her start and stop times had no effect on the

2    claim here.  Defendant asserted just the opposite:  while in and of

3    themselves the adjustments may result in no net effect over a

4    period of time, when an overtime claim for minutes per day is

5    asserted, and the claim is evaluated in one-week increments, the

6    fact that the employee self-adjusted his or her start and stop

7    times by a couple of minutes could, in fact, produce an offset such

8    that there is no unpaid overtime.

9        This issue was addressed in the July 27, 2004 Findings &

10   Recommendation on plaintiffs' first motion for certification of a

11   collective action on the timesheet conversion chart claim.  I noted

12   there that employees could have interpreted some of the weekly time

13   reports as requiring the adjustment of their start and stop times

14   which could produce, at the end of the day, a "rounding up" of the

15   employee's time.  July 27, 2004 Findings & Rec. at pp. 27-28.

16       The evidence regarding McElmurry's practice of adjusting her

17   start and stop times, which can result in a "rounding up" of

18   minutes, creates a genuine issue of material fact precluding an

19   award of summary judgment to plaintiff.  On this record I cannot

20   conclude that reasonable jurors would not differ about the meaning

21   and effect of these adjustments to her start and stop times.  While

22   some may be persuaded that in any given day or week, "they come out

23   in the wash," others may conclude that they appropriately offset a

24   claim to minutes of overtime lost by converting hours and minutes

25   to hours and tenths.

26       The same problem occurs with the evidence showing that

27   McElmurry herself made computation errors.  As noted above in

28   footnote three, McElmurry erroneously recorded 7.6 hours on a day

21 - FINDINGS & RECOMMENDATION

1   when she should have recorded 6.6 hours.  The record reveals
2   several other similar errors.  E.g., Exh. A to Brown Declr. at p.
3   20 (daily total for July 7, 2003 should have been recorded as 9.5
4   hours, but she recorded 9.4 hours), 7 (daily total for February 26,
5   2003 should have been recorded as 9.1 hours, but she recorded 10.1
6   hours), 8 (daily total for March 5, 2003 should have been recorded
7   as 8.0 hours, but she recorded 8.1 hours; daily total for March 7,
8   2003 should have been recorded as 8.6 hours, but she recorded 8.7
9   hours), 14 (daily total for April 14, 2003 should have been
10  recorded as 8.4 hours, but she recorded 8.5 hours; daily total for
11  April 16, 2003 should have been recorded as 7.9 hours, but she
12  recorded 8.0 hours).
13      Plaintiff's own computation errors are relevant to an
14  assessment of her accuracy as a timekeeper which in turn, is
15  relevant to the factfinder's ultimate determination of whether
16  McElmurry had any week in which she was not paid for minutes worked
17  and whether those minutes were in a week when she worked 40 or more
18  hours.  When the total claim is in the range of 3, 23, 38, 44, or
19  47 minutes, the accuracy of McElmurry's recording is critical in
20  assessing the validity of her claim.  Because the repeated
21  computation errors could affect McElmurry's credibility as a
22  timekeeper, summary judgment to McElmurry on the liability portion
23  of this claim is inappropriate.
24      Next, I agree with defendant that the record lacks any
25  admissible, affirmative evidence showing what plaintiff was
26  actually paid for any week in which she claims a loss of overtime.
27  It is plaintiff's burden to show that she worked more than 40 hours
28  in a week and that she was not paid for those overtime hours.

22 - FINDINGS & RECOMMENDATION

1   While the one pay statement shows a "rate" of $9.25, and I assume
2   this was her hourly rate of pay, there are no pay statements
3   showing her total pay for any of the weeks in which she alleges she
4   was not paid overtime. Nor is there a statement from McElmurry
5   herself stating how much she was actually paid.

