# Exhibit A

1

2

3

4

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                      FOR THE DISTRICT OF OREGON

11   KERI MCELMURRY AND KAREN        )
     MRAZEK INDIVIDUALLY, and on     )
12   Behalf of All Similarly        )
     Situated                       )        No.  CV-04-642-HU
13                                   )
                         Plaintiffs, )
14                                   )
              v.                     )
15                                   )        FINDINGS & RECOMMENDATION
     US BANK NATIONAL ASSOCIATION,   )
16                                   )
                         Defendant.  )
17   _____)

18

19   J. Dana Pinney
     A.E. Bud Bailey
20   David Schuck
     BAILEY, PINNEY & ASSOCIATES, LLC
21   916 Broadway, Suite 400
     Vancouver, Washington 98660
22
          Attorneys for Plaintiffs
23
     Carol J. Bernick
24   Christopher F. McCracken
     Kevin H. Kono
25   DAVIS WRIGHT TREMAINE, LLP
     1300 S.W. Fifth Avenue, Suite 2300
26   Portland, Oregon 97201

27        Attorneys for Defendant

28   / / /

     1 - FINDINGS & RECOMMENDATION

1 | HUBEL, Magistrate Judge:

2 |     Plaintiffs Keri McElmurry and Karen Mrazek bring this Fair
3 | Labor Standards Act (FLSA) action on behalf of all similarly
4 | situated plaintiffs and against defendant US Bank National
5 | Association. In previous Findings & Recommendations and Orders, I
6 | have fully described the claims at issue. E.g., McElmurry v. US
7 | Bank Nat'l Ass'n, No. CV-04-642-HU, Order at p. 2 (D. Or. Dec. 1,
8 | 2005).

9 |     Presently, plaintiffs move for summary judgment, or partial
10 | summary judgment, on three claims: (1) the timesheet conversion
11 | chart claim; (2) the sales and service manager (SSM) claim; and (3)
12 | the late payment at termination claim. I recommend that all of the
13 | motions brought by putative opt-in plaintiff Sherry Gustafson be
14 | denied, that Mrazek's SSM claim motion be denied, that McElmurry's
15 | SSM claim motion be granted, that the motion on the timesheet
16 | conversion chart claim be denied, and that the motion as to the
17 | late payment at termination claim be denied.

18 |     Defendant moves to strike certain evidence submitted by
19 | plaintiffs in support of the timesheet conversion claim. I deny
20 | that motion as moot.

21 | STANDARDS

22 |     Summary judgment is appropriate if there is no genuine issue
23 | of material fact and the moving party is entitled to judgment as a
24 | matter of law. Fed. R. Civ. P. 56(c). The moving party bears the
25 | initial responsibility of informing the court of the basis of its
26 | motion, and identifying those portions of "'pleadings, depositions,
27 | answers to interrogatories, and admissions on file, together with
28 | the affidavits, if any,' which it believes demonstrate the absence

2 - FINDINGS & RECOMMENDATION

1 of a genuine issue of material fact."   Celotex Corp. v. Catrett,

2 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

3    "If the moving party meets its initial burden of showing 'the

4 absence of a material and triable issue of fact,' 'the burden then

5 moves to the opposing party, who must present significant probative

6 evidence tending to support its claim or defense.'"   Intel Corp. v.

7 Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991)

8 (quoting Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th

9 Cir. 1987)).   The nonmoving party must go beyond the pleadings and

10 designate facts showing an issue for trial.   Celotex, 477 U.S. at

11 322-23.

12    The substantive law governing a claim determines whether a

13 fact is material.   T.W. Elec. Serv. v. Pacific Elec. Contractors

14 Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  All reasonable doubts as

15 to the existence of a genuine issue of fact must be resolved

16 against the moving party.   Matsushita Elec. Indus. Co. v. Zenith

17 Radio,  475 U.S. 574, 587 (1986).  The court should view inferences

18 drawn from the facts in the light most favorable to the nonmoving

19 party.   T.W. Elec. Serv., 809 F.2d at 630-31.

20    If the factual context makes the nonmoving party's claim as to

21 the existence of a material issue of fact implausible, that party

22 must come forward with more persuasive evidence to support his

23 claim than would otherwise be necessary.   Id.; In re Agricultural

24 Research and Tech. Group, 916 F.2d 528, 534 (9th Cir. 1990);

25 California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics,

26 Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).

27 / / /

28 / / /

3 - FINDINGS & RECOMMENDATION

1                              DISCUSSION

2   I.   Gustafson

3        Although McElmurry and Mrazek are the only plaintiffs named in
4   the  original  Complaint,  the  Amended  Complaint,  and  the  Second
5   Amended  Complaint,  plaintiffs  seek  partial  summary  judgment  on
6   behalf  of  Gustafson  on  the  SSM  claim  and  the  late  payment  at
7   termination claims.[1]

8        Defendant contends that Gustafson cannot seek summary judgment
9   because she is not a named plaintiff and no collective action has
10  been certified.   I agree with defendant.

11       First, as defendant notes, on the late payment at termination
12  claim,  only  Mrazek  and  McElmurry  are  proper  parties  because  the
13  claim  is  not  brought  pursuant  to  the  FLSA  and  thus,  a  collective
14  action  under  the  FLSA  is  unavailable.    Plaintiffs  never  filed  a
15  motion for class certification of this claim under Federal Rule of
16  Civil  Procedure  23.    Thus,  there  has  not  been  an  attempt  to  make
17  any person other than the two named plaintiffs, a party to the late
18  payment at termination claim.

19       Second, even if Gustafson could have been made a party to the
20  late  payment  at  termination  claim  as  well  as  the  SSM  claim,
21  plaintiffs' efforts at obtaining collective action certification on
22  any claim have failed.   Thus, the only proper parties are the named
23  plaintiffs Mrazek and McElmurry.

24       I reject plaintiffs' argument that Gustafson was made a party

25

26       [1]   The actual motion as to the late payment at termination
27  claim does not mention Gustafson as a moving party, but the
    memorandum in support of the motion indicates that she seeks
28  summary judgment on the claim.

