JOSE R. MATA, SBN 83724, OSB 80305
E-Mail: JMata@wagelawyer.com
**BAILEY PINNEY, PC**
1498 SE Tech Center Place, Suite 290
Vancouver, WA 98683
Telephone: (360)567-2551; Fax: (360)567-3331

BONNIE MAC FARLANE, SBN 161526
E-Mail:  BMacfarlane@wagelawyer.com
**BAILEY PINNEY, PC**
720 Howe Street, Suite 113
Sacramento, CA 95825
Telephone: (916)923-5537; Fax: (916)923-5587

SUSAN SIMMONS SEEMILLER SBN 150546
E-Mail: SSeemiller@wagelawyer.com
**BAILEY PINNEY, PC**
840 County Square Drive
Ventura, CA 93003
Telephone: (805) 339-9090; Fax:  (805) 339-0090

Attorneys for Plaintiffs Ross, Prasad, Smith and Ramos

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ann Ross, Dennis Ramos, Maurita Prasad, and Kelly Smith, individually and on behalf of all others similarly situated,,<br><br>Plaintiffs,<br><br>vs.<br><br>US BANK NATIONAL ASSOCIATION, dba US BANK,<br><br>Defendant. | Case No. C 07-02951 SI<br><br>**PLAINITFF'S MOTION TO CLARIFY THE *COLORADO RIVER* STAY AS TO THE FLSA CLAIMS OF OREGON PLAINTIFFS**<br><br>Date:     May 2, 2008<br>Time:    9:00 a.m.<br>Ctrm:    10<br><br>Hon.  Susan Illston |

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

Plaintiffs Ramos and Smith hereby give notice of a motion to be heard at the time and place stated above, and move for an order to clarify this Court's Order of February 13, 2008 (Document 8) (the "Order").  Specifically, Plaintiffs seek clarification as to whether or not the Fair Labor Standards

Act ("FLSA") claims of Oregon Plaintiffs Ramos and Smith are stayed. This motion is based on the following argument and on the accompanying Declaration of David Schuck in Support of Plaintiff's Motion to Clarify ("Schuck Decl.") and its exhibits.

## I. FACTUAL SUMMARY

The Order states that "Claims on behalf of the Oregon classes are STAYED." Order 10:23. However, the FLSA claims of the Oregon plaintiffs would be proposed for certification as an FLSA collective for the states of Oregon, Washington and California – and not as simply an Oregon class. Moreover, the Washington and California FLSA claims were not dismissed. It was unclear to Plaintffs' counsel from the Order whether the FLSA claims of the Oregon plaintiffs were stayed. At the previous case management conference, Plaintiffs were instructed to file a motion to clarify the stay no later than March 28, 2008.

There are two separate FLSA claims that need consideration. The first is an FLSA claim by Plaintiff Ramos that Defendant cut his time by always requiring him to round his time to the next lower tenth of an hour rather than to the closest tenth of an hour. The second is an FLSA claim by Plaintiff Smith that she was misclassified as exempt under the FLSA when she worked for US Bank as a sales and service manager ("SSM"). Before discussing these two FLSA claims, Plaintiffs describe the classes they intend to pursue in this action and how the FLSA claims would fit in.

**A.    Classes Plaintiffs Intend to Pursue in This Action**

In this action, there are two California plaintiffs – Ross and Prasad. Defendant and Plaintiffs are stipulating that Plaintiff may file a Proposed Second Amended Complaint that would add two additional California plaintiffs – Burkhart and Housken. As alleged in the Proposed Second Amended Complaint, all the California plaintiffs were employed by US Bank in California at in-store bank branches. These are branches located inside stores, such as, Albertson's.

Plaintiffs intend to pursue the following California state-law classes on behalf of non-exempt US Bank employees who work or worked at in-store branches in California. These classes could be pursued on behalf of Plaintiffs Ross and Prasad within the bounds of the current complaint, but they are clearly alleged in the Proposed Second Amended Complaint.

