JUDITH DROZ KEYES (CA State Bar No. 66408)
STUART W. MILLER (CA State Bar No. 127766)
MICHELLE D. FIFE (CA State Bar No. 240554)
ANGELA CORRIDAN (CA State Bar No. 257076)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111-6533
Telephone:    (415) 276-6500
Facsimile:    (415) 276-6599
jkeyes@dwt.com
stuartmiller@dwt.com
michellefife@dwt.com
angelacorridan@dwt.com

Attorneys for Defendant
U.S. BANK NATIONAL ASSOCIATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANN ROSS, MAURITA PRASAD, TAMARA BURKHART, NANETTE RENEE HOUSKEN, DENNIS RAMOS, and KELLY SMITH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. BANK NATIONAL ASSOCIATION, DBA U.S. BANK,<br><br>Defendant. | Case No. C 07-2951 SI<br><br>**DECLARATION OF DEBORAH DREISCHMEYER IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT (EIGHTH CAUSE OF ACTION)**<br><br>Date: October 3, 2008<br>Time: 9:00 a.m.<br>Courtroom 10<br>Hon. Susan. Illston |

I, Deborah Dreischmeyer, state as follows:

1.   This Declaration contains statements based upon my personal knowledge and, where noted, is based on information I received and my belief that that information is true. I make the following statements under penalty of perjury. If called upon to testify as to matters stated in this declaration, I would testify in a manner consistent with each of the statements made here by

DECLARATION OF DEBORAH DREISCHMEYER ISO
MOTION FOR PARTIAL SUMMARY JUDGMENT (EIGHTH CAUSE OF ACTION)
Case No. C 07-2951 SI

DWT 11537661v1 0023784-000227

1  me.

2. I am currently employed by Defendant U.S. Bank National Association ("U.S. Bank" or "Defendant"). I have been employed by U.S. Bank since August 8, 2005. U.S. Bank is a national banking association organized under the National Bank Act and its Articles of Association. U.S. Bank's main office is located in Cincinnati, Ohio and its principal place of business is in Minneapolis, Minnesota.

3. U.S. Bank operates consumer and business banking branches in 24 states, including California, Oregon, and Washington, including about 500 "In-Store" bank branches in 19 states. U.S. Bank's In-Store bank branch offices are located within the building of a retail store that U.S. Bank refers to as a "retail partner."

4. Since my hire at U.S. Bank, my title has been Human Resources Generalist. I am responsible for four In-Store districts: "LA Gold Coast," "South Bay Orange County," "Inland Empire," and "Greater San Diego." As a Human Resources Generalist, my duties and responsibilities include, among other things, setting and implementing policies pertaining to employee compensation and payroll. I am also tasked with responding to employee inquiries regarding payroll and compensation.

5. I am familiar with Plaintiff Ann Ross ("Ross"). Ms. Ross was an hourly employee of Defendant and worked for U.S. Bank at an In-Store bank branch in Redondo Beach/Gardena, California.

6. Ms. Ross began her employment with U.S. Bank on approximately October 7, 2005. A true and correct copy of Ms. Ross's New Hire Information Form is attached as Exhibit 1. This document is kept in the normal course of business at U.S. Bank in Ms. Ross's personnel file. I processed this form on or about October 13, 2005, and kept it in Ms. Ross's personnel file, which is in my office, as are all of the personnel files of the In-Store employees in my district who began employment prior to January 2008, when I began imaging the files electronically.

7. Ms. Ross submitted a letter of resignation of employment dated April 18, 2006. A true and correct copy of Ms. Ross's letter of resignation is attached as Exhibit 2. I received this letter from Ms. Ross on or about April 18, 2006, and placed it in her personnel file, where it is

kept in the normal course of business at U.S. Bank.

8. The last day that Ms. Ross worked at U.S. Bank was May 2, 2006. A true and correct copy of Ms. Ross's "Weekly Time Sheets" for the weeks ending April 8 to May 6, 2006 are attached hereto as Exhibit 3. They state the hours that she recorded for her work at U.S. Bank, as well as time attributable to vacation time, sick time, and holidays, during those weeks. They are based upon Ms. Ross's handwritten Weekly Time Sheets. While Ms. Ross was employed at U.S. Bank, she would prepare Weekly Time Sheets and then submit them to her manager, who then transmitted payroll information to the payroll department.

