IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANN ROSS, *et al.* | No. C 07-2951 SI |
| Plaintiffs, | **ORDER CONDITIONALLY GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND DIRECTING FORMULATION OF CLASS NOTICE** |
| v. | |
| US BANK NATIONAL ASSOCIATION, | |
| Defendant. | |

On October 23, 2009, the Court held a hearing on plaintiffs' motion for class certification. After careful consideration of the motion, the Court hereby CONDITIONALLY GRANTS the motion for class certification and directs counsel to meet and confer to formulate class notice.

**BACKGROUND**

The subject of this litigation is an employment dispute over wages due and owing brought by former and current hourly non-exempt employees of U.S. Bank National Association ("U.S. Bank") who worked at an in-store branch in California on or after April 9, 2003.[1]

On or about April 4, 2007, Ann Ross, Dennis Ramos, Maurita Prasad, and Kelly Smith filed a class action complaint with the Superior Court of the State of California for the County of Alameda, entitled *Ross, et al. v. U.S. Bank National Association*, Case No. RG07319452.  On May 10, 2007,

---

[1] "Non-exempt employees" are employees entitled to overtime compensation and meal and rest periods. Cal. Labor Code § 515; Title 8 Calif. Code Regs. § 11040, Industrial Welfare Commission Wage Order No. 4-2001.
  "In-store branches" are U.S. Bank's branch offices located within large grocery stores that are usually open seven days a week: 10:00 a.m. to 7:00 p.m. Monday through Saturday; and noon to 5:00 p.m. on Sunday. *See* Defs. Opp. 2:1-4 (Docket No. 213).

plaintiffs filed an amended complaint with the Alameda County Superior Court. Defendant removed the action to federal court on June 6, 2007, invoking this Court's original jurisdiction over claims asserted under the Federal Labor Standards Act and supplemental jurisdiction over the remaining claims. On April 10, 2008, plaintiffs filed a second amended complaint in order to add two additional plaintiffs, Tamara Burkhart and Nanette Renee Housken, and to delete Washington state claims. On October 17, 2008, plaintiffs filed their third amended complaint pursuant to this Court's order, issued on September 30, 2008, to transfer the claims of plaintiffs Ramos and Smith to the District of Oregon.

Plaintiffs have brought suit on behalf of all current and former employees of U.S. Bank California in-store branches who worked during the period from April 9, 2003, through the date of judgment in this matter. Plaintiffs allege that U.S. Bank has statewide practices of working its employees off-the-clock and not providing employees with rest breaks and meal periods as required under California law.

Now before the Court is plaintiffs' motion for class certification seeking (1) certification of this lawsuit as a class action, (2) appointment of plaintiffs, Ann Ross, Maurita Prasad, Tamara Burkhart, and Nanette Housken, as class representatives, and (3) appointment of plaintiffs' attorneys as class counsel. With regard to class certification, plaintiffs seek certification of two classes, Class No. 1 defined as "[a]ll hourly employees of U.S. Bank who worked at a U.S. Bank California in-store branch, during a Sunday shift, during the period April 9, 2003, through the date of judgment in this matter," and Class No. 2 defined as "[a]ll hourly employees of U.S. Bank who worked a shift of more than five hours at a U.S. Bank California in-store branch during the period April 9, 20003, through the date of judgment in this matter."[2]

//

---

[2] Plaintiffs originally defined Class No. 1 as "[a]ll hourly employees of U.S. Bank who worked at a U.S. Bank California in-store branch, during a Sunday shift, *in which only two employees worked*, during the period April 9, 2003, through the date of judgment in this matter"(emphasis added). *See* Pls. Mot. 2:11-14 (Docket No. 186). Plaintiffs subsequently modified the class definition in response to defendant's assertion that membership of the class, as originally defined, was unascertainable due to lack of records. *See* Defs. Opp. 17:13-24; Pls. Reply 1:19-28 (Docket No. 225). Although plaintiffs' counsel used the original definition to describe Class No. 1 during oral argument, the Court shall consider certification of the class under the modified class definition.