6       McElmurry contends that defendant previously conceded that
7   employees are paid based on the time recorded in their weekly time
8   reports. McElmurry cites to defendant's memorandum in opposition
9   to plaintiffs' initial collective action motion regarding the
10  timesheet conversion chart claim, in which defendant stated that
11  "[o]f the 48 employees who were supposedly 'rounded down,' nine
12  were either not rounded at all or were rounded up - in other words,
13  overpaid." Deft's Opp. to Pltfs' Renewed Motion (dkt #109) at p.
14  18 (Exh. 2 to Schuck Feb. 1, 2007 Declr. at p. 2). When this
15  statement is viewed in context, however, it is clear that defendant
16  asserted that "rounded up" meant that the employee wrote a time
17  reflecting a claim for payment for more hours than were actually
18  worked. It is not an admission that the employee was actually paid
19  the amount claimed.

20      McElmurry next contends that defendant fails to reference,
21  address, or deny the facts relative to three particular weeks in
22  which she seeks overtime, and thus, for those three weeks, with
23  their cumulative 38 minutes, defendant has conceded that she was
24  not paid for overtime minutes she worked.

25      I disagree. For example, defendant denied that plaintiff
26  worked more than 40 hours each week. Deft's Resp. to Pltfs'
27  Concise Stmt at ¶ 2. Defendant also denied that it failed to
28  compensate her for 23 minutes she worked in excess of 40 hours.

23 - FINDINGS & RECOMMENDATION

1  Id. at ¶ 4.  Moreover, as defendant asserted at oral argument, all

2  of defendant's arguments directed toward the insufficiency of

3  plaintiff's evidence, such as her adjustment to her start and stop

4  times and her own computation errors, apply to all of the weeks at

5  issue in the motion and simply because defendant did not articulate

6  a particular error or objection week by week does not amount to a

7  concession that McElmurry is entitled to summary judgment for a

8  week in defendant did not note a specific error or objection.

9      Finally, the outstanding factual issues preclude resolution of

10 the de minimis legal issue raised by defendant.  Defendant argues

11 that even assuming McElmurry's calculations are correct and

12 substantiated by admissible evidence, the amount of alleged

13 overtime is not actionable because it is de minimis.

14     Assuming the de minimis argument applies to the facts here,

15 because the motion is directed to liability only and liability only

16 for a minimum number of minutes, it is possible that at trial, when

17 McElmurry puts on all of her proof, she may end up with a claim for

18 hours, rather than minutes, and thus, the claim would likely not be

19 de minimis.

20     Additionally, the de minimis rule does not apply to all

21 situations where small amounts of time are involved.  Generally,

22 "[t]he de minimis rule is concerned with the practical

23 administrative difficulty of recording small amounts of time for

24 payroll purposes."  Lindow v. United States, 738 F.2d 1057, 1062

25 (9th Cir. 1984).  Relevant considerations include the practical

26 administrative difficulty of recording the time, the aggregate

27 amount of compensable time, and the regularity of the uncompensated

28 work.  Id. at 1063.

24 - FINDINGS & RECOMMENDATION

1    On this record, it is not clear if the overtime minutes

2    allegedly owed are attributable to McElmurry's own computation

3    errors, or to defendant's requirement that the daily total time be

4    converted to hours and tenths, or possibly to the employee's

5    practice of adjusting his or her start and stop times to the

6    nearest five-minute interval, which some employees may have

7    understood to be a required practice.  Until the record is more

8    fully developed regarding the cause of the alleged under-reporting

9    of all the time McElmurry worked, the applicability of the de

10   minimis rule cannot be determined.  As long as its application is

11   possible, summary judgment to McElmurry on this claim is

12   inappropriate.

13       I recommend that plaintiffs' motion for partial summary

14   judgment on the timesheet conversion chart claim be denied.[5]