4 - FINDINGS & RECOMMENDATION

1  by virtue of defendant's attempt to obtain discovery from her.
2  Plaintiffs filed this case on May 11, 2004, and on May 21, 2004,
3  they moved for collective action of the two FLSA claims.  In their
4  reply memorandum, plaintiffs stated that they were no longer
5  seeking certification of the SSM claim because they needed
6  additional discovery on that claim before continuing with it.  See
7  Oct. 3, 2006 Findings & Recommendation at p. 9.  On July 22, 2004,
8  plaintiffs filed a "Consent to be a Party Plaintiff" on behalf of
9  Gustafson.  On July 27, 2004, I issued a Findings & Recommendation
10 recommending that the certification motion as to the timesheet
11 conversion claim, be denied.  Judge Haggerty adopted this ruling on
12 October 1, 2004.

13     On July 22, 2005, defendant moved to compel documents from
14 Gustafson and for an order compelling Gustafson to answer certain
15 interrogatories.  Plaintiffs also filed various discovery motions
16 in July 2005.  At a September 6, 2005 oral argument on the
17 discovery motions, I granted, as relevant here, defendant's motion
18 for production of documents and granted in part and denied in part
19 the motion directed to the interrogatories.

20     Plaintiff argues that because defendant obtained discovery
21 from Gustafson, she should be treated as a party.  But, the context
22 in which the discovery was obtained is notable here, as is the fact
23 that during the oral argument on the discovery motions, the issue
24 of whether Gustafson should be treated as a party was expressly
25 left open and it is clear from reading the colloquy between the
26 Court and counsel that no one contemplated that Gustafson was to be
27 treated as a party in the case by virtue of being subject to some
28 discovery.

5 - FINDINGS & RECOMMENDATION

1    This is consistent with the relevant case law as well. In
2    cases using the two-tiered approach to addressing the "similarly
3    situated" inquiry required as part of an FLSA collective action
4    motion, the court typically dismisses the opt-ins if it grants a
5    motion to decertify the class.    E.g., Cameron-Grant v. Maxim
6    Healthcare Servs., Inc., 347 F.3d 1240, 1243 n.2 (11th Cir. 2003)
7    (discussing two-tiered approach for analyzing FLSA certification
8    actions and noting that if class is certified as collective action
9    at first tier, and then decertified at the second stage, "the opt-
10   in plaintiffs are dismissed without prejudice."); Bayles v.
11   American Med. Response of Col., Inc., 962 F. Supp. 1346, 1347 (D.
12   Col. 1997) (court ruled that its order decertifying a collective
13   action automatically dismissed all persons who had opted in to the
14   conditionally certified class).

15   While this case did not strictly adhere to the two-tiered
16   approach, the reasoning behind the dismissal of the opt-ins at the
17   time a motion to decertify is granted, applies here. The point is
18   that during the discovery phase of a claim involving an FLSA
19   collective action, whether it has been actually certified as such
20   or whether certification is being litigated, opt-ins, or putative
21   opt-ins as in this case, are participants in the discovery process
22   and such participation does not make the opt-in a party. Rather,
23   the discovery is relevant to the collective action certification
24   issues and once a collective action is denied, or the action is
25   decertified as a collective action, the opt-in or putative opt-in
26   no longer has a place in the litigation. Such is the case here
27   with Gustafson.

28   In their reply memorandum in support of the summary judgment

6 - FINDINGS & RECOMMENDATION

1  motion on the SSM claim, and as an alternative to their argument
2  that Gustafson should be treated as a party because defendant
3  sought discovery from her, plaintiffs move to amend the Second
4  Amended Complaint to add Gustafson as a party.  I recommend that
5  the motion to amend be denied.

6      While Federal Rule of Civil Procedure 15(a) states that leave
7  to amend "shall be freely given when justice so requires," the
8  timing of the motion to amend following discovery and with a
9  pending summary judgment motion, weighs heavily against allowing
10 leave.  Schlacter-Jones v. General Tel. of Cal., 936 F.2d 435, 443
11 (9th Cir. 1991), abrogated on other grounds, Cramer v. Consolidated
12 Freightways, Inc., 255 F.3d 683 (9th Cir. 2001).  This case has
13 been pending for almost three years.  Discovery has been closed
14 since July 2005, with the exception of the discovery ordered at the
15 September 6, 2005 discovery hearing, and with the exception of
16 additional production related to plaintiffs' Interrogatories 10 and
17 11.  It is simply too late to add another party.

18 II.  Motion on SSM Claim

19     This claim relates to the classification of SSMs as exempt
20 employees and thus, not entitled to overtime wages for any hours
21 worked over 40 in one week.  29 U.S.C. § 207.  Plaintiffs seek
22 summary judgment on liability.

23     In their reply memorandum in support of the motion, plaintiffs
24 concede that defendant has created an issue of fact regarding how
25 many hours per week Mrazek worked.  Thus, I recommend that the
26 motion as to Mrazek be denied.  The only remaining plaintiff with
27 an SSM claim is McElmurry.

28     Although the FLSA provides that covered employees must receive

7 - FINDINGS & RECOMMENDATION

1  not less than a stated minimum wage for all hours worked, and
2  overtime premium pay for all hours worked in excess of forty hours
3  per week, 29 U.S.C. §§ 206, 207, the FLSA exempts from overtime
4  requirements those employees who are "employed in a bona fide
5  executive, administrative, or professional capacity[.]" 29 U.S.C.
6  § 213(a)(1).

7      "In a suit brought under the FLSA, the employee has the burden
8  of proving that the employee was not properly compensated for work
9  performed." Imada v. City of Hercules, 138 F.3d 1294, 1296 (9th
10 Cir. 1998). The burden is on the employer to establish that an
11 employee is exempt from the FLSA's overtime requirements. Bothell
12 v. Phase Metrics, Inc., 299 F.3d 1120, 1124-25 (9th Cir. 2002)
13 ("[a]n employer who claims an exemption from the FLSA has the
14 burden of showing that the exemption applies. . . . FLSA exemptions
15 are to be narrowly construed against employers and are to be
16 withheld except as to persons plainly and unmistakenly within their
17 terms and spirit.") (internal quotations and citations omitted).

18     Both the executive and administrative exemptions have a salary
19 and a duties test. 29 C.F.R. §§ 541.1, 541.2 (2004). Under both
20 exemptions, an employee must be paid on a salary basis of at least
21 $250 per week to meet the salary test. Id. There is no dispute
22 that McElmurry met the salary test.