1)    <u>In-Store Branch Off-the-Clock Class:</u> This putative class includes US Bank's

California in-store branch employees and former employees who were required to do work off-the-clock in violation of California law. The off-the-clock work includes: a) work performed while opening an in-store branch for business for the day and closing the in-store branch at the end of the day; and b) work performed after the end of an employee's scheduled shift. Plaintiffs contend that US Bank never paid for any of this off-the-clock work. Therefore, a California waiting time penalty under California Labor Code § 203 would apply because wages that were never paid are by definition late under California Labor Code §§ 201 and 202.

2) <u>In-Store Branch Meal Period Class:</u>   This putative class includes US Bank's California in-store branch employees and former employees who were not provided a meal period break in violation of California law. Plaintiffs contend that some of these employees had a meal period break deducted from their pay even though they were not provided with a lawful meal period under California law. For example, some employees were clocked out for a meal period but were required to perform work during the meal period, were expected to be on call during the meal period, or were not allowed to leave US Bank's premises during their purported meal period.

3) <u>In-Store Branch Rest Period Class:</u>   This putative class includes US Bank's California in-store branch employees and former employees who were not provided a rest period in violation of California law.

Plaintiffs also seek to certify the following California state-law classes that are not limited to in-store branch employees:

1) <u>California Waiting Time Penalty Class:</u> This putative class includes US Bank's California exempt and non-exempt employees whose employment with US Bank terminated, but who were not paid their final wages within the time allowed by California Labor Code §§ 201 and 202. Plaintiffs are alleging that these putative class members were paid their final wages late.

2) <u>California Lost Time Deduction Class:</u> In their Proposed Second Amended Complaint, Plaintiffs seek to reinstate this claim, which was dismissed because Plaintiffs did not

plead that any California plaintiff had this claim. The proposed Second Amended Complaint alleges that current Plaintiff Ross and proposed new plaintiff Burkhart have a lost time deduction claim. The lost time deduction claim asserts that US Bank unlawfully deducted funds from California employee paychecks without authorization from the employee.

Plaintiffs also propose to pursue two FLSA collective actions for the states of Washington, Oregon, and California. Oregon plaintiffs Ramos and Smith are the only named plaintiffs with these claims. Therefore, these two proposed FLSA collectives could not proceed unless this motion to clarify the stay is granted.

1) **FLSA Rounding Claim Collective for Washington, Oregon and California:** This collective would assert that US Bank violated the FLSA by consistently rounding down the hours worked of its hourly employees, causing them to suffer lost overtime wages. This proposed collective – unlike the *Lowdermilk* case in Oregon – would be limited to employees whose time was **automatically** rounded down using, for example, an automated Excel spreadsheet. The spreadsheet automatically rounded their time down after they entered their hours and minutes worked. Oregon Plaintiff Ramos is the only named plaintiff for this collective. In the current First Amended Complaint, this collective is not limited to US Bank employees who used an automated weekly time sheet that automatically rounded down their time. The Proposed Second Amended Complaint pleads this collective with the above limitation.

2) **FLSA Sales and Service Manager ("SSM") Collective for Washington and Oregon:** As discussed in more detail below, this collective would assert that US Bank misclassified sales and service managers as exempt, when they were actually non-exempt under the FLSA. As a result of the misclassification, they were not paid overtime that they earned. Plaintiff understands that there are no US Bank sales and service managers in California, so California would not be included in this proposed FLSA collective. Oregon Plaintiff Smith is the only named plaintiff for this collective.

If the Court grants this motion to clarify the stay, then Plaintiff Ramos can serve as the named

1  plaintiff for the FLSA Rounding Claim Collective and Plaintiff Smith can serve as the named plaintiff
2  for the FLSA SSM Collective. If this motion is not granted, then Plaintiffs cannot proceed with these
3  collectives.