9. Ms. Ross received her final paycheck, in the form of a direct deposit transaction into her banking account on May 1, 2008, in the amount of $362.87. A true and correct copy of Ms. Ross's pay advice is attached as Exhibit 4. Pay advices reflect the total pay deposited into an employee's bank account for each pay period. They also reflect the type of pay that the employee received, i.e, regular time, sick time, vacation time, and overtime, as well as the amount of hours the employee worked. The information contained on the pay advice is compiled by U.S. Bank's employees in the payroll department, who submit the information listed in Payroll Time Transmittals into a computer program that multiplies the appropriate rate of pay by the hours worked and makes adjustments for exception time, as described below. Pay advices are maintained in a computerized database by the payroll department. Once U.S. Bank pays an employee, the corresponding pay advice can no longer be changed, but can be reviewed and printed out in a "pay inquiry." Exhibits 4 and 5 are results of a pay inquiry that I conducted.

10. In a letter dated May 17, 2006, Ms. Ross wrote to John Murrillo, In-Store District Manager, alleging that U.S. Bank had not paid her all wages due. Attached as Exhibit 6 is a true and correct copy of Ms. Ross's letter to Mr. Murrillo.

11. In that letter, Ms. Ross claimed that she did not receive pay for the week of April 23 to 29, 2006, as of May 17, 2006. She requested immediate payment for wages corresponding to April 24, 25, 27, 28, and 29, 2006. She also demanded payment for 35 hours of unused vacation, which she alleged she was owed. Exhibit 6.

12. In a letter dated May 19, 2006, I responded to the allegations set forth in Ms.

1  Ross's May 17, 2006 letter. Attached as Exhibit 7 is a true and correct copy of my letter, which I
2  prepared and sent to Ms. Ross on or about May 19, 2006. In this letter, I explained the payroll
3  process at U.S. Bank as I understood it based on my experience and reliance on employee policies.
4  I also explained, after fully investigating her claims, that Ms. Ross was paid for all the time she
5  claimed she was owed in her May 17, 2006, letter. I understood the representations I made in my
6  May 19, 2006 letter to be true when I responded to Ms. Ross's letter in May, 2006, as I do today
7  after having fully re-analyzed the claims set forth in Ms. Ross's May 17, 2006 letter.

8      13.    Ms. Ross was paid on a salary basis. This salary captured her regularly scheduled
9  30 hours each week with any "exception time" paid the following pay period. Exception time is
10 any adjustment for a week in which an employee worked more or less than the employee's
11 standard hours, took vacation or used sick leave. Attached as Exhibits 8 and 9 are true and correct
12 copies of excerpts of the Employee Handbook and the New Orientation Guide, relating to
13 exception time.

14     14.    By way of example, a paycheck issued on April 28, 2006, included full pay for 30
15 hours per week for the period of 4/16 to 4/30 as well as any exception time for the weeks ending
16 4/7 and 4/14.

17     15.    Ms. Ross's payment on April 28, 2006, detailed in Exhibit 5, reflects all wages due
18 to her for the Pay Period of April 16 through April 30, 2006. On April 28, 2006, Ms. Ross was
19 paid for a total of 65 Regular hours for the above period, corresponding to her 30 Regular hours
20 per workweek. For that Pay Period, she was also paid 7.30 Additional Straight Time hours for the
21 week ending April 8, 2006 (shown on the first page of Exhibit 3 as the 7.3 hours worked beyond
22 her 30 Regular hours); 0.10 hours of overtime for the week of April 15, 2006 (shown on the
23 second page of Exhibit 3 as 0.1 hours of overtime worked beyond 40 hours that workweek); and
24 10 Additional Straight Time hours for the week of April 15, 2007 (shown on the second page of
25 Exhibit 3 as 10 hours worked beyond Ms. Ross's regularly scheduled 30 hours per workweek).
26 Even though Ms. Ross had taken sick leave for all but one of her scheduled work days during the
27 week ending April 29, 2006 (see page 4 of Exhibit 3), Ms. Ross was not "docked" for any sick
28 time; rather, she was paid as though those 24 hours of sick time were regular working time.