2

**I.     Class No. 1 (Sunday Shift Workers)**

On Sundays, branches are usually open for five hours from noon to 5:00 p.m. Since Sundays are low volume days, U.S. Bank often schedules only two employees to work at a branch. Employees working on Sundays typically have to report to work at 11:45 a.m. to perform store opening procedures and they leave between 5:05 and 5:15 p.m. after completing store closing procedures. Watson Decl. ¶ 8 (Docket No. 215). Plaintiffs allege that U.S. Bank, pursuant to its security policy of requiring at least two employees present in a branch at all times and its common practice of scheduling of only two employees at a branch on Sundays, (1) prevented employees from taking meal periods, (2) prevented employees from leaving the branch to take rest breaks, and (3) worked employees off-the-clock to perform store opening and closing procedures.

**A.     Meal Periods**

Under California law, when an employee works more than 5 hours, but no more than 6 hours, a meal period may be waived by mutual consent of the employer and the employee. Alternatively, California law allows an employer to provide a paid on-duty meal period pursuant to a written contract. Industrial Welfare Commission Wage Order No. 4-2001(11)(A). Plaintiffs also note that U.S. Bank has a written policy requiring California in-store branch managers to obtain written waivers of meal periods from employees.

Plaintiffs allege that U.S. Bank illegally denied employees meal periods because its security policy effectively prohibited employees from taking meal periods when only two employees were scheduled to work. As evidence of U.S. Bank's improper practice, plaintiffs rely on declarations by the four plaintiffs stating that they were not given meal periods on Sundays, and depositions of U.S. Bank managers, Robert A. Brown and William Watson, confirming the bank's security policy.

Defendant contends that employees working on Sundays waived their meal periods consensually and that plaintiffs do not have sufficient evidence to show U.S. Bank had a common practice of denying employees their meal periods on Sundays. Defendant asserts that any involuntary waiver of meal periods would be an individualized situation that is not appropriate for class treatment.

3

**B.     Rest Breaks**

Under California law, an employee is entitled to have a paid ten-minute rest break for every four hours worked. Industrial Welfare Commission Wage Order No. 4-2001 § 12(A). Plaintiffs allege that U.S. Bank's security policy prevented employees from leaving the store when only two employees were working so that U.S. Bank effectively denied employees their rest breaks. Plaintiffs rely on the declarations of the four plaintiffs stating they were not given rest breaks on Sundays, and the deposition of U.S. Bank Human Resources Manager, William Watson, conceding that the bank did not enforce a policy of scheduling rest breaks in advance. Plaintiffs further assert that U.S. Bank failed to provide employees with accessible resting facilities on Sundays.

Defendant contends that their security policy only *recommends* that at least two employees be at the branch at all times and that the employees' right to a ten-minute rest break takes priority over the security policy. Defendant has submitted declarations by 42 bank employees and managers stating that employees were given rest breaks on Sundays notwithstanding the security policy. Defendant also argues that plaintiffs' evidence is insufficient to show that U.S. Bank failed to provide rest breaks as common practice.

**C.     Pre and Post Shift Off-the-Clock Work**

Under California law, an employer is liable for all "hours worked" by an employee, including the time the employee "is subject to control of an employer" and the time the employee is "suffered or permitted to work, whether or not required to do so." *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 582 (2000). An employer is deemed to have "suffered or permitted" an employee to work when the employer knew or should have known that the employee was working. *Id.* at 585.

Plaintiffs allege that employees who worked on Sundays worked off-the-clock to perform store opening and closing procedures. These procedures take about 15 minutes so that employees responsible for performing store opening procedures have to report to work 15 minutes before the branch opens. U.S. Bank requires these procedures to be performed by two employees so that on Sundays, when only two employees were scheduled to work, these two employees had to perform both opening and closing procedures. Thus, plaintiffs argue that employee time records indicating that they only worked from

4

1 noon to 5:00 p.m. on Sundays support their allegation that employees were suffered or permitted to work
2 off-the-clock. Plaintiffs rely on the declaration of Housken stating that she had to perform opening and
3 closing procedures on Sundays even though her time records indicated that she only worked from the
4 time the branch opened till the time the branch closed. Housken Decl. ¶ 10 (Docket No. 206).