15   _____

16       [5] Obviously, the amount of damages at stake in the SSM and
     timesheet conversion claims is quite small.  Assuming McElmurry
17   worked 50 hours per week for the months of October, November, and
     December 2001, and January 2002, her SSM claim is worth
18   approximately $2,387.36 (10 hours per week of overtime x 17.2
     weeks (4 months x 4.3 weeks/month), is 172 hours, at a rate of
19   $13.88 per hour ($9.25 per hour x 1.5), for a total of
     $2,387.36).  Mrazek's claim could be worth approximately
20   $6,266.82 (assuming she worked 21 months from May 1, 2003, to
     January 31, 2003 (without vacation), I calculate this as
21   approximately 90.3 weeks (21 months x 4.3 weeks/month), x 5 hours
     per week (based on her statement that she worked not less than 45
22   hour per week), produces a figure of 451.1 hours which equals
     $6,266.82 when multiplied by $13.88 per hour).  The timesheet
23   truncation claim, as argued by plaintiffs in their reply brief,
     is worth $0.69, or, as argued at the oral argument, is worth
24   $10.81.
         Notwithstanding the ridiculously small amount at stake in
25   the timesheet conversion chart claim, and the relatively small
     amounts at stake in the SSM claim, defendant chose a strategy
26   which was designed to prevent resolution of the motions based on
     the absence of evidence on this record where that evidence is
27

28

25 - FINDINGS & RECOMMENDATION

1  IV. Motion on Late Pay at Termination Claim

2      Both Mrazek and McElmurry bring claims under Oregon Revised

3  Statute §§ (O.R.S.) 652.140 and 652.150, for penalty wages owed as

4  a result of defendant's alleged failure to timely pay them upon

5  termination.  Under O.R.S. 652.140, when an employee, not subject

6  to a contract for a definite period of employment, gives at least

7  forty-eight hours notice of his or her intent to quit, the employer

8  must pay "all wages earned and unpaid at the time of quitting."

9  O.R.S. 652.140(a).  The willful failure to timely pay the wages

10 owed in accordance with O.R.S. 652.140(a) subjects the employer to

11 a penalty under O.R.S. 652.150 equal to the regular hourly rate of

12 the employee for eight hours per day, until paid or until action

13 for the wages is commenced, up to a maximum of 30 days from the due

14 date.  O.R.S. 652.152(1).

15     As the plain language of the statutes makes clear, Mrazek and

16 McElmurry must show that they provided defendant with notice of

17 their intent to quit at least 48 hours before they quit, and that

18 defendant willfully failed to pay them all wages earned and unpaid

19 at the time they quit.

20 / / /

21 / / /

22 _____

23 more likely than not in defendant's control.  For example, it is
   hard to believe that defendant does not maintain possession of
24 records of what it actually paid its employees.  Thus, defendant
   could have produced that evidence to eliminate the issue of what
25 was actually paid and focus instead on whether there was any
   overtime wages earned which remained unpaid.
26     While this strategy may have achieved the desired result in
27 preventing plaintiffs from obtaining summary judgment on a
   particular claim, it only prolonged resolution of the claims and
28 added expense to all parties and the Court.

26 - FINDINGS & RECOMMENDATION

A.  McElmurry

On November 19, 2003, McElmurry provided a handwritten termination letter addressed to "Kathy," to defendant stating that she intended to quit her employment on November 28, 2003.  Exh. 3 to Jan. 3, 2007 Schuck Declr.  In a January 8, 2007 declaration, she states that her last day of employment with defendant was November 28, 2003.  Jan. 8, 2007 Declr. at ¶ 1.

Defendant argues that an issue of fact exists regarding McElmurry's last date of employment because, in her deposition, she stated that she left the bank in November 2003, but could not recall the exact date, other than that she believed it was the last day of the week.  I reject this argument because the letter submitted by McElmurry in support of her motion, and her declaration statements, are consistent with her deposition testimony and clarify, rather than contradict, her assertion that her last date of work was November 28, 2003.  Defendant does not create an issue of fact in regard to McElmurry's last day of employment with defendant.

There are, however, issues of fact regarding when McElmurry received her last payment of all wages earned and unpaid.  Although McElmurry testified in deposition that she could not remember when she received her final paycheck, she later requested copies of her monthly bank statements from defendant showing various direct deposits into her account.  McElmurry Jan. 31, 2007 Declr. at ¶ 2.