23     The duties test for the executive exemption requires that the
24 employee (1) have management as her primary duty; (2) be in charge
25 of a customarily recognized subdivision of the business; and (3)
26 regularly direct the work of two or more full-time employees. See
27 29 c.F.R. § 541.1(f) (2004). "Management" is defined to include
28 the hiring and training of employees, setting their hours and pay

8 - FINDINGS & RECOMMENDATION

1   rates, directing their work, determining the merchandise to be
2   bought, stocked and sold, and other work necessary to manage the
3   department.  29 C.F.R. § 541.102 (2004).  If the employee spends
4   more than 50% of his or her time doing management duties, the
5   primary duty test is usually met under federal regulations.  29
6   C.F.R. § 541.103 (2004).  In contrast, "[a] person whose work is so
7   completely routinized that he has no discretion does not qualify
8   for exemption."  29 C.F.R. § 541.107(a) (2004).

9        "To meet the administrative exemption, the employee's primary
10  duties must consist of (a) the performance of office work directly
11  related to the general business operations of the employer; and (b)
12  duties that require the exercise of discretion and independent
13  judgment."  Pfohl v. Farmers Ins. Group., No. CV03-3080 DT(RCX),
14  2004 WL 554834, at *8 (C.D. Cal. Mar. 1, 2004) (citing 29 C.F.R. §
15  541.2(a)(1)).

16       As the Ninth Circuit explained in a 2002 case, the requirement
17  of performance of non-manual work directly related to management
18  policies or general business operations, is "met if the employee
19  engages in running the business itself or determining its overall
20  course or policies, not just in the day-to-day carrying out of the
21  business' affairs."  Bothell, 299 F.3d at 1125 (internal quotation
22  omitted).  The Bothell court, quoting an interpretive regulation,
23  further stated that

24           [t]he phrase "directly related to management policies or
             general  business  operations  of  his  employer  or  his
25           employer's customers" describes those types of activities
             relating to the administrative operations of a business
26           as distinguished from "production" or, in a retail or
             service  establishment,  "sales"  work.   In  addition  to
27           describing the types of activities, the phrase limits the
             exemption  to  persons  who  perform  work  of  substantial
28           importance to the management or operation of the business

9 - FINDINGS & RECOMMENDATION

1  of his employer or his employer's customers.

2  Id. at 1125-26 (quoting 29 C.F.R. § 541.205(a)) (emphasis added in

3  Bothell).

4      In her declaration, McElmurry states that she worked as an SSM

5  at defendant's Cornelius, Oregon branch from October 2001 to

6  January 2002.  McElmurry Declr. at ¶¶ 1, 2.  She was paid on a

7  salary, which was "about $9.25 per hour."  Id. at ¶ 3.  She states

8  that "[o]n average, she worked not less than 50 hours per week as

9  a Sales and Service Manager."  Id. at ¶ 4.  When she worked more

10  than 40 hours per week, she was not paid 1½ times her regularly

11  hourly rate for the hours worked in excess of 40 per week.  Id. at

12  ¶ 5.

13      McElmurry provides the following description of her SSM job

14  duties:

15          9.a.  Performing teller and vault teller duties.

16          9.b.  Opening the branch, including but not limited
          to:  (1) Unlocking the door and turning off the alarm;
17          (2) walking the branch to ensure no other persons were
          hiding in the branch; (3) checking the surveillance video
18          tapes; (4) opening the vault (US Bank's policy required
          two employees to open safe); (5) signing on to the branch
19          computer: (6) opening (assisted by another employee) and
          balancing the night drop chute and the ATM.
20
          9.c.  Printing and filing computer reports and
21          performing checklists and audit review worksheets which
          included but was not limited to:  (1) General ledger 380
22          reports - essentially an account balancing; (2) safe
          deposit box past due reports - regarding customers late
23          in paying box fees; (3) drill status report - note safe
          deposit boxes that were vacant and needed locks changed;
24          (4) daily cash over short reports - bookkeeping; and (5)
          kiting reports - account monitoring for fraud.  These
25          reports were all bookkeeping, account reconciliation
          functions that did not involve applying high skill or
26          specialized knowledge of, for example, a certified public
          accountant or a financial analyst.  None of the above
27          involved making independent decisions about whether a
          particular report was needed or whether the procedures
28          for doing the reports should be changed.

10 - FINDINGS & RECOMMENDATION

1             9.d.  Miscellaneous general branch duties, including
but  not  limited  to:    (1)  checking  to  ensure  that
2   signatures and initials required by bank procedures were
completed; (2) tracking employee telephone numbers and
3   emergency contacts; (3) answering and assisting tellers
with correct procedure questions; and (4) processing mail
4   (sorting and distributing).

5             9.e.    Checking  on  tellers.    This  included:    (1)
counting other employee cash drawers when the employee
6   did not balance; (2) performing quarterly cash exposure
counts  (quarterly  audits  of  cash  drawers);  and  (3)
7   investigate and resolve teller outages (out of balance) -
basically a bookkeeping or reconciliation function.

8

9             9.f.    Selling  products  the  banks  offered  to  its
clients.    I  did  not  have  authority  to  set  overall
marketing strategy regarding these products.  Instead, I
10  was following US Bank guidelines set by others regarding
how  the  products  should  be  promoted  or  advertized.    I
11  also did not set the prices for the products.  I had no
authority  to  independently  determine  what  specials  US
12  Bank would offer to customers, such as lower bank fees,
whether  a  minimum  balance  would  be  required  for  some
13  benefit,  or  whether  products  would  be  offered  at  reduced
prices and/or fees.

14

15            9.g.    Dealing with customer complaints and problems
(by telephone, and in person with client).

16  McElmurry Declr. at ¶ 9.

17      McElmurry    states    that    as    an    SSM,    she    was    not

18  independently authorized to hire or fire any employee or to set,

19  raise, or reduce an employee's wages.  Id. at ¶¶ 7, 8.  McElmurry

20  further  states  that  she  spent  not  less  than  60%  of  her  time

21  completing the duties listed above and that the primary nature of

22  her  work  as  an  SSM  did  not  involve  work  that  required  her  to

23  exercise discretion and independent judgment.  Id. at ¶¶ 10, 11.

24  According to McElmurry, she used her work skills and knowledge to

25  follow US Bank procedures, to determine which US Bank procedure to

26  follow, or to determine if a US Bank procedure was being followed.