4  If the Court denies the motion to clarify, but signs the stipulated order allowing the filing of the
5  Second Amended Complaint, then the remaining putative classes would be 1) the California in-store
6  branch off-the-clock class; 2) the California in-store branch Meal Period Class; 3) The California in-
7  store branch Rest Period Class; 4) California Waiting Time Penalty Class; and 5) California Lost Time
8  Deduction Class.

9  Having described the above context, Plaintiffs now focus on the two proposed FLSA
10 collectives.

11 **B.     Plaintiff Ramos's FLSA Rounding Claim**

12 Plaintiff Ramos contends that Defendant required him to use an **automated** Excel weekly time
13 sheet that cut time from his pay by always rounding his time down to the next lower tenth of an hour.
14 His claim is different from that being litigated in the *Lowdermilk* case in the Oregon Circuit Court[1],
15 which focuses on paper weekly timesheets where the employees did the rounding by hand.

16 The rounding down (i.e., also called "truncation") occurs when hours and minutes worked are
17 converted, in accordance with some offending US Bank weekly time sheets, to hours and tenths of an
18 hour. For example, if an employee works 4 hours and 11 minutes, the employees time could be
19 rounded to either 4.1 hours (4 hours and 6 minutes) or to 4.2 hours (4 hours and 12 minutes). 4 hours
20 and 11 minutes is closer to 4.2 hours, but the offending weekly time sheets used by US Bank require
21 that the rounding always be **down, not up**. Therefore, using the offending weekly time sheets, the 4
22 hours and 11 minutes is converted to 4.1 hours – not 4.2 hours. (*See*: Plaintiff's First Amended Class
23 Action Complaint, ¶ 22).

24 Plaintiffs contend that Ramos's claim based on an automated electronic Excel weekly time
25 sheet – that does the rounding down for the employee – poses different class certification questions
26 than a claim based on a paper weekly time sheet where the employee does all the rounding themselves

---

28  [1]*Lowdermilk v. U.S. Bank National Association*, Oregon Circuit Court for Multnomah County Case No. 0603-03335.

by hand. The following discussion by Oregon Circuit Judge Marshall is from oral argument regarding class certification in *Lowdermilk*:

```
 5          THE COURT: So aren't those two different
 6  claims when you are talking about potentially a class
 7  action situation, because aren't there different issues
 8  involved in a manual system, versus a computer-driven
 9  system?
10          MR. SCHUCK: . . . .
23          THE COURT: Well, am I missing something
24  here? Or doesn't it change it more than a little bit?
25  I mean, if any truncation is being done by the computer,

 1  and it's always done the same so that it's always
 2  rounded down, isn't that an entirely different situation
 3  than where the calculation is done manually by each
 4  individual employee, some of whom might be rounding up,
 5  some might be rounding down, some might be doing all
 6  different kinds of math that would require an individual
 7  inquiry as to what each employee is doing, as opposed to
 8  a situation where you are saying, well, the bank has
 9  this policy, and then they have got this computer
10  program whereby the employee furnishes what time they
11  worked, and then the computer program takes that
12  information and always truncates the time? Aren't those
13  two totally different scenarios?
```
(Transcript of Oral Argument, 89: 5 – 90:13; Ex. 1 to Schuck Decl.).

Thus, Judge Marshall was appreciating the different issues raised – for purposes of class certification – between a manual system using a paper weekly time sheet versus a computer-driven system that uses an automated Excel spreadsheet. Judge Marshall reasons that a class based on a computer-driven system requires fewer individual inquiries – and therefore is a stronger candidate for class certification. Indeed, Judge Marshall appears to consider users of a manual truncating system and users of a computer-driven truncating system to be two entirely different classes:

```
 8  THE COURT: . . . .
19          And so when -- how can you have a class
20  action lawsuit that deals with those two different
21  practices, because aren't they totally different? And
22  the one that does not involve the computer program,
23  wouldn't it require an individual inquiry as to each
```

>    24   potential plaintiff as to exactly what they were
>    25   instructed and exactly what they did, whereas when you
>
>     1   are talking about the computer program claim, then it
>     2   doesn't require that individual inquiry; isn't that
>     3   right?
>
> *(Id.* 91:8 – 92:3).