4

DECLARATION OF DEBORAH DREISCHMEYER ISO                                       DWT 11537661v1 0023784-000227
MOTION FOR PARTIAL SUMMARY JUDGMENT (EIGHTH CAUSE OF ACTION)

DAVIS WRIGHT TREMAINE LLP

16. Ms. Ross received all vacation pay to which she was entitled. Although In-Store U.S. Bank employees accrue 60 hours of vacation per year, employees earn 1/12 of the annual allotment of vacation during each month of employment. Since Ms. Ross terminated in May, 2006 she earned 5/12 of her allotment for that year, or 25 hours, shown as "Vac Payout" of 25.00 in Exhibit 4.

17. The pay advice for the Pay Period of May 1 through 15, 2006 (Exhibit 4 hereto) shows "Add Str Tim" (Additional Straight Time) of 5.50 hours. However, the Additional Straight Time should have been 3.4 hours rather than 5.5 hours, based on the 3.4 additional hours that Ms. Ross worked beyond her regularly scheduled 30.0 hours during the week ending April 22, 2006 (see page 3 of Exhibit 3, showing 33.4 hours worked). The April 29, 2006 Weekly Time Sheet shows 28.9 hours worked, or 1.1 hour less than Ms. Ross's regularly scheduled 30.0 hours per week, resulting in Exception Time, or "Lost Time," of 1.1 hours. However, the pay advice for the Pay Period of May 1 through 15, 2006 (Exhibit 4 hereto) mistakenly shows minus 2.10 Lost Time hours rather than minus 1.10 Lost Time hours. But when the extra 1.1 hour Lost Time deduction is deducted from the 2.1 Additional Straight Time hour overpayment, Ms. Ross was overpaid by 1.0 hours in her May 1, 2006 paycheck (covering the period May 1 through 15, 2006).

18. Based on my experience as Human Resources Generalist at U.S. Bank, my knowledge and understanding of U.S. Bank's payroll system and HR policies, my analysis of Ms. Ross's time and payroll records in May 2006, and my re-analysis in August 2008, and for the reasons detailed above, she received all wages that she was due upon her last day of employment.

19. I am familiar with Plaintiff Maurita Prasad ("Prasad"), who was an hourly employee of U.S. Bank from approximately December 8, 2003, to January 17, 2005, at an In-Store U.S. Bank branch in Pleasant Hill, California. Attached as Exhibits 10 and 11 are true and correct copies of Plaintiff Prasad's New Hire Information form and Termination Status form. These forms are kept in Prasad's personnel file, which are maintained in my office in the normal course of business.

20. I am familiar with Plaintiff Tamara Burkhart ("Burkhart"). She worked for U.S. Bank at an In-Store bank branch in Cameron Park, California, as an hourly employee from

5

DECLARATION OF DEBORAH DREISCHMEYER ISO
MOTION FOR PARTIAL SUMMARY JUDGMENT (EIGHTH CAUSE OF ACTION)

DWT 11537661v1 0023784-000227

approximately July 13, 2004, until approximately January 22, 2005. Attached as Exhibits 12 is a true and correct copy of a "Job Data Form," which lists job data, including date of hire and date of termination. I retrieved this form from a U.S. Bank manager inquiry database. This form reflects the true and correct dates of hire and termination of Plaintiff Burkhart. The information contained in the form is entered into the database as follows: the date of hire is provided by the HR generalist to payroll and the date of termination is submitted by the employee's manager. Upon information and belief, the information in Exhibit 12 is correct.

21. I am also familiar with Plaintiff Nanette Renee Housken ("Housken"). She worked for U.S. Bank at an In-Store bank branch in Stockton, California, as an hourly employee from approximately June 21, 2004, until about July 29, 2005. Attached as Exhibits 13 is a true and correct copy of a "Job Data Form," as described above in Paragraph 21. Upon information and belief, the information in Exhibit 13 is correct.

I declare under penalty of perjury under the laws of the state of California and the United States of America that the foregoing is true and correct and that this Declaration was executed on August 28, 2008, in San Diego, California.

/s/ Deborah Dreischmeyer
Deborah Dreischmeyer