Defendant contends that plaintiffs' evidence is insufficient to show it was widespread practice
for U.S. Bank to work employees off-the-clock on Sundays.[3]

## II. Class No. 2 (Regular Weekday Workers)

As stated above, under California law, an employer is liable for all "hours worked" by an employee. On regular weekdays, branches are open for nine hours from 10:00 a.m. to 7:00 p.m. so that if an employee works a full-day shift, the employee will have to take a one-hour break in order to avoid working for more than eight hours and thus incurring overtime. Plaintiffs allege that U.S. Bank pressured employees to clock out for one-hour meal periods pursuant to its policy to avoid overtime, but often worked employees off-the-clock during their meal periods in order to adhere to its policy of providing prompt service to its customers. Plaintiffs rely on declarations by two plaintiffs, Bukhart and Prasad, stating that they were frequently clocked out for one hour but did not in fact receive a full-hour meal break, and statistical studies analyzing timesheet data of randomly sampled U.S. Bank employees and their recorded electronic teller transactions which indicate that over 90% of the sampled employees had, at least on one occasion, performed work off-the-clock while clocked out for a meal period.[4]

Defendant contends that U.S. Bank enforces a strict policy of keeping accurate records of all employee worktime and prohibiting off-the-clock work. Further, defendant attacks plaintiffs' statistical evidence by presenting reports prepared by its own expert giving a different interpretation of the same

---

[3] Defendant states in its opposition that Housken offers as evidence 5 timesheets from 2004 reflecting that she signed in at noon and signed out at 5:00 p.m., and argues that such evidence is scant and inconclusive. However, plaintiffs make no mention of such evidence, and the timesheets are nowhere to be found.

[4] The statistical studies compared weekly timesheets and electronic teller transaction records of 99 randomly sampled U.S. Bank employees who worked during the period May 1, 2008, through January 31, 2009. Similar analyses for employees who worked at earlier times are unavailable because electronic teller statistics do not exist before May 1, 2008.

5

statistical data. Defendant contends that plaintiffs' evidence, statistical or otherwise, is insufficient to show it was common practice for U.S. Bank to work employees off-the-clock during meal periods.[5]

### A. Dr. Fountain's Report (Plaintiffs' Expert)

Dr. Fountain compared recorded electronic teller transaction data of 99 randomly selected U.S. Bank employees of California in-store branches with their recorded timesheets indicating the time they took their meal periods to see whether teller transactions were performed when the timesheets reflected the employees were taking their meal break. Dr. Fountain's analysis revealed that 94 of the 99 randomly sampled employees had, at least on one occasion, conducted electronic transactions during their recorded meal periods. Plaintiffs rely on these findings to show that U.S. Bank had a common practice of working its employees off-the-clock during their meal periods.

### B. Dr. Borhani's Report (Defendant's Expert)

Dr. Borhani analyzed the same statistical data and pointed out that there is no indication of teller transactions having been performed in about 70% of the meal periods reflected in the 8,287 timesheets examined. In other words, Dr. Borhani argues that teller transactions were performed in only about 30% of the meal periods that were analyzed and that Dr. Fountain's statistical evidence is insufficient to show that off-the-clock work was *commonly* performed during meal periods. Further, of the 30% of the timesheets that reflected teller transactions being performed during meal periods, 86% of them showed gaps of time of at least the same duration as meal periods on the same work day during which no teller transactions were performed. Dr. Borhani suggests that even if employees performed transactions during their recorded meal periods, on most occasions they still took uninterrupted meal periods at a different time and that U.S. Bank's policy of providing employees with uninterrupted meal

---

[5] Defendant asserts that U.S. Bank's policy requires employees to accurately record and report hours worked by submitting weekly timesheets in which they are to record the time they started/ended working, and the time they took breaks. This assertion is somewhat contradictory to defendant's argument that the meal periods recorded in timesheets do not necessarily reflect the actual meal periods taken by employees. Defendant explains that "sometimes employees forget to sign in and out, especially for meal periods" so that they would have to "go back and estimate what time they left and what time they returned." Watson Decl. ¶ 24.