The problem is that a reasonable factfinder cannot examine the bank statements and come to the single conclusion that McElmurry received her final paycheck on a date other than November 28, 2003. The bank statements show direct deposits made by defendant into

27 - FINDINGS & RECOMMENDATION

1  McElurry's account on November 26, 2003, November 28, 2003, and

2  December 1, 2003.    Contrary to McElmurry's assertion that the

3  December 9, 2003 bank statement shows an electronic deposit of

4  wages from defendant to McElmurry's account on December 1, 2003,

5  the bank statement shows only an electronic deposit with no

6  characterization.    It does not reveal that the payment was for

7  wages.  While that may be one inference created by the evidence, it

8  is not the only reasonable one.

9      McElmurry next tries to argue that by comparing her pay

10  statements with her 2003 W-2, it is clear that the December 1, 2003

11  payment was wages.    I disagree.    On this record, the amounts

12  reflected do not clearly establish that it was wages that were paid

13  on December 1, 2003.  While this may be a reasonable inference to

14  be drawn from the evidence, it is not the only one and thus, it is

15  not appropriate for resolution on summary judgment.

16      I recommend that McElmurry's motion on the late payment on

17  termination claim be denied.

18      B.  Mrazek

19      Mrazek states that her last day of employment with defendant

20  was January 17, 2003, and that she provided a two-week notice to

21  defendant.  Exh. 1 to Schuck Jan. 3, 2007 Declr.  Mrazek further

22  states that on January 22, 2003, defendant made a partial payment

23  of her final wages, five days after they were due.

24      Here, defendant does not challenge the date the wages were

25  paid.  Defendant argues that there are issues of fact regarding

26  Mrazek's last day worked.  I agree with defendant.

27      Rhonda Tingle, a human resources employee, states that she

28  assisted in processing Mrazek's termination and that while Mrazek's

28 - FINDINGS & RECOMMENDATION

1  last day of work on the actual job site was January 17, 2003,
2  Mrazek remained an employee of the bank and was "on payroll" and
3  paid through January 23, 2003.   Tingle Declr. at ¶¶ 2, 3.

4      Tingle's statement is enough to create an issue of fact
5  precluding summary judgment.   Until the facts are developed
6  regarding what Mrazek was actually doing, how or why she was "on
7  payroll," and what she was paid for, a determination cannot be made
8  whether January 17, 2003, or January 23, 2003, was her last day of
9  employment for purposes of O.R.S. 652.140.

10      I recommend that Mrazek's motion on the late payment at
11 termination claim be denied.
12 V.  Motion to Strike
13      Defendant moves to strike certain submissions relied on by
14 plaintiffs in support of the motion for partial summary judgment on
15 the timesheet conversion chart claim.   Because I recommend denying
16 the motion even considering the challenged evidence, I deny the
17 motion to strike as moot.
18                          CONCLUSION
19      I recommend that plaintiffs' motion for summary judgment as to
20 the SSM claim (#355) be denied as to Gustafson and Mrazek, and
21 granted as to McElmurry; I recommend that plaintiffs' motion for
22 summary judgment as to the timesheet conversion chart claim (#345),
23 be denied; I recommend that plaintiffs' motion for summary judgment
24 as to the late payment at termination claim (#350) be denied.   I
25 recommend that the motion to amend to add Gustafson as a party,
26 asserted in plaintiffs' reply memorandum in support of the motion
27 on the SSM claim, be denied.   I deny defendant's motion to strike
28 (#364) as moot.

29 - FINDINGS & RECOMMENDATION

1

SCHEDULING ORDER

2       The above Findings and Recommendation will be referred to a

3   United States District Judge for review.  Objections, if any, are

4   due April 9, 2007.  If no objections are filed, review of the

5   Findings and Recommendation will go under advisement on that date.

6       If objections are filed, a response to the objections is due

7   April 23, 2007, and the review of the Findings and Recommendation

8   will go under advisement on that date.

9       IT IS SO ORDERED.

10                  Dated this  23rd   day of ___ March ___ , 2007.

11

12

13                       /s/ Dennis James Hubel
                          Dennis James Hubel
14                        United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

30 - FINDINGS & RECOMMENDATION