27  Id. at ¶ 11.

28      Defendant argues that issues of fact preclude summary judgment

11 - FINDINGS & RECOMMENDATION

1  for McElmurry.  Defendant notes that during her approximately
2  three-month tenure as an SSM, McElmurry helped train a vault
3  teller, gave recommendations for a promotion and discussed a
4  potential raise that occurred during this period, tracked employee
5  attendance, and reported attendance problems.  McElmurry Depo. at
6  pp. 74, 76, 77, 79. She and the Branch Manager scheduled the
7  tellers and they were both responsible for telling the staff when
8  to take their lunch and rest breaks.  Id. at p. 83.  McElmurry also
9  assisted in preparing for audits.  Id. at p. 81.

10     Defendant argues that the deposition testimony creates an
11 issue of fact as to whether McElmurry meets the administrative or
12 executive exemptions.  I reject this argument.

13     As plaintiffs note, assisting in the training of one vault
14 teller, assisting the branch manager in scheduling, and giving one
15 recommendation regarding a promotion, do not meet either test.  I
16 agree with plaintiffs that the tasks highlighted by defendant do
17 not create an issue of fact as to either exemption.

18     On this record, and construing the facts in defendant's favor,
19 no reasonable juror could conclude that McElmurry's duties as an
20 SSM were exempt from overtime under the administrative exemption
21 because she did not perform office work directly related to the
22 general business operations of the employer and did not perform
23 duties that required the exercise of discretion and independent
24 judgment.  According to the uncontradicted statements in her
25 declaration, McElmurry's SSM duties were fairly routinized and
26 required her to follow established procedures.  She did not set or
27 originate policy and did not determine the overall course of the
28 business.  Rather, as noted in Bothell, she engaged in the day-to-

12 - FINDINGS & RECOMMENDATION

1   day carrying out of defendant's affairs.

2       Similarly, as to the executive exemption, no reasonable juror
3   could conclude that on the record presented, McElmurry had
4   management as her primary duty.   Assisting in training and
5   scheduling does not meet the definition of "management" in 29
6   C.F.R. § 541.102.  Making a recommendation regarding one promotion
7   also does not meet the standard.

8       According to defendant, each of its branches is a recognized
9   subdivision of the business.   Defendant notes that McElmurry
10  testified that when the branch manager was absent, she was solely
11  in charge of the branch.  From there, defendant contends that this
12  creates an issue of fact as to whether she meets the executive
13  exemption test.

14      I disagree.  The evidence defendant relies on in this regard
15  is limited to plaintiff's testimony that while she was the SSM at
16  the Cornelius branch, she was in charge of the branch if the branch
17  manager was gone.   McElmurry Depo. at p. 74.    There is no
18  testimony, or other evidence, showing whether this occurred one
19  time, every day, every week, or every month, and whether it was for
20  a ten-minute coffee break, a thirty-minute lunch period, or an
21  entire day.  Indeed, nothing on this record shows it happened at
22  all in this time period. Without any additional information about
23  the frequency of McElmurry assuming responsibility for operating
24  the branch in the branch manager's absence, the factfinder can do
25  nothing more than speculate as to whether she engaged in this
26  activity a sufficient amount of time to bring her within the
27  exemption.   Facts which provoke only speculation cannot defeat
28  summary judgment.   See Anheuser-Busch, Inc. v. Natural Beverage

13 - FINDINGS & RECOMMENDATION

1  Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (speculative testimony
2  is insufficient to raise a genuine issue of fact to defeat summary
3  judgment).    Thus, defendant fails to create an issue of fact
4  regarding McElmurry being in charge of a customarily recognized
5  subdivision of the business to the extent required for the
6  exemption.

7       As noted above, plaintiffs move for partial summary judgment
8  on liability regarding this claim.  This motion does not require a
9  determination as to damages.  To establish liability, McElmurry
10 must show that in any week in which she worked more than forty
11 hours, she was not paid overtime for such hours.  Because defendant
12 has failed to create an issue of fact on the question of an
13 exemption, I recommend that plaintiff's motion as to liability be
14 granted.

15      I note, however, that the summary judgment record, other than
16 establishing that McElmurry regularly worked more than forty hours
17 per week as an SSM, and was not paid for hours worked in excess of
18 forty per week, does not establish the number of hours McElmurry
19 worked in any particular week. At trial, plaintiff still must show
20 which weeks she worked more than forty hours, how many hours she
21 actually worked in those weeks, what she was paid for that week,
22 and what her regular rate of pay was at the time.

23 III.   Motion on Timesheet Conversion Chart Claim

24      McElmurry moves for partial summary judgment on the issue of
25 liability, on the timesheet conversion chart claim.  She contends
26 that while working as a vault teller in Brookings between January
27 and November 2003, she recorded her time on a weekly time report
28 which required recording the total hours worked for a day in hours

14 - FINDINGS & RECOMMENDATION

and tenths. A "conversion chart" on the weekly time report showed how to convert the hours and minutes into hours and tenths. McElmurry contends that defendant's use of the chart created a "truncation policy" which caused defendant to fail to pay her for hours she worked in excess of forty hours per week.

In support of her motion, plaintiff relies on the declarations of two of her counsel, and exhibits attached to those declarations. Counsel Karen Moore submitted an initial declaration on January 3, 2007, and an amended declaration on January 30, 2007. The only difference between the two declarations relates to Exhibit A to Moore's January 3, 2007 Declaration.

In her January 3, 2007 Declaration, Moore describes how she took the twenty-three weekly timesheets which are Exhibit A to the Declaration of counsel Stephanie Brown, and reviewed each separate daily time entry on each weekly timesheet. Moore Jan. 3, 2007 Declr. at ¶ 4. She added the minutes and hours recorded for each day under the headings "Begin," "Lunch Out," "Lunch In," "Other Out," "Other In," and "End," and obtained the total hours and minutes worked for the day. Id. She then compared the hours and minutes total to the amount of time recorded on the weekly timesheet under the column "Daily Totals Worked." Id.