While Judge Marshall has not yet ruled on class certification in *Lowdermilk*, he apparently does not consider the use of the automated Excel weekly truncating time sheet to be within the scope of a potential class in *Lowdermilk*:

>    10        THE COURT:  But when you are analyzing,
>    11   certifying a class action, isn't that one of the things
>    12   that you are looking at?  In other words, if you have
>    13   Ms. Lowdermilk, and she happens to be employed at the
>    14   bank, and she is using either a timesheet where she does
>    15   manual calculations, and then at some point the bank
>    16   starts using Excel timesheets that you are saying
>    17   automatically truncate, but she never used one of those
>    18   timesheets, but part of the class that you are trying to
>    19   certify is people that did use those timesheets, how can
>    20   she represent those people when she never used one?
>    21        MR. SCHUCK:  Because it's the policy and
>    22   practice that is built into the spreadsheet that is the
>    23   claim.
>    24        THE COURT:  You keep saying "the practice,"
>    25   but those are two completely different practices.
>
> *(Id.* 98:10-25).

Thus, Judge Marshall appears poised to rule that the automated Excel weekly time sheet used by Plaintiff Ramos, will not be part of any certified class in *Lowdermilk*. US Bank apparently agrees. It submitted a proposed order to Judge Marshall with the following proposed finding:

> Plainitff's reply brief presented a few Weekly Time Reports for Mr. Dennis Ramos which plaintiff contends contained an automated formula that rounded down. The record, however, reflects that Ms. Lowdermilk never used the version of the Weekly Time Report that Mr. Ramos allegedly used and never used any Weekly Time Reports that automatically rounded down.
>
> (Defendant's proposed findings of fact and conclusions, 3:8-12; Exhibit 2, Schuck Decl.).

1   Thus, Defendant apparently agrees that the automated Excel spreadsheet used by Plaintiff Ramos
2   should not be part of the *Lowdermilk* litigation.  Plaintiff Ramos's FLSA claim based on that
3   automated time sheet is not likely to be resolved by the Oregon *Lowdermilk* litigation.  Plaintiff
4   Ramos should be allowed to pursue is FLSA claim in this action.

**C.    Plaintiff Smith's SSM FLSA**

Plaintiff Smith's FLSA claim is that US Bank's sales and service managers were misclassified as exempt under FLSA.  After trial in the federal court *McElmurry* case[2], U.S. District Judge Haggerty made findings under FLSA that could simplify litigation of the FLSA claim in this Court through potential issue preclusion.  These findings could also reduce the findings of fact needed as compared to the state-law litigation in the Oregon Circuit Court *Tate* case[3].

Specifically, Judge Haggerty found that U.S. Bank "never formally evaluated or audited individual Sales and Service Managers to determine whether their regular job duties qualified them" as exempt.  (Findings of Fact and Conclusions of Law, February 11, 2008, ¶ 25, Ex. 3, Schuck Decl.). Thus, under FLSA there exists a finding that U.S. Bank had a practice of applying a blanket exemption to SSM's.  Moreover, Judge Haggerty found that this blanket exemption of SSM's was made in reckless disregard of US Bank's obligations under FLSA:

> U.S. Bank's violation of the FLSA with respect to classification of plaintiffs as exempt was willful as defined by 29 U.S.C. § 255(a), and the applicable statute of limitations is thus three years.  U.S. Bank showed reckless disregard when it applied a blanket exempt status to all Sales and Service Managers, despite knowing the job duties of those employees varied widely from the written Sales and Service Manager job description.
> (*Id.* at ¶ 36).

Judge Haggerty also found, under FLSA, that "U.S. Bank did not act in good faith as defined by 29 U.S.C. § 259(a) when it categorized plaintiffs as exempt." *Id.* at § 37.  Judge Haggerty continued, finding that "While the job description used by U.S. Bank was written to comport with

---

[2]*McElmurry v. U.S. Bank National Association,* Oregon U.S. District Court Case No. 04-642-HA.