6

periods is followed 96% of the time. Additionally, Dr. Borhani pointed out that recorded transactions performed during meal periods are not evenly distributed among the sampled employees; namely, a limited number of employees are responsible for the majority of transactions performed during recorded meal periods. Thus, Dr. Borhani concludes that such incidents are individualized cases that cannot be attributed to U.S. Bank's statewide policy of mandating off-the-clock work during meal periods.

### C. Dr. Shapiro's Report (Plaintiff's Expert)

Dr. Shapiro addresses Dr. Borhani's theory that the gaps of time constitute actual meal breaks in place of the recorded meal breaks during which employees performed transactions. Dr. Shapiro asserts that gaps of 30 minutes or longer are not unusual and has no particular significance. Dr Shapiro also challenges Dr. Borhani's theory that employees that performed teller transactions during their meal periods were limited to certain employees.

### LEGAL STANDARD

The decision as to whether to certify a class is committed to the discretion of the district court within the guidelines of Federal Rule of Civil Procedure 23. *See* Fed. R. Civ. P. 23; *see also Cummings v. Connell*, 316 F.3d 886, 895 (9th Cir. 2003). A court may certify a class if a plaintiff demonstrates that all of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and that at least one of the requirements of Federal Rule of Civil Procedure 23(b) have been met. *See* Fed. R. Civ. P. 23; *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

Rule 23(a) provides four prerequisites that must be satisfied for class certification: (1) the class must be so numerous that joinder of all members is impracticable, (2) questions of law or fact exist that are common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a).

A plaintiff must also establish that one or more of the grounds for maintaining the suit are met under Rule 23(b), including (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common

7

questions of law or fact predominate and the class action is superior to other available methods of adjudication. *See* Fed. R. Civ. P. 23(b).

In determining the propriety of a class action, the question is not whether the plaintiffs have stated a cause of action or will prevail on the merits, but, rather, whether the requirements of Rule 23 are met. *See Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). The Court is obliged to accept as true the substantive allegations made in the complaint. *See In re Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982); *see also Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975). Therefore the class order is speculative in one sense because the plaintiff may not be able to later prove the allegations. *See Blackie*, 524 F.2d at 901 n.17. However, although the Court may not require preliminary proof of the claim, it "need not blindly rely on conclusory allegations which parrot Rule 23 requirements. Courts may also consider the legal and factual issues presented by plaintiff's complaint." 2 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*, 7.26 (4th ed. 2005). Sufficient information must be provided to form a reasonable informed judgment on each of the requirements of Fed. R. Civ. P. 23. *See Blackie*, 524 F.2d at 901 n.17. In order to safeguard due process interests and the judicial process, the Court conducts an analysis that is as rigorous as necessary to determine whether class certification is appropriate. *See Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 (9th Cir. 2005); *see also Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

**DISCUSSION**

Plaintiffs move to certify a first class of all former and current hourly employees who worked a Sunday shift at a U.S. Bank in-store branch in California from April 9, 2003 through the conclusion of this action, and a second class of all hourly employees who worked a shift of more than five hours at a U.S. Bank in-store branch in California from April 9, 2003 through the conclusion of this action. Defendant objects to class certification, arguing that plaintiffs fail to meet almost every requirement of Rule 23 for the two proposed classes. As discussed below, however, defendant's arguments primarily dispute the merits of plaintiffs' claims and raise questions of fact that will not be resolved at this juncture. Thus, this Court finds it appropriate to conditionally certify plaintiffs' proposed classes.

8

## I. Rule 23(a) requirements

As mentioned above, "Rule 23(a) establishes four prerequisites for class action litigation, which are: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2004). Plaintiffs have demonstrated that each is present here.