By comparing the daily hours and minutes actually worked to the time recorded in hours and tenths, Moore computed whether the total time recorded in hours and tenths accurately represented the total hours and minutes worked. For example, on January 17, 2003, according to the begin, end, in, and out times McElmurry recorded, she worked 7 hours and 50 minutes. Exh. A to Brown Declr. at p. 1. She recorded this as 7.8 hours. Id. Moore computed this as a

15 - FINDINGS & RECOMMENDATION

difference of 2 minutes because 8/10 of an hour is actually 48 minutes and thus, by recording 7.8 hours, McElmurry wrote that she worked 7 hours and 48 minutes rather than 7 hours and 50 minutes.

In her January 3, 2007 Declaration, Moore explains how Exhibit A to her declaration shows the results of her review of the weekly time reports and her computations. Moore Jan. 3, 2007 Declr. at ¶ 5. Exhibit A shows the Bates Number of the weekly time report and the weekly time report's week ending date. Then, in a column entitled "Difference When Applying Conversion Chart," Exhibit A reveals the weekly difference between the total amount of time in hours and minutes as recorded on the weekly time report and the total time as recorded in hours and tenths. Id. Finally, a column entitled "Overtime" shows whether the difference in the previous column would have resulted in a loss of overtime.[2]

In the Exhibit A attached to Moore's January 3, 2007 Declaration, the total number of minutes of overtime computed by Moore as owed to McElmurry for the twenty-three weeks for which the weekly time reports are in evidence, is 23. Exh. A to Moore Jan. 3, 2007 Declr.

Attached to Brown's January 3, 2007 Declaration is an Earning Statement for McElmurry for the pay period ending December 15,

---

[2] For example, if the difference for the week is 4 minutes but McElmurry worked only a total of 38 hours for the week, she has no overtime claim. The column headed "Difference When Applying Conversion Chart" would show a 4 but the column headed "Overtime" would be blank. If, however, the difference is 4 minutes in a week in which she worked 40 or more hours, she has a claim for 4 minutes of overtime for that week. In that situation, the "Difference" column and the "Overtime" column would both show 4.

16 - FINDINGS & RECOMMENDATION

1  2003.   Exh. G to Brown Jan. 3, 2007 Declr.   It shows a "rate" of

2  $9.25, indicating, according to McElmurry, an hourly pay rate of

3  $9.25.  Based on this evidence, McElmurry states she is entitled to

4  summary judgment on liability for an amount no less than $5.32.[3]

5      In her amended declaration, Moore explains that Exhibit A to

6  her January 3, 2007 Declaration, has been amended to correct a time

7  calculation for the weekly time report for the week ending February

8  28, 2003.   Moore Jan. 30, 2997 Am. Declr. at ¶ 3.   While the

9  original Exhibit A to the January 3, 2007 Declaration showed "-9"

10 in the "Difference When Applying Conversion Chart" column, and "-

11 20" in the "Overtime" column for the weekly time report for the

12 week ending February 28, 2003, the Exhibit A appended to the

13 January 30, 2007 Amended Declaration shows "-5" for the "Difference

14 When Applying Conversion Chart," and the Overtime column is blank.

15 Exh. A to Moore Jan. 30, 2007 Am. Declr.

16     Moore also explains that for the week ending date of April 25,

17 2003, ay time differences between hours and minutes recorded and

18 the number recorded under "Daily Totals Worked," cannot be

19 explained by the conversion chart.  Moore Jan. 30, 2007 Am. Declr.

20 at ¶ 3.   Based on these revisions, the Exhibit A appended to

21 Moore's Amended Declaration shows that the total number of minutes

22 of overtime computed by Moore as owed to McElmurry for the twenty-

23 three weeks for which the weekly time reports are in evidence, is

24 3.  Exh. A to Moore Jan. 30, 2007 Am. Declr.  Assuming McElmurry's

25 hourly rate for this time period was $9.25, she contends she is

26

27     [3]  If her regular hourly rate is $9.25, her overtime rate is
   $13.88 per hour, or $0.231 per minute.  For 23 minutes, the claim
28 is $5.32.

17 - FINDINGS & RECOMMENDATION

1  entitled to summary judgment on liability for an amount no less
2  than $0.69.

3      At oral argument, McElmurry revised her position again, and
4  suggested that for the week ending March 14, 2003, she erroneously
5  credited defendant with 44 minutes and thus, she seeks summary
6  judgment on liability for at least 47 minutes of overtime.[4]  Then,
7  she  further  argued  that  based  on  what  she  contends  to  be
8  defendant's  failure  to  dispute  the  calculations  for  three
9  particular weeks, the weeks ending January 13, 2003, July 17, 2003,
10  and August 1, 2003, it is undisputed that she is entitled to
11  summary judgment on at least 38 minutes of this 47 minutes of
12  overtime.

13      In response, defendant raises a host of arguments concerning
14  the evidence as well as a legal argument that accepting McElmurry's
15  evidence, she has no claim because it is de minimis.  For the
16  reasons  explained  below,  I  agree  with  some  of  defendant's
17  evidentiary arguments and conclude that on this record, issues of
18  fact remain regarding McElmurry's entitlement to summary judgment
19  on the issue of liability.

20      First, I reject defendant's argument that plaintiff's claim
21  fails  because  she  does  not  establish  defendant  maintained  a
22  "truncation policy" and that the differences between time actually

23

24      [4]  Even accepting McElmurry's mathematical calculations for
25  this week as correct, I make no ruling here on the issue of
   whether defendant should or should not be entitled to the credit
26  for the extra time.  Moreover, my calculations show that the
   difference between what she worked on Thursday, March 13, 2003 (6
27  hours and 40 minutes), and what she recorded (7 hours and 36
   minutes), is 56 minutes, not 60 minutes as McElmurry appears to
28  have calculated.

18 - FINDINGS & RECOMMENDATION

1 worked and time recorded is attributable to that policy.    As
2 McElmurry's counsel explained at oral argument, the timesheet
3 conversion chart claim has proceeded thus far in the litigation as
4 based on a policy maintained by defendant, because plaintiffs
5 viewed that as required for the "similarly situated" collective
6 action standard.  Now that the claim is pursued only by McElmurry,
7 the maintenance of any policy is irrelevant.  The simple question
8 is whether McElmurry worked more than 40 hours per week and if so,
9 was she paid for all hours worked more than 40?