*Tate v. U.S. Bank National Association,* Oregon Circuit Court for Multnomah County, Case No. 0607-07188.

Plainitff's Motion to Clarify Stay as to FLSA Claims of Oregon Plaintiffs - Case No. C 07-02951 SI
8

1 federal labor regulations defining exempt workers, there was no evidence that U.S. Bank made efforts
2 to ensure that the job description matched the actual day-to-day job duties of Sales and Service
3 Managers; this was unreasonable." *Id.* Final judgment incorporating those findings was entered on
4 February 29, 2008. Schuck Decl., ¶ 3.

5 Again, these findings could potentially remove issues – via claim or issue preclusion – from
6 FLSA litigation in this case. These findings could also make this litigation more efficient as compared
7 to the state-law litigation in the Oregon state court action.

## II.  ARGUMENT

### A.  The *Colorado River* Stay should not apply to Ramos's FLSA Rounding Claim.

10 As discussed above, Ramos alleges he used an automated Excel weekly time report that
11 mechanically rounded down his time. It appears unlikely that his claim will be resolved in the
12 *Lowdermilk* Oregon state court litigation. Oregon Circuit Judge Marshall appears poised to rule that
13 the Excel spreadsheet, computer-driven, time sheet involved in Ramos's claim, is an entirely different
14 claim than the claim involved in *Lowdermilk* – a claim based on a paper weekly time sheets where the
15 rounding of time was performed manually by the individual employees.

16 Moreover, as previously briefed, federal courts have allowed FLSA litigation to go forward in
17 federal court despite the existence of otherwise parallel state court proceedings that involve only state
18 law. *McElmurry v. US Bank Nat'l Ass'n*, *supra.*, 2004 U.S. Dist. Lexis 15233 at *18-19 (Discussing
19 how differences in the penalties under state law and under FLSA prevent a stay). In addition, federal
20 courts are less likely to stay claims based on federal law than they are to stay claims based on state
21 law. "As the Supreme Court stated in *Moses H. Cone*, 'the presence of federal law issues must always
22 be a major consideration weighing against surrender [of jurisdiction].'" *Intel Corp. v. Advanced
23 Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993) quoting *Moses H. Cone Memorial Hosp. v.
24 Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983).

25 If the *Colorado River* stay is applied to Ramos's FLSA claim, then Plaintiffs will not be able to
26 move to certify an FLSA collective action for Washington, Oregon and California. Given the
27 differences between Ramos's claim that the claim being litigated in *Lowdermilk*, the stay should not
28 be applied to Ramos's claim.

**B.** **The *Colorado River* stay should not apply to Plaintiff Smith's FLSA SSM claim.**

Plaintiff Smith's FLSA claim should also not be subject to the stay because it is based on federal law and because of the differences between an FLSA claim and the state-law claims being litigated in the *Tate* litigation. In addition, Judge Haggerty's findings, under the FLSA, could simplify the FLSA collective action proceedings. First, his findings show the existence of a US Bank practice of applying a blanket exemption to sales and service managers. Second, Judge Haggerty finds that practice to be in reckless disregard of US Bank's obligations under FLSA. Third, Judge Haggerty finds that U.S. Bank's blanket classification of SSM's as exempt was not made in good faith under FLSA.

These findings could preclude U.S. Bank from re-litigating the existence of a blanket SSM classification practice and its wilfulness and lack of good faith under the FLSA. While issue preclusion is not briefed at this time, Judge Haggerty's rulings under the FLSA may provide efficiencies that would not be present in the Oregon *Tate* state court action – which only involves state law and not FLSA. The *Colorado River* stay should not be applied to Plaintiff Smith's FLSA misclassification claim.

Dated: March 28, 2008            Bailey Pinney, PC


                                 By _____/s/_____
                                 Jose R. Mata
                                 Attorneys for Plaintiffs Ross, Prasad, Smith and Ramos