### A. Numerosity

Rule 23(a)(1) requires that the class be so numerous that the number of potential plaintiffs cannot be practicably joined. Whether joinder would be impracticable depends on the facts and circumstances of each case and does not require any specific minimum number of class members. In this case, U.S. Bank concedes that 2,924 non-exempt employees were employed in its California in-store branches during the period from April 9, 2003 through February 28, 2009. *See* Supp. Ans. to Interrogatory No. 2, Ex. 9, Mata Decl. (Docket No. 190-3). It is highly likely that a majority of these employees worked a Sunday shift and/or worked a shift of at least five hours. Therefore, the numerosity requirement is easily met, and defendant does not raise valid arguments on the numerosity issue.

### B. Commonality

Rule 23(a)(2) requires that there be some question of law or fact common to the class as a whole. Rule 23(a)(2)'s commonality requirement has been "construed permissively," and its requirements deemed "minimal." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1988).

#### 1. Class No. 1

Plaintiffs argue that there are numerous questions of law or fact that are common to Class No. 1. With regard to meal periods, first, plaintiffs allege that U.S. Bank had a security policy requiring at least two employees to be on duty at all times which in turn raises a common issue as to whether such policy effectively prohibited employees from taking duty-free meal periods on Sundays when only two employees were scheduled to work. Second, plaintiffs argue that there is a common issue as to whether employees working on Sundays effectively waived their meal periods, particularly in light of U.S. Bank's frequent failure to obtain signed waivers as is required by its policy. Third, plaintiffs argue that there is

a common issue as to whether the meal period waivers U.S. Bank obtained from its employees are valid in light of its security policy. With regard to rest breaks, plaintiffs argue that there is a common issue as to whether U.S. Bank's security policy, combined with other factors, operated to discourage employees from taking rest breaks. With regard to off-the-clock work, plaintiffs allege that U.S. Bank required employees to perform store opening and closing procedures off-the-clock on a regular basis, thereby raising the issue of whether it was common practice for U.S. Bank to have employees perform such off-the-record work.

Defendant contends that plaintiffs present no direct evidence showing it was common practice for U.S. Bank to deny its employees their meal periods and rest breaks and to work them off-the-clock. Specifically, U.S. Bank asserts that employees working on Sundays waived their meal periods consensually and any meal period waiver extracted without the employee's consent would be an individualized case rather than an issue common to all class members. With regard to off-the-clock work, U.S. Bank asserts that such practice is contrary to the bank's stated policy of requiring employees to accurately record all worktime and strictly prohibiting them from overreporting or underreporting hours worked. U.S. Bank contends that plaintiffs' evidence (Housken's declaration) is insufficient to suggest that there is a common issue for all class members. Further, U.S. Bank relies on Dr. Borhani's statistical analysis of the timesheets of the randomly selected 99 employees which indicate that most employees were properly clocked in before performing opening procedures and clocked out after completing closing procedures.

Although the Court has concerns about plaintiffs' ability to prove U.S. Bank's alleged common practice of denying employees their breaks and working them off the clock, defendant's arguments go to the merits of plaintiffs' claims. Plaintiffs allege and defendant does not deny that U.S. Bank had a security policy of requiring at least two employees in the branch at all times and a practice of scheduling only two employees to work on Sundays. This in turn raises a common question as to whether U.S. Bank's security policy and scheduling policy prevented putative class members from taking meal periods and rest breaks on Sundays.