10    Similarly, while I understand defendant's point that Moore
11 herself cannot attest to McElmurry's use of the conversion chart,
12 the weekly time reports themselves instruct the employee to report
13 their "Daily Total Worked" in hours and tenths.  This, along with
14 the conversion chart appearing on each weekly time report, is
15 enough for a reasonable factfinder to conclude that an employee
16 would ordinarily use the conversion chart to convert hours and
17 minutes to hours and tenths.    The document itself, to which
18 defendant has no objection, is sufficient.

19    To sustain her claim, McElmurry must first show that for any
20 week in which she seeks overtime, she worked more than 40 hours per
21 week.  Assuming she does so for any particular week, she will then
22 have to show that her recording of the daily total hours in hours
23 and tenths, rather than hours and minutes, caused her to be
24 underpaid.  She does not need to establish a policy.

25    Second, while I reject this policy argument, several other
26 evidentiary issues present obstacles to McElmurry prevailing at
27 summary judgment.    Initially, defendant relies on deposition
28 testimony showing that McElmurry regularly adjusted her own begin

1  and end times, and lunch in and out times.  For example, if she
2  returned from lunch at 1:02 p.m., she would probably write 1:00
3  p.m. as her lunch end time.  McElmurry Depo. at pp. 32-34, 38.  If
4  she arrived at work at 8:02 a.m., she would write down 8:00 a.m. as
5  her begin time.  Id.

6      These adjustments work in McElmurry's favor.  However, she
7  also made adjustments that worked in defendant's favor.  For
8  example, if she arrived at work at 8:03 a.m., she would write down
9  8:05 as her start time.  Id.  Similarly, if she concluded for the
10 day at 5:02 p.m., she might write 5:00 p.m. as her work end time.
11 As defendant notes, McElmurry gained minutes by adjusting any start
12 time back or adjusting any stop time forward.  Defendant, however,
13 gained minutes when McElmurry adjusted a start time forward or a
14 stop time back.

15     Plaintiffs take issue with defendant's reliance on this
16 adjustment to start and stop times in opposition to the summary
17 judgment motion, arguing that defendant should be bound by a
18 statement made earlier in the litigation that these adjustments
19 "probably come out in the wash."  Deft's Opp. to Pltfs' Renewed
20 Motion (dkt #109) at p. 17 (Exh. 1 to Schuck Feb. 1, 2007 Declr. at
21 p. 3).

22     Plaintiffs fail to quote the entire statement by defendant,
23 which was that "[b]y themselves, these rounded start and stop times
24 probably 'come out in the wash."  However, in a case such as this
25 where plaintiffs seek to recover for a minute here and two minutes
26 there, the rounded start times offset any rounding caused by the
27 conversion chart."  Id.  When the second sentence is included, it
28 is clear that defendant made no admission that an employee's own

20 - FINDINGS & RECOMMENDATION

1   adjustment to his or her start and stop times had no effect on the
2   claim here.  Defendant asserted just the opposite:  while in and of
3   themselves the adjustments may result in no net effect over a
4   period of time, when an overtime claim for minutes per day is
5   asserted, and the claim is evaluated in one-week increments, the
6   fact that the employee self-adjusted his or her start and stop
7   times by a couple of minutes could, in fact, produce an offset such
8   that there is no unpaid overtime.

9       This issue was addressed in the July 27, 2004 Findings &
10  Recommendation on plaintiffs' first motion for certification of a
11  collective action on the timesheet conversion chart claim.  I noted
12  there that employees could have interpreted some of the weekly time
13  reports as requiring the adjustment of their start and stop times
14  which could produce, at the end of the day, a "rounding up" of the
15  employee's time.  July 27, 2004 Findings & Rec. at pp. 27-28.

16      The evidence regarding McElmurry's practice of adjusting her
17  start and stop times, which can result in a "rounding up" of
18  minutes, creates a genuine issue of material fact precluding an
19  award of summary judgment to plaintiff.  On this record I cannot
20  conclude that reasonable jurors would not differ about the meaning
21  and effect of these adjustments to her start and stop times.  While
22  some may be persuaded that in any given day or week, "they come out
23  in the wash," others may conclude that they appropriately offset a
24  claim to minutes of overtime lost by converting hours and minutes
25  to hours and tenths.

26      The same problem occurs with the evidence showing that
27  McElmurry herself made computation errors.  As noted above in
28  footnote three, McElmurry erroneously recorded 7.6 hours on a day

21 - FINDINGS & RECOMMENDATION

when she should have recorded 6.6 hours.    The record reveals several other similar errors.    E.g., Exh. A to Brown Declr. at p. 20 (daily total for July 7, 2003 should have been recorded as 9.5 hours, but she recorded 9.4 hours), 7 (daily total for February 26, 2003 should have been recorded as 9.1 hours, but she recorded 10.1 hours), 8 (daily total for March 5, 2003 should have been recorded as 8.0 hours, but she recorded 8.1 hours; daily total for March 7, 2003 should have been recorded as 8.6 hours, but she recorded 8.7 hours), 14 (daily total for April 14, 2003 should have been recorded as 8.4 hours, but she recorded 8.5 hours; daily total for April 16, 2003 should have been recorded as 7.9 hours, but she recorded 8.0 hours).

Plaintiff's own computation errors are relevant to an assessment of her accuracy as a timekeeper which in turn, is relevant to the factfinder's ultimate determination of whether McElmurry had any week in which she was not paid for minutes worked and whether those minutes were in a week when she worked 40 or more hours.    When the total claim is in the range of 3, 23, 38, 44, or 47 minutes, the accuracy of McElmurry's recording is critical in assessing the validity of her claim.    Because the repeated computation errors could affect McElmurry's credibility as a timekeeper, summary judgment to McElmurry on the liability portion of this claim is inappropriate.

Next, I agree with defendant that the record lacks any admissible, affirmative evidence showing what plaintiff was actually paid for any week in which she claims a loss of overtime. It is plaintiff's burden to show that she worked more than 40 hours in a week and that she was not paid for those overtime hours.

22 - FINDINGS & RECOMMENDATION

1  While the one pay statement shows a "rate" of $9.25, and I assume
2  this was her hourly rate of pay, there are no pay statements
3  showing her total pay for any of the weeks in which she alleges she
4  was not paid overtime.   Nor is there a statement from McElmurry
5  herself stating how much she was actually paid.