//

### 2. Class No. 2

Plaintiffs argue that there is a common question as to whether U.S. Bank has a statewide practice of working employees off-the-clock during their meal periods. Plaintiffs present statistical evidence supporting their allegation that U.S. Bank allowed, suffered, or permitted its employees to work off-the-clock. Defendant offers statistical studies by its own expert contradicting plaintiffs' statistical analysis. However, the dispute over the interpretation of the statistical data essentially goes to the merits. That is, whether the statistical data are analyzed as 94 out of the 99 sampled employees having performed off-the-clock work during their recorded meal periods, or as 30% of timesheets reflecting off-the-clock work during meal periods, the statistics do suggest that a significant share of off-the-clock work was performed during meal periods. Also, the parties' dispute regarding alternate explanations of the statistics, such as Dr. Borhani's gap theory, go to the merits and can be resolved at a later stage. The Court again takes note of the shortcomings of plaintiffs' evidentiary submissions, particularly in light of the fact that the statistical evidence only pertains to randomly sampled U.S. Bank employees who worked during the period May 1, 2008, through January 31, 2009, and that similar analyses for employees who worked at earlier times are unavailable. However, plaintiffs allege and defendant does not deny that U.S. Bank has a policy of discouraging overtime. This in turn raises a common question as to whether U.S. Bank's policy forced putative class members to work off-the-clock while they were clocked out for meal periods. Further, the statistical studies do reveal for a fact that 94 of the 99 randomly sampled U.S. Bank employees did perform some transactional work during their recorded meal periods. Such allegations and evidentiary submissions are sufficient at this stage to at least raise an issue as to whether U.S. Bank engaged in a statewide practice of working employees off-the-clock.

### C. Typicality

Rule 23(a)(3) examines the class representatives and asks whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." As the Ninth Circuit has explained, "[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001). Plaintiffs

1 argue that the four plaintiffs, Ross, Burkhart, Housken and Prasad, are geographically representative of
2 the putative class members, have the same types of claims, and seek the same type of relief as the
3 putative class members. Defendant largely relies on the merits of plaintiffs' claims, such as discrepancies
4 in the statements made in plaintiffs' declarations and their depositions, to dispute the typicality of
5 plaintiffs. However, defendant does not deny that plaintiffs are all seeking compensation for being
6 denied meal periods and rest breaks and being worked off-the-clock as a result of U.S. Bank's policies
7 and practices. Thus, the typicality requirement is satisfied.

### D. Adequacy of Representation

Finally, under Rule 23(a)(4), plaintiffs must demonstrate that "the representative parties will fairly and adequately protect the interests of the class." When considering the adequacy of a class representative, courts generally consider only two questions "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957. Defendant objects to the adequacy of the named plaintiffs because they lack sufficient knowledge or recollection of relevant facts of this case. Defendant also argues that plaintiffs' counsel should not be appointed class counsel because Kevin T. Barnes and Gregg Lander had only gotten involved in this case since October 7, 2009 while this lawsuit has been going on for about two and a half years. Defendant argues that the change of plaintiffs' counsel at such a late time raises serious concerns for propriety of plaintiffs' counsel as class counsel. Defendant argues that it will be impossible for plaintiffs' counsel to get up to speed with the prior developments and proceedings of this case. Plaintiffs argue that their counsel have significant experience in wage and hour class action cases and meet the requirements for adequate representation that they be (1) qualified and competent and (2) would not be disqualified by conflicts of interest. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Plaintiffs also argue that they are capable of getting up to speed with this case because the issues presented in this case have been significantly narrowed and simplified. Since defendant does not allege that plaintiffs and their counsel have any conflicts of interest with other class members or that plaintiffs and their counsel will not prosecute this action vigorously, this Court finds it appropriate to appoint

12

plaintiffs as class representatives and plaintiffs' counsel as class counsel.[6]

## II. Rule 23(b) requirements

In addition to meeting the requirements of Rule 23(a), plaintiffs must also demonstrate, to the Court's satisfaction, that at least one of the conditions of Rule 23(b) is satisfied. Here, plaintiffs argue that they satisfy Rule 23(b)(3), which provides:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to the findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Defendants argue that common questions do not predominate over individual questions and that a class action is not a superior vehicle for bringing plaintiffs' claims.