6      McElmurry contends that defendant previously conceded that
7  employees are paid based on the time recorded in their weekly time
8  reports.   McElmurry cites to defendant's memorandum in opposition
9  to plaintiffs' initial collective action motion regarding the
10 timesheet conversion chart claim, in which defendant stated that
11 "[o]f the 48 employees who were supposedly 'rounded down,' nine
12 were either not rounded at all or were rounded up - in other words,
13 overpaid."   Deft's Opp. to Pltfs' Renewed Motion (dkt #109) at p.
14 18  (Exh. 2 to Schuck Feb. 1, 2007 Declr. at p. 2).   When this
15 statement is viewed in context, however, it is clear that defendant
16 asserted that "rounded up" meant that the employee wrote a time
17 reflecting a claim for payment for more hours than were actually
18 worked.   It is not an admission that the employee was actually paid
19 the amount claimed.

20     McElmurry next contends that defendant fails to reference,
21 address, or deny the facts relative to three particular weeks in
22 which she seeks overtime, and thus, for those three weeks, with
23 their cumulative 38 minutes, defendant has conceded that she was
24 not paid for overtime minutes she worked.

25     I disagree.   For example, defendant denied that plaintiff
26 worked more than 40 hours each week.   Deft's Resp. to Pltfs'
27 Concise Stmt at ¶ 2.   Defendant also denied that it failed to
28 compensate her for 23 minutes she worked in excess of 40 hours.

23 - FINDINGS & RECOMMENDATION

1  <u>Id.</u> at ¶ 4.  Moreover, as defendant asserted at oral argument, all
2  of defendant's arguments directed toward the insufficiency of
3  plaintiff's evidence, such as her adjustment to her start and stop
4  times and her own computation errors, apply to all of the weeks at
5  issue in the motion and simply because defendant did not articulate
6  a particular error or objection week by week does not amount to a
7  concession that McElmurry is entitled to summary judgment for a
8  week in defendant did not note a specific error or objection.

9         Finally, the outstanding factual issues preclude resolution of
10  the <u>de minimis</u> legal issue raised by defendant.  Defendant argues
11  that even assuming McElmurry's calculations are correct and
12  substantiated by admissible evidence, the amount of alleged
13  overtime is not actionable because it is <u>de minimis</u>.

14         Assuming the <u>de minimis</u> argument applies to the facts here,
15  because the motion is directed to liability only and liability only
16  for a minimum number of minutes, it is possible that at trial, when
17  McElmurry puts on all of her proof, she may end up with a claim for
18  hours, rather than minutes, and thus, the claim would likely not be
19  <u>de minimis</u>.

20         Additionally, the <u>de minimis</u> rule does not apply to all
21  situations where small amounts of time are involved.  Generally,
22  "[t]he <u>de minimis</u> rule is concerned with the practical
23  administrative difficulty of recording small amounts of time for
24  payroll purposes."  <u>Lindow v. United States</u>, 738 F.2d 1057, 1062
25  (9th Cir. 1984).  Relevant considerations include the practical
26  administrative difficulty of recording the time, the aggregate
27  amount of compensable time, and the regularity of the uncompensated
28  work.  <u>Id.</u> at 1063.

24 - FINDINGS & RECOMMENDATION

1    On this record, it is not clear if the overtime minutes
2  allegedly owed are attributable to McElmurry's own computation
3  errors, or to defendant's requirement that the daily total time be
4  converted to hours and tenths, or possibly to the employee's
5  practice of adjusting his or her start and stop times to the
6  nearest five-minute interval, which some employees may have
7  understood to be a required practice.  Until the record is more
8  fully developed regarding the cause of the alleged under-reporting
9  of all the time McElmurry worked, the applicability of the <u>de</u>
10 <u>minimis</u> rule cannot be determined.  As long as its application is
11 possible, summary judgment to McElmurry on this claim is
12 inappropriate.

13    I recommend that plaintiffs' motion for partial summary
14 judgment on the timesheet conversion chart claim be denied.[5]

15 _____

16    [5]  Obviously, the amount of damages at stake in the SSM and
17 timesheet conversion claims is quite small.  Assuming McElmurry
   worked 50 hours per week for the months of October, November, and
18 December 2001, and January 2002, her SSM claim is worth
   approximately $2,387.36 (10 hours per week of overtime x 17.2
19 weeks (4 months x 4.3 weeks/month), is 172 hours, at a rate of
   $13.88 per hour ($9.25 per hour x 1.5), for a total of
20 $2,387.36).  Mrazek's claim could be worth approximately
   $6,266.82 (assuming she worked 21 months from May 1, 2003, to
21 January 31, 2003 (without vacation), I calculate this as
   approximately 90.3 weeks (21 months x 4.3 weeks/month), x 5 hours
22 per week (based on her statement that she worked not less than 45
   hour per week), produces a figure of 451.1 hours which equals
23 $6,266.82 when multiplied by $13.88 per hour).  The timesheet
24 truncation claim, as argued by plaintiffs in their reply brief,
   is worth $0.69, or, as argued at the oral argument, is worth
25 $10.81.
26    Notwithstanding the ridiculously small amount at stake in
   the timesheet conversion chart claim, and the relatively small
27 amounts at stake in the SSM claim, defendant chose a strategy
   which was designed to prevent resolution of the motions based on
28 the absence of evidence on this record where that evidence is

25 - FINDINGS & RECOMMENDATION

IV. Motion on Late Pay at Termination Claim

Both Mrazek and McElmurry bring claims under Oregon Revised Statute §§ (O.R.S.) 652.140 and 652.150, for penalty wages owed as a result of defendant's alleged failure to timely pay them upon termination. Under O.R.S. 652.140, when an employee, not subject to a contract for a definite period of employment, gives at least forty-eight hours notice of his or her intent to quit, the employer must pay "all wages earned and unpaid at the time of quitting." O.R.S. 652.140(a). The willful failure to timely pay the wages owed in accordance with O.R.S. 652.140(a) subjects the employer to a penalty under O.R.S. 652.150 equal to the regular hourly rate of the employee for eight hours per day, until paid or until action for the wages is commenced, up to a maximum of 30 days from the due date. O.R.S. 652.152(1).

As the plain language of the statutes makes clear, Mrazek and McElmurry must show that they provided defendant with notice of their intent to quit at least 48 hours before they quit, and that defendant willfully failed to pay them all wages earned and unpaid at the time they quit.