### A. Predominance

Under Rule 23(b)(3), plaintiffs must show that common questions of law and fact "predominate over any questions affecting only individual members." This "'inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Hanlon*, 150 F.3d at 1022 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). The predominance analysis goes beyond the commonality requirement of Rule 23(a)(2) because it assumes the existence of common questions of law or fact and probes the relationship between these common questions and questions that arise based on the individual differences between class members. *See id.* Plaintiffs argue that common questions

---

[6] Plaintiffs were formerly represented by Jose Mata of Bailey Pinney PC and Grant Mullen of Koenig & Jacobsen, LLP. Defendant previously challenged the adequacy of plaintiffs' former counsel because Bailey Pinney PC has been disqualified by the Northern District of California and disciplined by the Oregon and Washington Bars for ethical violations. Keyes Decl. Exs. J-L (Docket Nos. 217-10–217-12). In response, Jose Mata and Grant Mullen withdrew as plaintiffs' counsel, and Kevin T. Barnes and Gregg Lander of the Law Offices of Kevin T. Barnes became plaintiffs' new counsel. Since Bailey Pinney PC is no longer associated with this lawsuit, this Court finds it unnecessary to consider the disqualification and disciplinary proceedings against Bailey Pinney PC in assessing the adequacy of class counsel.

1  of law and fact predominate over individual questions because plaintiffs' claims all address defendant's
2  statewide policies and practices.

3        Plaintiffs, on behalf of putative members of Class No. 1, assert that U.S. Bank's statewide security
4  policy, combined with other common practices, denied employees their meal and rest periods and worked
5  employees off-the-clock. Plaintiffs argue that the Court can determine whether putative class members
6  were denied meal periods and rest breaks and were worked off-the-clock largely based on common
7  evidence of U.S. Bank's practices and policies. Plaintiffs argue that such determinations predominate
8  over individual questions of fact which will only affect the issue of damages.

9        Plaintiffs, on behalf of Class No. 2, assert a claim that putative members were allowed, suffered,
10 or permitted to work off-the-clock while clocked out for meal periods. Plaintiffs argue that the Court can
11 make its ruling on this issue largely based on common evidence of U.S. Bank's policies and practices
12 of discouraging overtime, pressuring employees to clock-out for one-hour meal periods, and mandating
13 prompt service to its customers and that determinations on U.S. Bank's practices predominate over
14 individual questions of damages.

15       Defendant contends that individual questions predominate, but defendant supports this contention
16 primarily by advancing arguments that either address the legal merits of plaintiffs' claims or contest
17 plaintiffs' factual allegations. Defendant argues that its policy is to comply with California law with
18 regard to meal periods and rest breaks and to strictly prohibit off-the-clock work. Defendant argues that
19 any violation of such policies is an individualized case that is not suitable for class treatment. But
20 defendant also admits it has a security policy of having at least two employees on duty at all times, which
21 in turn raises a common question as to whether such security policy effectively prohibited employees
22 from taking meal periods and rest breaks on Sundays when only two employees were scheduled to work,
23 and whether defendant is liable for such practices. Defendant also admits it has a policy of discouraging
24 overtime and a practice of scheduling employees to work eight-hour shifts with a one-hour meal period,
25 which in turn raises a common question as to whether such policy and practice forced employees to work
26 off-the-clock during their meal breaks and whether defendant is liable for such practices. Thus, while
27 defendants are correct that individual analyses are required, these individual questions will arise only
28 after significant common questions of law and fact have been answered, and may not arise in the liability

14

context. The Ninth Circuit has explained that individual questions regarding damages will not adversely affect plaintiffs' ability to demonstrate the predominance of common questions. *See Blackie*, 524 F.2d at 905 ("The amount of damages is invariably an individual question and does not defeat class action treatment."); *see also Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands*, 244 F.3d 1152, 1163 (9th Cir. 2001).

"When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. Plaintiffs have shown that common questions present a significant aspect of the class's case against U.S. Bank to satisfy the predominance requirement.