/ / /

/ / /

---

more likely than not in defendant's control. For example, it is hard to believe that defendant does not maintain possession of records of what it actually paid its employees. Thus, defendant could have produced that evidence to eliminate the issue of what was actually paid and focus instead on whether there was any overtime wages earned which remained unpaid.

While this strategy may have achieved the desired result in preventing plaintiffs from obtaining summary judgment on a particular claim, it only prolonged resolution of the claims and added expense to all parties and the Court.

26 - FINDINGS & RECOMMENDATION

1    A.  McElmurry

2        On  November  19,  2003,  McElmurry  provided  a  handwritten
3    termination letter addressed to "Kathy," to defendant stating that
4    she intended to quit her employment on November 28, 2003.   Exh. 3
5    to Jan. 3, 2007 Schuck Declr.   In a January 8, 2007 declaration,
6    she  states  that  her  last  day  of  employment  with  defendant  was
7    November 28, 2003.   Jan. 8, 2007 Declr. at ¶ 1.

8        Defendant  argues  that  an  issue  of  fact  exists  regarding
9    McElmurry's last date of employment because, in her deposition, she
10   stated  that  she  left  the  bank  in  November  2003,  but  could  not
11   recall the exact date, other than that she believed it was the last
12   day  of  the  week.    I  reject  this  argument  because  the  letter
13   submitted  by  McElmurry  in  support  of  her  motion,  and  her
14   declaration  statements,  are  consistent  with  her  deposition
15   testimony and clarify, rather than contradict, her assertion that
16   her last date of work was November 28, 2003.   Defendant does not
17   create  an  issue  of  fact  in  regard  to  McElmurry's  last  day  of
18   employment with defendant.

19       There are, however, issues of fact regarding when McElmurry
20   received her last payment of all wages earned and unpaid.  Although
21   McElmurry testified in deposition that she could not remember when
22   she received her final paycheck, she later requested copies of her
23   monthly  bank  statements  from  defendant  showing  various  direct
24   deposits into her account.   McElmurry Jan. 31, 2007 Declr. at ¶ 2.

25       The problem is that a reasonable factfinder cannot examine the
26   bank statements and come to the single conclusion that McElmurry
27   received her final paycheck on a date other than November 28, 2003.
28   The bank statements show direct deposits made by defendant into

27 - FINDINGS & RECOMMENDATION

1  McElurry's account on November 26, 2003, November 28, 2003, and
2  December 1, 2003.    Contrary to McElmurry's assertion that the
3  December 9, 2003 bank statement shows an electronic deposit of
4  wages from defendant to McElmurry's account on December 1, 2003,
5  the bank statement shows only an electronic deposit with no
6  characterization.    It does not reveal that the payment was for
7  wages. While that may be one inference created by the evidence, it
8  is not the only reasonable one.

9      McElmurry next tries to argue that by comparing her pay
10  statements with her 2003 W-2, it is clear that the December 1, 2003
11  payment was wages.    I disagree.    On this record, the amounts
12  reflected do not clearly establish that it was wages that were paid
13  on December 1, 2003.  While this may be a reasonable inference to
14  be drawn from the evidence, it is not the only one and thus, it is
15  not appropriate for resolution on summary judgment.

16      I recommend that McElmurry's motion on the late payment on
17  termination claim be denied.

18      B.   Mrazek

19      Mrazek states that her last day of employment with defendant
20  was January 17, 2003, and that she provided a two-week notice to
21  defendant.    Exh. 1 to Schuck Jan. 3, 2007 Declr.    Mrazek further
22  states that on January 22, 2003, defendant made a partial payment
23  of her final wages, five days after they were due.

24      Here, defendant does not challenge the date the wages were
25  paid.    Defendant argues that there are issues of fact regarding
26  Mrazek's last day worked.  I agree with defendant.

27      Rhonda Tingle, a human resources employee, states that she
28  assisted in processing Mrazek's termination and that while Mrazek's

28 - FINDINGS & RECOMMENDATION

1  last day of work on the actual job site was January 17, 2003,
2  Mrazek remained an employee of the bank and was "on payroll" and
3  paid through January 23, 2003.  Tingle Declr. at ¶¶ 2, 3.

4      Tingle's statement is enough to create an issue of fact
5  precluding summary judgment.   Until the facts are developed
6  regarding what Mrazek was actually doing, how or why she was "on
7  payroll," and what she was paid for, a determination cannot be made
8  whether January 17, 2003, or January 23, 2003, was her last day of
9  employment for purposes of O.R.S. 652.140.

10     I recommend that Mrazek's motion on the late payment at
11 termination claim be denied.

12 V.  Motion to Strike

13     Defendant moves to strike certain submissions relied on by
14 plaintiffs in support of the motion for partial summary judgment on
15 the timesheet conversion chart claim.  Because I recommend denying
16 the motion even considering the challenged evidence, I deny the
17 motion to strike as moot.

18                          CONCLUSION

19     I recommend that plaintiffs' motion for summary judgment as to
20 the SSM claim (#355) be denied as to Gustafson and Mrazek, and
21 granted as to McElmurry; I recommend that plaintiffs' motion for
22 summary judgment as to the timesheet conversion chart claim (#345),
23 be denied; I recommend that plaintiffs' motion for summary judgment
24 as to the late payment at termination claim (#350) be denied.   I
25 recommend that the motion to amend to add Gustafson as a party,
26 asserted in plaintiffs' reply memorandum in support of the motion
27 on the SSM claim, be denied.  I deny defendant's motion to strike
28 (#364) as moot.

29 - FINDINGS & RECOMMENDATION

1          SCHEDULING ORDER

2          The above Findings and Recommendation will be referred to a

3    United States District Judge for review.  Objections, if any, are

4    due April 9, 2007.  If no objections are filed, review of the

5    Findings and Recommendation will go under advisement on that date.

6          If objections are filed, a response to the objections is due

7    April 23, 2007, and the review of the Findings and Recommendation

8    will go under advisement on that date.

9          IT IS SO ORDERED.

10                    Dated this  23rd  day of ____March____, 2007.

11

12

13                                _/s/ Dennis James Hubel_____
                                  Dennis James Hubel
14                                United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

30 - FINDINGS & RECOMMENDATION