**B.     Superiority**

Plaintiffs must also demonstrate that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation," and is certainly superior "if no realistic alternative exists." *Valentino*, 97 F.3d at 1234-35. Plaintiffs argue that a class action is a superior vehicle for bringing their claims because it will further the interests of judicial economy and will facilitate meaningful access to redress for the class members, many of whom might not otherwise attempt to litigate their relatively small wage and hour claims against defendants. Defendants argue in response that plaintiffs could easily file claims with the California Labor Commissioner. While class members certainly could file such claims, it may be far more efficient and far less costly to litigate their claims in a class action. *See Wiegele v. FedEx Ground Package Sys., Inc.*, 2008 WL 410691, *11 (S.D. Cal. Feb. 12, 2008) ("Here, it would be far more costly and time consuming for each individual putative class member to seek and compel discovery of Defendants' policies and procedures, take multiple depositions, retain experts, and litigate damages issues. For these reasons, Courts often certify class actions when employer wage and hour practices similarly impact a large number of workers."); *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 614 (C.D. Cal. Jan. 20, 2005) (noting that "courts have not hesitated to certify class actions

15

1 for wage and hour claims simply because California law provides for administrative relief."). Left to 2 bring their own claims, many plaintiffs may choose not to do so given the potentially small individual 3 recoveries and the possibility that many class members may not be aware that defendants may owe them 4 additional compensation. This potential loss of access to the courts also supports plaintiffs' argument 5 that a class action is superior to other available methods of resolving plaintiffs' claims. *See Tierno v. Rite* 6 *Aid Corp.*, 2006 WL 2535056, *12 (N.D. Cal. Aug. 31, 2006). Looking to the other factors laid out in 7 Rule 23(b)(3), there appears to be nothing to warrant a finding that resolution on a classwide basis would 8 be inferior to other methods. Defendant does not argue, and there is no indication, that class members 9 seek to individually control their cases or that there would be an advantage to doing so. Defendant also 10 does not argue that this particular forum is undesirable for any reason, or that it would be difficult to 11 manage a class action in this case. Also, plaintiffs assert that to their knowledge, no class members are 12 separately pursuing other cases involving the same claims. Therefore, the class action procedure appears 13 to be superior to other methods of adjudicating the present case.

14 In conclusion, plaintiffs have demonstrated to the Court's satisfaction that questions of law and 15 fact common to class members predominate over any questions affecting only individual members, and 16 that a class action is superior to other available methods for fairly and efficiently adjudicating the 17 controversy. However, the Court remains concerned about plaintiffs' ability to prove U.S. Bank's 18 liability on a classwide basis in view of the fact that the only evidentiary submissions offered by plaintiffs 19 at this stage are the declarations by the four named plaintiffs and the statistical data which only reflect 20 a time period from May 1, 2008 and onward. Although plaintiffs' counsel stressed, during oral argument, 21 how common questions of U.S. Bank's policies and practices can be easily proven by objective "survey 22 evidence," defendant affirms that employee time records for a significant portion of the time period 23 involved in this case are unavailable either because they have already been destroyed before this lawsuit 24 was filed or have never been kept. Therefore, the Court conditions class certification upon plaintiffs' 25 presentation of adequate proof of U.S. Bank's statewide practice of denying employees their breaks and 26 working them off-the-clock that would establish its liability to all class members. If it becomes apparent 27 during subsequent proceedings that individual issues will predominate due to plaintiffs' inability to 28 present evidence of U.S. Bank's classwide liability, the Court may modify or decertify the class.

**CONCLUSION**

For the foregoing reasons, and for good cause shown, the Court CONDITIONALLY GRANTS plaintiffs' motion (Docket No. 186) and conditionally certifies the following classes:

(1) All hourly employees of U.S. Bank who worked at a U.S. Bank California in-store branch, during a Sunday shift, during the period April 9, 2003, through the date of judgment in this matter.

(2) All hourly employees of U.S. Bank who worked a shift of more than five hours at a U.S. Bank California in-store branch during the period April 9, 20003, through the date of judgment in this matter.

**The parties are ordered to meet and confer concerning the content and timing of notice to class members, and to submit a joint report on this question on or before December 18, 2009.**

**IT IS SO ORDERED.**

Dated: November 25, 2009

SUSAN ILLSTON
United States District Judge